# EXHIBIT J

**B. Lively's Opposition to P. Hilton's Motion for Protective Order**

# UNITED STATES U.S. DISTRICT COURT

## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| BLAKE LIVELY,<br><br>Plaintiff,<br><br>-v-<br><br>WAYFARER STUDIOS LLC, JUSTIN BALDONI, JAMEY HEATH, STEVE SAROWITZ, IT ENDS WITH US MOVIE LLC, MELISSA NATHAN, THE AGENCY GROUP PR LLC, JENNIFER ABEL, JED WALLACE, and STREET RELATIONS INC.,<br><br>Defendants. | Case No. 1:24-cv-10049-LJL<br>(consolidated with 1:25-cv-00449-LJL)<br><br><br>**OPPOSITION TO THIRD-PARTY PEREZ HILTON'S MOTION FOR PROTECTIVE ORDER AND CROSS MOTION TO COMPEL** |
| JENNIFER ABEL,<br><br>Third-Party Plaintiff,<br><br>-v-<br><br>JONESWORKS LLC,<br><br>Third-Party Defendant. | |
| WAYFARER STUDIOS LLC, JUSTIN BALDONI, JAMEY HEATH, IT ENDS WITH US MOVIE LLC, MELISSA NATHAN, JENNIFER ABEL, and STEVE SAROWITZ,<br><br>Consolidated Plaintiffs,<br><br>-v-<br><br>BLAKE LIVELY, RYAN REYNOLDS, LESLIE SLOANE, VISION PR, INC., and THE NEW YORK TIMES COMPANY.<br><br>Consolidated Defendants. | |

## <u>TABLE OF CONTENTS</u>

Page

INTRODUCTION ......................................................................................................... 1

BACKGROUND ......................................................................................................... 3

    A.    Since August 2024, Mr. Hilton, Who Identifies Himself As An "Influencer," Has Posted More Than 540 Disparaging Pieces Of Content About Ms. Lively ................ 3

    B.    Ms. Lively Served The Subpoena after TAG Identified Him As Having Generated Content On Its Behalf. ............................................................................................. 6

    C.    Mr. Hilton Seeks Relief Of This Court. ................................................................. 10

LEGAL STANDARD ................................................................................................. 12

ARGUMENT .............................................................................................................. 12

    I.    The Court Should Deny the Motion to Require Ms. Lively to Seek Permission Before Serving Additional Third-Party Subpoenas…...…………………………12

        A.    Mr. Hilton Cannot Seek Relief On Behalf Of Other Non-Parties……………………………………………………………..12

        B.    Mr. Hilton Has Not Established "Good Cause" To Require Ms. Lively To Receive Permission Before Serving Third-Party Subpoenas……….................13

    II.    The Court Should Construe the Motion as Seeking a Protective Order as to the Subpoena, and Deny it………………………………………………………15

        A.    Mr. Hilton Does Not Dispute that the Information Sought by Ms. Lively is Relevant to Her Claims…………………………………………………...16

        B.    The Subpoena is Narrowly Tailored to Core Issues in this Case…………….. 17

        C.    The Subpoena Does Not Seek The Disclosure of Privileged Materials……….17

            1.    The Subpoena does not seek material covered by any applicable journalist's privilege…………………………………………………..17

                i.    Mr. Hilton was not acting as a "professional journalist" when he generated the materials sought………………………………..17

                ii.    If applicable, the New York Shield Law does not protect the information Ms. Lively seeks…………………………………....21

i

       2.    The Requested Documents Are Not Protected By the Attorney Client Privilege…………………………………………………………………24

   D.    Mr. Hilton Has Failed To Demonstrate Any Undue Burden…………………..24

III.   The Court Should Compel Mr. Hilton to Respond to and Produce Materials Responsive to the Subpoena……………………………………………………25

# TABLE OF AUTHORITIES

Page

**FEDERAL CASES**

*Allstate Ins. Co. v. A & F Med. P.C.*,
 2016 WL 7116067 (E.D.N.Y. Dec. 6, 2016) ........................................................25

*Amphenol Corp. v. Fractus, S.A.*,
 2019 WL 2521300 (S.D.N.Y. June 19, 2019) ..................................................25, 26

*Andros Compania Maritima, S.A. v. Intertanker Ltd.*,
 718 F. Supp. 1215 (S.D.N.Y. 1989) ....................................................................27

*Ariix, LLC v. NutriSearch Corp.*,
 985 F.3d 1107 (9th Cir. 2021) ..............................................................................22

*Barbera v. Grailed, LLC*,
 2025 WL 2098635 (S.D.N.Y. July 25, 2025) ......................................................14

*Benjamin v. Costco Wholesale Corp.*,
 2025 WL 1195925 (E.D.N.Y. Apr. 24, 2025) ......................................................15

*California Att'y Lending, LLC v. Legal Recovery Assocs., LLC*,
 2023 WL 7037474 (W.D.N.Y. Oct. 26, 2023) ................................................16, 25

*Campinas Found. v. Simoni*,
 2004 WL 253303 (S.D.N.Y. Feb. 10, 2004) .....................................................15, 17

*Chevron Corp. v. Berlinger*,
 629 F.3d 297 (2d Cir. 2011) .................................................................................21

*City of Almaty, Kazakhstan v. Ablyazov*,
 2020 WL 1130670 (S.D.N.Y. Mar. 9, 2020) .......................................................14

*Concord Boat Corp. v. Brunswick Corp.*,
 169 F.R.D. 44 (S.D.N.Y. 1996) ............................................................................17

*DoorDash, Inc. v. City of New York*,
 754 F. Supp. 3d 556 (S.D.N.Y. 2024) .......................................................13, 16, 25

*Erno v. NYS Off. of Info. Tech.*,
 2020 WL 7890746 (N.D.N.Y. Oct. 20, 2020) ......................................................15

*Franks v. City of New Rochelle*,
 2024 WL 1636456 (S.D.N.Y. Apr. 16, 2024) ......................................................17

*Gilead Scis., Inc. v. Khaim*,
 --- F. Supp. 3d ---, 2025 WL 1151412 (E.D.N.Y. Apr. 21, 2025) ..................13, 18

*Hafkin v. United States*,
 No. 20-CV-08034 (S.D.N.Y. Apr. 7, 2021) (Mot. ) .............................................15

*In re Ex Parte Application of Kleimar N.V.*,
 220 F. Supp. 3d 517 (S.D.N.Y. 2016) ..................................................................14

*In re Fitch, Inc.*,
330 F.3d 104 (2d Cir. 2003)..........................................................................................19, 20

*In re Flag Telecom Holdings, Ltd. Sec. Litig.*,
2005 WL 6457182 (S.D.N.Y. Sept. 21, 2005)..................................................................15

*In re Madden*,
151 F.3d 125 (3d Cir. 1998).............................................................................................21

*In re Nat. Gas Commodity Litig.*,
235 F.R.D. 199 (S.D.N.Y. 2005) ......................................................................................25

*In re Nat. Gas Commodities Litig.*,
235 F.R.D. 241 (S.D.N.Y. 2006) .................................................................................24, 25

*In re W. States Wholesale Nat. Gas Antitrust Litig.*,
2009 WL 10692733 (D. Nev. Aug. 14, 2009) ..................................................................25

*Johnson v. J. Walter Thompson U.S.A., LLC*,
2017 WL 3055098 (S.D.N.Y. July 18, 2017) ...................................................................15

*Langton v. Town of Chester*,
2018 WL 11425556 (S.D.N.Y. Jan. 18, 2018) ..................................................................13

*LaSalle Natl. Bank v. Duff & Phelps Credit Rating Co.*,
951 F. Supp. 1071 (S.D.N.Y. 1996)..................................................................................21

*Lavandeira v. Infuse, LLC*,
2009 WL 10697463 (S.D.N.Y. Nov. 24, 2009) ..................................................................4

*Lipinski v. Skinner*,
781 F. Supp. 131 (N.D.N.Y. 1991)....................................................................................23

*Malibu Media, LLC v. Doe*,
2016 WL 4444799 (E.D.N.Y. Aug. 23, 2016)...................................................................26

*Martin v. Integon Nat'l Ins.*,
2024 WL 754413 (D. Conn. Feb. 22, 2024) .....................................................................13

*Nova Prods., Inc. v. Kisma Video, Inc.*,
220 F.R.D. 238 (S.D.N.Y. 2004) ......................................................................................17

*Novagold Res., Inc. v. JCap Rsch. USA LLC*,
2024 WL 4250265 (E.D.N.Y. Mar. 29, 2024)...................................................................21

*Roche Freedman LLP v. Cyrulnik*,
2022 WL 17979801 (S.D.N.Y. Dec. 28, 2022) .................................................................26

*Samsung Elecs. Co., Ltd. v. Microchip Tech. Inc.*,
347 F.R.D. 252 (S.D.N.Y. 2024) ......................................................................................16

*Sava v. 21St Century Spirits, LLC*,
2024 WL 3161625 (N.D. Ill. June 25, 2024).....................................................................22

*Sberbank of Russia v. Traisman*,
2016 WL 4479533 (D. Conn. Aug. 23, 2016) ...................................................................26

*Stickler v. Halevy*,
    2011 WL 13323562 (E.D.N.Y. June 17, 2011) ..................................................15

*U.S. Commodity Futures Trading Comm'n v. McGraw-Hill Companies, Inc.*,
    507 F. Supp. 2d 45 (D.D.C. 2007) ..................................................................25

*von Bulow by Auersperg v. von Bulow*,
    811 F.2d 136 (2d Cir. 1987) ...........................................................................21

*Wilcock v. Equidev Cap. L.L.C.*,
    2001 WL 913957 (S.D.N.Y. Aug. 14, 2001) ..................................................15

*Wultz v. Bank of China, Ltd*,
    304 F.R.D. 38 (D.D.C. 2014) .........................................................................27

**STATE CASES**

*Aspen Fin. Servs., Inc. v. Eighth Jud. Dist. Ct. of State ex rel. Cnty. of Clark*,
    129 Nev. 878 (2013) ......................................................................................19

*People v. Bova*,
    460 N.Y.S.2d 230 (Sup. Ct. 1983) .................................................................23

*People v. Troiano*,
    486 N.Y.S.2d 991 (N.Y. Co. Ct. 1985) ..........................................................23

*Too Much Media, LLC v. Hale*,
    206 N.J. 209 (2011) .......................................................................................21

**STATE STATUTES**

N.Y. Civ. Rights Law § § 79-h(a)(6) .....................................................................19

N.Y. Civ. Rights Law § 79-h(b) ............................................................................19

N.Y. Civ. Rights Law § 79–h(c) ............................................................................23

NV Rev Stat § 49.275 ............................................................................................19

**RULES**

Fed. R. Civ. P. 5.2(a) ..............................................................................................16

Fed. R. Civ. P. 26(b)(1) ..........................................................................................13

Fed. R. Civ. P. 26(c) ...............................................................................................13

Fed. R. Civ. P. 37(a)(5) ..........................................................................................27

Plaintiff Blake Lively respectfully asks the Court to deny the Motion for a Protective Order (ECF No. 510, "Motion" or "Mot.") filed by Movant Mario Lavandeira Jr., also known as Perez Hilton ("Mr. Hilton"), pursuant to Rule 26 of the Federal Rules of Civil Procedure ("Rule(s)"). Ms. Lively also cross moves to compel Mr. Hilton to respond to and produce materials responsive to the Rule 45 subpoena Ms. Lively served on him on July 19, 2025. Ex. A ("Subpoena").[1]

## INTRODUCTION

The Motion before the Court concerns an individual who, according to Defendants The Agency Group ("TAG") and ███████████████████ has seeded, generated, created, or influenced social media content or provided "related digital or social media services directly or indirectly at the request of, or on behalf of, any Wayfarer Party or their agents or affiliates." The specific individual who has acted "at the request of, or on behalf of," the Wayfarer Defendants is Perez Hilton, a social media personality who has described himself as the "original influencer." Since August 2024, Mr. Hilton has created more than 500 hundred pieces of video content about Ms. Lively, almost entirely disparaging, and about the same number of posts of sensational headlines. He has declared Ms. Lively's allegations of retaliation "Non-Existent" and labeled Ms. Lively a "BULLY" who "LIES" and is "Trying To Silence Justin Baldoni." Mr. Hilton's videos are punctuated by name-calling Ms. Lively, coining mocking terms for her, including "***Blackface Blake***", "***Lying Lively***", "***Ku Klux Khaleesi***", and "***Litigious Lively***". Through his Motion, Mr. Hilton seeks to preclude Ms. Lively from learning which pieces of the avalanche of derogatory content described above was created "at the request of, or on behalf of" the Wayfarer Defendants.

Although Defendants TAG and ███████ have admitted that Mr. Hilton is among the

---

[1] All exhibits are attached to the Declaration of Esra Hudson.

1

content creators who worked at the Wayfarer Defendants' "request," and further admitted to communicating with content providers in writing, via ███████████, Ms. Lively has not received (to date) a single communication between Mr. Hilton and any of the Wayfarer Defendants (or their agents or anyone acting on their behalf).[2] To obtain this critical evidence—which no one denies exists—Ms. Lively served the Rule 45 Subpoena on Mr. Hilton, seeking seven categories of documents that seek only documents and communications between Mr. Hilton and the Wayfarer Defendants (or their agents, including counsel), reflecting the receipt or use of any content supplied by those individuals, and any consideration received in connection.

Mr. Hilton filed the Motion in response to the Subpoena, seeking a protective order that would require Ms. Lively to seek permission to serve any further third-party subpoenas. Mr. Hilton lacks standing for such relief and, even if he did not, has failed to provide any good cause to abrogate Ms. Lively's right to pursue discovery from non-parties. *See* Argument § I. In the Motion, Mr. Hilton proffers a number of objections to the Subpoena—including that it is overbroad, seeks privileged information, and causes undue burden—and, accordingly, the Court should construe the

---

[2] As discussed at length below, the Wayfarer Defendants fiercely resisted even identifying the relevant content creators, doing so only after being ordered by the Court. ECF No. 355. The Wayfarer Defendants next created the circumstance for a media firestorm over content creator discovery by designating their responses AEO, making it impossible for Ms. Lively to provide context for why she was subpoenaing Mr. Hilton and others, *i.e.*, that the Wayfarer Defendants had specifically identified them. This gave content creators with large platforms like Mr. Hilton weeks of fodder for "outrage" videos, claiming they were unfairly targeted and "silenced" by Ms. Lively (though clearly not silenced at all). PEREZ HILTON, *Blake Lively's Cruel Campaign To Bully Content Creators Continues! Justin Baldoni's Nemesis Just:* (YouTube Jul. 18, 2025) https://www.youtube.com/watch?v=5jCcKu-1tTQ. Ms. Lively moved the Court to de-designate the relevant discovery, which the Wayfarer Defendants did not resist, demonstrating this may have been a media tactic from the onset. ECF No. 449. By that point, the public narrative had already been set by Mr. Hilton and others. *See e.g.*, Ryan Naumann, *Blake Lively Accused of Going After Small-Time Content Creator Who Covered Her Justin Baldoni Lawsuit*, US Weekly (Jul. 23, 2025 at 10:31 ET) https://www.yahoo.com/entertainment/articles/blake-lively-accused-going-small-143146679.html. And now, Ms. Lively has had to move to compel the Wayfarer Defendants, who incredibly have not produced a single phone record, text message, email or other written record of any communications with Mr. Hilton. ECF No. 552. Ms. Lively has been hindered at every turn by the Wayfarer Defendants, and given their obfuscation, Mr. Hilton should not be able to point back to them as the only source from whom Ms. Lively should be permitted to seek this information.

Motion as seeking a Protective Order as to the Subpoena itself and overrule all of the objections as meritless. *See* Argument § II. Finally, since Mr. Hilton has moved the Court for affirmative relief with respect to the Subpoena, the Court should exercise its authority to compel Mr. Hilton to produce all materials responsive within seven days of an order. *See* Argument § III.

## BACKGROUND

A.  **Since August 2024, Mr. Hilton, Who Identifies Himself As An "Influencer," Has Posted More Than 540 Disparaging Pieces Of Content About Ms. Lively.**

Mr. Hilton describes himself as an "influencer":

"The ***original influencer***, Perez Hilton founded and oversees one of the most iconic websites ever. In addition to his eponymous blog, he is the host of a very successful podcast, has a loyal following across two YouTube channels, has written three books, has acted in countless TV shows and films - as well as the stage. And, most importantly, he is the proud father of three happy and thriving kid and an adult child, his mother. Perez is one of the most sought after commentators and your best friend!"

Ex. B ("YouTube Channel") (emphasis added); Ex. C (describing himself on his Instagram profile (@thePerezHilton) as "The Original Influencer"). In a 2021 interview, he labeled himself "a working influencer" and a "working creator." William Turvill, *Perez Hilton interview: How Hollywood's 'most hated' sacrificed clicks (and ad revenue) for his conscience*, Press Gazette (Sep. 30, 2022 at 10:30 BST) https://pressgazette.co.uk/news/perez-hilton-interview/. Mr. Hilton creates content primarily for his YouTube Channel, his X account (@theperezhilton) and his website "PerezHilton.com" ("Website") (collectively, "Platforms"), on which he calls himself "the internet's most notorious gossip columnist" and boasts about being the "#1 Web Celeb." Ex. D.[3] He calls himself a "media personality" in his X profile. Ex. E.  He also has been dubbed a "pop culture expert," including in a "documentary" titled *In Dispute: Lively vs. Baldoni*, in contrast to

---

[3] In a lawsuit Mr. Hilton filed in this District in 2009, he confirmed that he "receives considerable income as a result of the advertising revenue" on his Website. *Lavandeira v. Infuse, LLC*, 2009 WL 10697463, at *1 (S.D.N.Y. Nov. 24, 2009).

other participants labeled as "reporter" in their label cards.[4] On his various Platforms, Mr. Hilton does not hold himself out as operating as an independent journalist, nor does he purport to follow any of the tenets of independent journalism, such as for example diligently seeking "subjects of news coverage to allow them to respond to criticism" or labeling "advocacy and commentary."[5]

Mr. Hilton has boasted that he is the "***number one source for all things It Ends With Us Saga***." *See e.g.*, Perez Hilton, *Blake Lively Is Trying To Ruin A Small Business Owner! SICKENING! This Is Not Pro-Woman! She Just:*, (YouTube, Jun. 6, 2025, at 0:26) https://www.youtube.com/watch?v=o4xkQuthYWw. Since August 2024, Mr. Hilton has posted more than **500 videos, 400 headlines,** and **hundreds of other comments** about Ms. Lively on his various platforms, and his Website includes a tab on its landing page and an entire subpage dedicated to Ms. Lively. *See* PEREZ HILTON (@PEREZ HILTON), YOUTUBE, https://www.youtube.com/results?search_query=perez+hilton; PEREZ HILTON (@perezhiltononreddit), REDDIT, https://www.reddit.com/user/PerezHiltonOnReddit/; PEREZ HILTON (@ThePerezHilton), TWITTER, https://x.com/ThePerezHilton; Perez Hilton, *Blake Lively*, https://perezhilton.com/category/blake-lively/ (last visited Aug. 4, 2025). The majority of the content Mr. Hilton posts about Ms. Lively are disparaging, published without reaching out to Ms. Lively's representatives for comment or response, and generally regurgitate messaging that appears to be prepared by others:[6]

---

[4] *See Perez Hilton Podcast with Chris Booker*, Apple Podcasts, https://podcasts.apple.com/us/podcast/the-perez-hilton-podcast-with-chris-booker/id1019700531 (last visited Aug. 1, 2025); IN DISPUTE: BALDONI V. LIVELY, HBO MAX, at 2:56, 4:45, 10:25 (ITN Productions 2025).

[5] https://www.spj.org/spj-code-of-ethics/

[6] PEREZ HILTON, *Blake Lively's Non-Existent Smear Campaign Falls Apart!!!!* (YouTube, Aug. 2, 2025) https://www.youtube.com/watch?v=EApfr4W0h7s; PEREZ HILTON, *Blake Lively is so UNETHICAL!* (YouTube, Jul. 25, 2025) https://www.youtube.com/watch?v=EApfr4W0h7s.; PEREZ HILTON, *Blake Lively The BULLY! (*YouTube, Mar. 19, 2025) https://www.youtube.com/watch?v=VZhKVuc8xIc.; PEREZ HILTON, *Justin Baldoni Exposes New Blake Lively LIES!!! THIS IS SAVAGE* (YouTube, Jul. 8, 2025) https://www.youtube.com/watch?v=Lrz7OoHCanU; PEREZ HILTON, *Don't Believe The Blake Lively Lies! | Perez Hilton* (YouTube, Mar. 12, 2025); https://www.youtube.com/watch?v=X4DwqqaiAFE; PEREZ HILTON, *Justin Baldoni Had NOTHING To Do With*

- "Blake Lively's Non-Existent Smear Campaign Falls Apart!!!!"
- "Blake Lively is so UNETHICAL!"
- "Blake Lively The BULLY!"
- "Justin Baldoni Exposes New Blake Lively LIES!!! THIS IS SAVAGE"
- "Don't Believe The Blake Lively LIES!"
- "Justin Baldoni Had NOTHING To Do With Jenny Slate's Complaint! Blake Lively Lied!"
- "Blake Lively Is Trying To Silence Justine Baldoni! He's Afraid"

YOUTUBE, "@PerezHilton + Blake Lively" (Aug. 5, 2025).[7] In his videos, Mr. Hilton has called Ms. Lively disparaging and insulting names, such as: "***Blackface Blake***"[8]; "***Lying Lively***"[9]; "***Ku Klux Khaleesi***"[10]; and "***Litigious Lively***."[11] Mr. Hilton has made no secret of his lack of independence—he does not, for example, reach out to Ms. Lively or her representatives for comment prior to publishing, nor is it clear he speaks with any "party" other than representatives of Mr. Baldoni, and he frequently speaks as an advocate of Mr. Baldoni rather than an independent reporter. *See, e.g.*, Perez Hilton (@PerezHiltononReddit), REDDIT, (Jun. 25, 2025) https://www.reddit.com/r/ItEndsWithLawsuits/comments/1lk7x9k/comment/mzqvkmj/ ("my big worry is - Blake will 'find' a bunch of cast and crew members to testify that they witnessed Baldoni

---

*Jenny Slate's Complaint! Blake Lively Lied!* (YouTube Feb. 21, 2025) https://www.youtube.com/watch?v=DovL-2TK-VM; PEREZ HILTON, *Blake Lively Is Trying To Silence Justine Baldoni! He's Afraid* (YouTube Jan. 22, 2025) https://www.youtube.com/watch?v=2h-Ml5nPYCw.

[7] Importantly, Mr. Hilton's comments exactly mirror the four themes of character assassination that the Wayfarer Defendants' counsel, Bryan Freedman, has improperly advanced since the inception of this case, as set forth in Ms. Lively's recently filed motion for sanctions in violation of Rule 3.6. ECF No. 535.

[8] PEREZ HILTON, *Blake Lively Confesses To The Judge That She's Conspiring With Justin Baldoni's Former Publicist!*, (YouTube, Jul. 5, 2025, at 1:41) https://www.youtube.com/watch?v=lPx74XA4z_A.

[9] PEREZ HILTON, *Blake Lively Has This Judge In Her Pocket! He Just:*, (YouTube, Jul. 14, 2025, at 0:31) https://www.youtube.com/watch?v=4wAoa2RjgyU.

[10] PEREZ HILTON, *A Terrible Day For Blake Lively! Another Loss For Her!! The Judge In The Justin Baldoni Trial Ruled:*, (YouTube, Jun. 16, 2025, at 0:40) https://www.youtube.com/watch?v=d4MTRv8.

[11] PEREZ HILTON, *Blake Lively Is Trying To Ruin A Small Business Owner! SICKENING! This Is Not Pro-Woman! She Just:*, (YouTube, Jun. 6, 2025, at 1:30) https://www.youtube.com/watch?v=o4xkQuthYWw.

sexually harassing her."). Mr. Hilton celebrates Mr. Baldoni's legal successes, and laments Ms.

Lively's, stating unequivocally: "**I am team the truth, I believe Justin**."[12]

**B.   Ms. Lively Served The Subpoena after TAG Identified Him As Having Generated Content On Its Behalf.**

On March 14, 2025, Ms. Lively served TAG with interrogatories, including ones that asked

TAG to identify:

- "***all Content Creators*** with whom You have communicated in any manner, concerning Ms. Lively, Mr. Reynolds, the CRD Complaint, the Actions, the Lively/Reynolds Companies, or the Digital Campaign from May 1, 2024, to present" (Interrogatory No. 5); and

- "***all reporters and news or media outlets of any kind*** with whom You have communicated, directly or indirectly, in any manner, concerning Ms. Lively, Mr. Reynolds, the CRD Complaint, the Actions, or the Lively/Reynolds Companies from May 1, 2024, to present" (Interrogatory No. 6).

ECF No. 294, Ex. 6.[13] The Court compelled TAG *inter alia* to answer both interrogatories—

---

[12] Perez Hilton, *Throwing A Tantrum? Justin Baldoni Insists That Blake Lively's Celebrity Status Enabled Her To:*, (YouTube, Jul. 13, 2025, at 1:37), http://youtube.com/watch?v=Nl5DqAgMwP8; *see also* Perez Hilton, *A Terrible Day For Blake Lively! Another Loss For Her!! The Judge In The Justin Baldoni Trial Ruled:* (YouTube, Jun. 16, 2025, at 1:00) https://www.youtube.com/watch?v=o0D-d4MTRv8 ("***The judge has given us another win for Justin and the Wayfarer Parties.***"); Perez Hilton, *Throwing A Tantrum? Justin Baldoni Insists That Blake Lively's Celebrity Status Enabled Her To:*, (YouTube, Jul. 13, 2025, at 1:37), http://youtube.com/watch?v=Nl5DqAgMwP8 ("**I am team the truth, I believe Justin**."); Perez Hilton, *Justin Baldoni Finally Scores A Win In Court! MULTIPLE Wins! Blake Lively's Nemesis:* (YouTube, Jun. 16, 2025, at :01, 2:10) https://www.youtube.com/watch?v=Ej99LG_hQfs ([Referring to ruling in the Wayfarer Defendants' favor]" **Yesssss…now this going to be a good week..yaay.**"); Perez Hilton, More Bad News For Justin Baldoni! He's Going To Lose This Too: (YouTube, Jul. 14, 2025, at 1:12) https://www.youtube.com/watch?v=Ej99LG_hQfs ("***The judge does not like logical… Lying Liman***."); Perez Hilton, Justin Baldoni SCHOOLS Blake Lively's Publicist! Taunts Her To File A New Lawsuit! (YouTube, Jul. 8, 2025, at 0:20, 2:29), https://www.youtube.com/watch?v=W5nrkzaVkPk&t=27s. ("***As we painfully know last month Judge Liman tossed into the garbage Justin Baldoni's lawsuit***") (Perez Hilton, Justin Baldoni Has EVIDENCE That Blake Lively Is A Mean Girl! She Mocked His Body!!! Cruelly:, (YouTube, Jan. 16. 2025, at 0:23, 3:33)("***game over for Blake Lively")("[Justin Baldoni] has got the evidence***."); Perez Hilton (@perezhilton), Blake Lively Has This Judge In Her Pocket!, YouTube, at 2:46 (Ju1. 14, 2025), https://www.youtube.com/watch?v=4wAoa2RjgyU ("***We are clearly seeing a pattern of [Judge Liman] having bias***"); Perez Hilton (@perezhilton), Blake Lively Did NOT Extort Justin Baldoni! Not Unreasonable Of Her To Demand Edit Control!, YouTube, at 2:44 (Jun. 9, 2025) https://www.youtube.com/watch?v=v_RmO8C3KuQ ("***This judge is crazy***").

[13] The interrogatories defined "You" to include "anyone else acting or purporting to act on its behalf and anyone on whose behalf it is acting," "Content Creator" to "refer to any individual or entity who seeds, generates, creates, or influences Social Media content or provides related digital services," and "Social Media" to mean "any digital platform, forum, website, application, online service, or other platform on which persons can create, transmit, share, communicate, exchange content, or comment upon any information, ideas, or opinions, or otherwise engage in social

including through the present—subject to defining Content Creators to "mean 'any individual or entity who seeds, generates, creates, or influences Social Media content or provides related digital or social media services directly or indirectly at the request of, or on behalf of, any Wayfarer Party or their agents or affiliates.'" ECF No. 355, at 3-4. On June 25, 2025, TAG served supplemental responses to the interrogatories, including identifying Mr. Hilton as one of four Content Creators who seeded, generated, created, or influenced social media content or provided related digital or social media services directly or indirectly at the request of, or on behalf of, any Wayfarer Party or their agents or affiliates. ECF No. 554, Ex.14. ███████████████████████████

██████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████

██████████████████████████

     Throughout discovery, Ms. Lively has served multiple requests for production ("RFPs") on various Defendants seeking communications with Content Creators and defining "You" to include "anyone else acting or purporting to act on its behalf and anyone on whose behalf it is acting."[14]  On June 30, 2025—after the compelled interrogatory responses identified Mr. Hilton— Ms. Lively served additional RFPs on █████████████████████████████████

██████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████

---

networking, including" Twitter and YouTube.

[14] *See, e.g.*, ECF No. 554, Ex. 26 ("Identify all Content Creators with whom *You* have communicated in any manner, concerning Ms. Lively, Mr. Reynolds, the CRD Complaint, the Actions, the Lively/Reynolds Companies, or the Digital Campaign from May 1, 2024 to present.") (emphasis added); *id.* ("All Documents and Communications between *You*, or anyone on Your behalf, and any public relations, crisis management, or Social Media firms concerning the Film, Ms. Lively, Mr. Reynolds, the Lively/Reynolds Companies, the Lively/Reynolds Family, or the Actions.") (emphasis added).



.[15]

While Ms. Nathan has produced some heavily redacted text conversations regarding contact with Content Creators, she has not produced any communications with Mr. Hilton. *See e.g.,* ECF No. 555, at 29. One of the text message threads she produced indicates that the Wayfarer Defendants were coordinating with Mr. Hilton during the height of the retaliation campaign.

[16] The omnibus motion to compel that Ms. Lively filed on August 4, 2025 asks the Court to compel the production of documents that would implicate a number of relevant RFPs, including to produce communications with content providers sent by the Wayfarer Defendants' agents or on their behalf, all their Signal communications (

[17] and all post-December 2024 communications. ECF No. 553. As the Court is aware, Ms. Lively also has been attempting to secure communications with content providers for almost three months from counsel for the Wayfarer Defendants. *See Liner Freedman Taitelman Cooley, LLP v. Livley*, No. 1:25-mc-00289-LJL (S.D.N.Y Jul. 7, 2025).

---

[15]

[16] The video Mr. Baldoni sends is about Mr. Baldoni "breaking his silence." *See* PEREZ HILTON, *Justin Baldoni Speaks!!! Addressing His Blake Lively Feud, Says:*, (YouTube, Aug. 14, 2024) https://www.youtube.com/watch?v=02zDx4d9LNA.

[17] ECF No. 554, Ex. 6, at response to ROG No. 7 (        ; Ex. 6 at response to ROG No. 10 (TAG).

With third-party document discovery slated to close on August 15, 2025, Ms. Lively noticed the Subpoena on July 2, 2025. *See* Ex G. After Ms. Lively made various attempts to serve him, Mr. Hilton accepted service of the Subpoena on July 19, 2025 with a response date of August 4, 2024. Ex H. The Subpoena includes seven RFPs with capitalized terms defined therein:

**REQUEST FOR PRODUCTION NO. 1:**
All Documents and Communications concerning any Agreements (draft or final) You have with anyone, including but not limited to counsel for the Wayfarer Parties, that were effective at any point from May 1, 2024 through the present, without regard to the date of drafting or execution, concerning the Consolidated Action, Ms. Lively, Mr. Reynolds, any Wayfarer Defendant, the Digital Campaign, the Marketing Plan, the Film.

**REQUEST FOR PRODUCTION NO. 2:**
All Agreements (draft or final) You have with anyone, including but not limited to counsel for the Wayfarer Parties, that were effective at any point from May 1, 2024 through the present, without regard to the date of drafting or execution, concerning the Consolidated Action, Ms. Lively, Mr. Reynolds, any Wayfarer Defendant, the Digital Campaign, the Marketing Plan, the Film.

**REQUEST FOR PRODUCTION NO. 3:**
All Documents and Communications regarding Your digital, online, Content Creator, or influencer services or strategy concerning the Consolidated Action, Ms. Lively, Mr. Reynolds, any Wayfarer Defendant, the Digital Campaign, the Marketing Plan, the Film, in connection with or on behalf of the Wayfarer Defendants or their counsel. For the avoidance of doubt, this request includes circumstances in which any Wayfarer Defendant or their counsel, or anyone acting on their behalf, provided You with any information that You included or relied on in any of Your content, on whole or in part, including but not limited to as a blind item.

**REQUEST FOR PRODUCTION NO. 4:**
All Documents and Communications concerning any statements, talking points, scripts, theories, assertions, questions, advertisement, claims, or similar—including preparation, revision, and timing of publication thereof—concerning the Consolidated Action, Ms. Lively, Mr. Reynolds, any Wayfarer Defendant, the Digital Campaign, the Marketing Plan, the Film, that were made in connection with or on behalf of the Wayfarer Defendants or their counsel. For the avoidance of doubt, this request includes circumstances in which any Wayfarer Defendant or their counsel, or anyone acting on their behalf, provided you with a statement, a script, talking points, or any other information You included or relied on in any of Your content, in whole or in part, including but limited to as a blind item

9

**REQUEST FOR PRODUCTION NO. 5:**

All Documents and Communications reflecting or concerning any Payment, gift, or favor related to or resulting from any formal or informal Agreement or understanding with any of the Wayfarer Defendants or their counsel, or anyone on their behalf, concerning any content You created or shared concerning Ms. Lively, Mr. Reynolds, any Wayfarer Defendant, the Digital Campaign, the Marketing Plan, the Film, or Your public statements or Your views regarding the same.

**REQUEST FOR PRODUCTION NO. 6:**

All Documents and Communications reflecting or concerning any statements or drafts provided to You by any of the Wayfarer Defendants or their counsel, including in connection with any Google Document or co-working platform (including without limitation Google Drive, Google Docs, Microsoft OneDrive, Dropbox, Box, iCloud Drive, and Sharepoint).

**REQUEST FOR PRODUCTION NO. 7:**

All Documents and Communications between You and any Wayfarer Defendant, their counsel, or anyone on their behalf concerning Ms. Lively, Mr. Reynolds, the Digital Campaign, the Marketing Plan, the Film, or the Consolidated Action.

C.      **Mr. Hilton Seeks Relief Of This Court.**

On July 19, 2025, Mr. Hilton filed a letter with the Court moving for an "order to seal or redact any personal identifying information" including his address, email address, and phone number. ECF No. 470 ("Motion to Seal"). On July 21, 2025, Mr. Hilton filed another letter with the Court "relating to" the Subpoena, again asking the Court to seal his home address, email, and phone number. ECF No. 517.  The Court denied Mr. Hilton's Motion to Seal on July 28, 2025, stating that the Court "already has taken measures to protect the privacy of third parties" by *inter alia* entering a Protective Order to govern the case. ECF No. 505. The Court explained that Mr. Hilton has "not identified a specific need for the Court to take an action that it has not already taken" and that there are sufficient procedures already in place. *Id*.

On July 21, 2025, Mr. Hilton emailed undersigned counsel stating that he intended to proceed *pro se*—notwithstanding the fact that Mr. Hilton is not *indigent*, and the fact that he has previously claimed that he was represented by opposing counsel's lead attorney, Mr. Freedman— and had "substantive objections" and "significant concerns" about whether the Subpoena

"complies with applicable legal standards." Ex. K.[18] Ms. Lively's counsel responded by expressing a willingness to hear any concerns and requested Mr. Hilton put them in writing. *Id*. Mr. Hilton responded by stating that it was his "understanding that the subpoena is not legally sound" and requested Ms. Lively withdraw the Subpoena in its entirety. *Id*. In response to Ms. Lively's counsel asking for the "legal basis and supporting authority" for that belief, Mr. Hilton responded that he intended to file a motion to quash on July 28, 2025, including based on a journalist's privilege, if Ms. Lively did not withdraw the Subpoena. *Id*.

The next day, on July 29, 2025, Mr. Hilton filed the Motion, requesting "that the Court exercise its supervisory authority and enter a protective order requiring Plaintiff to obtain leave of Court before issuing any further non-party subpoenas in this case." Mot. at 3. In the Motion, Mr. Hilton seeks relief relating to the Subpoena, stating that he "was served with a sweeping third-party subpoena issued by Plaintiff's counsel, demanding private communications, unpublished materials, and internal records" and asserting that Ms. Lively has "targeted" several "other nonparty creator-journalists" with "similarly burdensome subpoenas" that amount to "fishing expeditions." *Id*. Mr. Hilton accuses counsel for Ms. Lively of "abusive discovery practices." *Id*. In the Motion Mr. Hilton also criticizes the Court of having "showed little care" and "dismiss[ing] [his] LEGITIMATE safety concerns." *Id*. at 1-2. Mr. Hilton proceeds to raise issues with the Court of which he admits it is not his "job or responsibility to inform" the Court. *Id*. at 2. The Court ordered any response to the Motion be filed by August 5, 2025. ECF No. 514.

On Saturday, August 2, 2025, Mr. Hilton sent undersigned counsel an email attaching a motion to quash the Subpoena that he filed in the United States District Court of the District of

---

[18] Mr. Freedman and Mr. Hilton have known each other for more than fifteen years. Mr. Freedman represented Mr. Hilton in a 2008 lawsuit in connection with Mr. Hilton's alleged publication of a woman's name and e-mail address. *See* https://www.hollywoodreporter.com/business/business-news/perez-hilton-wins-5-year-432980/.

Nevada. Ex. J, Mot. to Quash Subpoena, Case No. 2:25-01396, ECF. No. 1.[19] That Motion also complains that the Subpoena is "overbroad and abusive" and asks that court to "prevent further abuse of process and to uphold the legal protections afforded individuals" like Mr. Hilton. *Id*. at 2.

## LEGAL STANDARD

Rule 26(c) authorizes a district court to enter protective orders "for good cause." Fed. R. Civ. P. 26(c); *Langton v. Town of Chester*, No. 14CIV9474NSRLMS, 2018 WL 11425556, at *2 (S.D.N.Y. Jan. 18, 2018). Courts will liberally construe motions for protective orders when a movant is proceeding *pro se*. *Langton*, 2018 WL 11425556, at *2. "The discovery parameters set forth in Rule 26 also apply to subpoenas served upon non-parties," *Martin v. Integon Nat'l Ins*., No. 3:22-CV-00736 (CSH), 2024 WL 754413, at *3 (D. Conn. Feb. 22, 2024), and entitle the serving party to "any non-privileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1). "[R]elevance is construed broadly to encompass any matter that bears on, or that reasonably could lead to other matters that could bear on, any issue that is or may be in the case." *DoorDash, Inc. v. City of New York*, 754 F. Supp. 3d 556, 564 (S.D.N.Y. 2024).

## ARGUMENT

**I.    THE COURT SHOULD DENY THE MOTION TO REQUIRE MS. LIVELY TO SEEK PERMISSION BEFORE SERVING ADDITIONAL THIRD-PARTY SUBPOENAS.**

---

[19] The motion Mr. Hilton filed in Nevada has an ECF stamp of July 28, 2025, but he did not purport to serve counsel for Ms. Lively until August 2, 2025. Mr. Hilton filed notice of the Nevada filing on this Court's docket, with a transaction date for the payment of filing fees of July 31, 2025. Either way, Ms. Lively intends to file an opposition in Nevada by August 18, 2025 as the rules require and to request that court transfer the matter here for purposes of judicial economy unless this Court has entered an order rendering that filing moot.

**A. Mr. Hilton Cannot Seek Relief On Behalf Of Other Non-Parties.**

Mr. Hilton appears to be asking the Court to require Ms. Lively to seek permission before serving any "other nonparty creator-journalists" with Rule 45 subpoenas in the future. Mot. at 3. Mr. Hilton does not identify any specific non-party "creators" or provide declarations of any of them in support of his request for such relief. *Id*. at 1-2. Mr. Hilton cannot, as a matter of law, "ask for an order to protect the rights of another party or a witness" for which he does not claim, "if that party or witness does not claim protection for himself." *Barbera v. Grailed, LLC*, No. 24-CV-3535 (LJL), 2025 WL 2098635, at *12 (S.D.N.Y. July 25, 2025) (citation omitted). "As a general matter, only recipients of a subpoena have standing to seek a protective order quashing or modifying the subpoena." *City of Almaty, Kazakhstan v. Ablyazov*, No. 115CV05345AJNKHP, 2020 WL 1130670, at *1 (S.D.N.Y. Mar. 9, 2020)*; In re Ex Parte Application of Kleimar N.V.*, 220 F. Supp. 3d 517, 520 (S.D.N.Y. 2016) (holding that a third party "does not have standing to challenge discovery directed at other third parties"). This Court already has rejected as improper any attempt to seek "relief on behalf of other non-parties." ECF No. 503. The same principle applies here.

**B. Mr. Hilton Has Not Established "Good Cause" To Require Ms. Lively To Receive Permission Before Serving Third-Party Subpoenas.**

To the extent Mr. Hilton seeks relief on behalf of himself or has standing to seek relief on behalf of others, he has failed to meet his burden to demonstrate good cause to require Ms. Lively receive approval before serving third-party subpoenas. *Wilcock v. Equidev Cap. L.L.C.*, No. 99CIV.10781LTSDFE, 2001 WL 913957, at *1 (S.D.N.Y. Aug. 14, 2001). Ms. Lively is "entitled to seek discovery, from parties and non-parties alike, to support" her claims. *In re Flag Telecom Holdings, Ltd. Sec. Litig.*, No. 02 CIV. 3400 (WCC), 2005 WL 6457182, at *2 (S.D.N.Y. Sept. 21, 2005). Abrogating that right by requiring approval before serving subpoenas requires "evidence that the plaintiff has issued subpoenas improperly." *Campinas Found. v. Simoni*, No. 02CIV3965BSJKNF, 2004 WL 253303, at *2 (S.D.N.Y. Feb. 10, 2004). As the movant, Mr. Hilton

bears the burden of making a "particular and specific demonstration of fact as distinguished from stereotyped and conclusory statements" substantiating that a "clearly defined, specific and serious injury will occur in the absence of such an order." *See Erno v. NYS Off. of Info. Tech.*, No. 119CV1457NAMTWD, 2020 WL 7890746, at *1 (N.D.N.Y. Oct. 20, 2020) (internal quotations omitted); *Stickler v. Halevy*, No. 10 CV 4138 (JBW) (LB), 2011 WL 13323562, at *2 (E.D.N.Y. June 17, 2011); *accord Johnson v. J. Walter Thompson U.S.A., LLC*, No. 16CIV1805JPOJCF, 2017 WL 3055098, at *3 (S.D.N.Y. July 18, 2017).[20]

The Motion does not point to any "particular and specific" facts that demonstrate that Ms. Lively has served improper subpoenas, instead relying solely on generalized assertions of harm which are insufficient under Rule 26. *See* Mot. at 1-3. The only subpoena Mr. Hilton provides the Court is the one Ms. Lively served on him, which he characterizes as a "sweeping" and "overly broad" "fishing expedition." But Mr. Hilton does not explain, nor could he, why it is improper for Ms. Lively to seek information from a Content Creator who some of the Wayfarer Defendants *admit* created content or provided services on their behalf. *Supra* at 6-8. Nor does the Motion offer any explanation for *why* any or all of the seven requests narrowly directed to Mr. Hilton's own communications and arrangements with the Wayfarer Defendants are improper. Mr. Hilton's generalized complaints that Ms. Lively is attempting to chill the First Amendment likewise is not predicated on any "facts" supporting that claim and, for the reasons discussed below, the Subpoena does not implicate any First Amendment privilege. *Infra* at 17-21.

Mr. Hilton's generalized concerns about privacy also fail to justify his relief, especially in

---

[20] None of the cases Mr. Hilton cites in the Motion relate at all to the type of protective order he seeks, *i.e.*, one requiring Ms. Lively seek approval for future third-party subpoenas, and therefore do not provide any support for his argument. As far as Mr. Hilton's citation to *Hafkin v. United States*, No. 20-CV-08034 (RA) (S.D.N.Y. Apr. 7, 2021) (Mot. at 4), counsel for Ms. Lively have attempted and been unable locate any such decision or case or evidence that such a case exists. *See, generally*, *Benjamin v. Costco Wholesale Corp.*, No. 2:24-CV-7399 (LGD), 2025 WL 1195925, at *1 (E.D.N.Y. Apr. 24, 2025) ("Although AI tools can make legal work more efficient, they also can 'hallucinate'— that is, they produce blatantly incorrect information that, on its face, appears truthful.").

light of the Court's previous Order explaining that the Court's existing procedures are sufficient to provide privacy. *Supra* at 10. There is no reason to find that Ms. Lively will not comply with all applicable confidentiality protections, including in the affidavits of service to which Mr. Hilton refers because addresses generally are not among the categories of information that Federal Rule of Civil Procedure 5.2(a) requires to be redacted from public filings.

Finally, Mr. Hilton's argument that the Subpoena imposes an "undue burden" is insufficient to show that it is *improper*. *Samsung Elecs. Co., Ltd. v. Microchip Tech. Inc.*, 347 F.R.D. 252, 261 (S.D.N.Y. 2024) ("The assertion that a subpoena is burdensome, without evidence to prove the claim, cannot form the basis for an 'undue burden' finding."); *DoorDash, Inc. v. City of New York*, 754 F. Supp. 3d 556, 579 (S.D.N.Y. 2024) (no undue burden where nonparty had not made "an evidentiary showing" of any "financial detriment"); *California Att'y Lending, LLC v. Legal Recovery Assocs., LLC*, No. 123MC00020LJVMJR, 2023 WL 7037474, at *5 (W.D.N.Y. Oct. 26, 2023) (non-party must set "forth the manner and extent of the burden and the probable negative consequences"). The only "evidence" Mr. Hilton identifies—an unverified screenshot of another non-party's social media post claiming to have spent more than $5,000 on legal fees (ECF No. 510-2)—is neither competent nor probative evidence of any impropriety by Ms. Lively.[21] The Court should not require Ms. Lively to seek approval prior to issuing third-party subpoenas because "the record is barren of any evidence that [she] has issued subpoenas improperly." *See Campinas*, 2004 WL 253303, at *2.

## II.   THE COURT SHOULD CONSTRUE THE MOTION AS SEEKING A PROTECTIVE ORDER AS TO THE SUBPOENA, AND DENY IT.

---

[21] As the Court is aware, Ms. Lively issued third-party subpoenas to discover connections between the Wayfarer Defendants and specific content disseminated through platforms such as YouTube and X, and has withdrawn certain of the requests after conferrals, reviewing motions to quash, and/or other public information. *See* ECF Nos. 496, 497, 550. There is nothing harassing or improper of such a process.

Since "the Court must liberally construe" a *pro se* movant's "filings to raise the strongest arguments that they suggest[,]" it should construe Mr. Hilton's Motion as seeking to challenge the Subpoena on grounds that it is improperly broad, burdensome, and seeks materials protected by privilege. *See Franks v. City of New Rochelle*, No. 24-CV-539-KMK-VR, 2024 WL 1636456, at *2 (S.D.N.Y. Apr. 16, 2024); Mot. at 1 ("sweeping" "demanding private communications unpublished materials, and internal records"); *id*. ("burdensome" and "attempt to chill protected First Amendment Speech"; *id*. ("fishing expedition" and "seeking to harass"). Consistent with that construal, virtually all of the cases Mr. Hilton cites in the Motion relate to motions to quash. *See, e.g.*, *Concord Boat Corp. v. Brunswick Corp.,* 169 F.R.D. 44, 47 (S.D.N.Y. 1996); *Nova Prods., Inc. v. Kisma Video, Inc*., 220 F.R.D. 238, 241 (S.D.N.Y. 2004). Accordingly, the Court should construe Mr. Hilton's filing as attempting to assert objections to the Subpoena, overrule them, and deny the Motion.

### A. Mr. Hilton Does Not Dispute That The Information Sought by Ms. Lively is Relevant to Her Claims.

Mr. Hilton does not appear to challenge that the Subpoena seeks relevant information, nor does he address the Defendants' concession that he directly or indirectly provided the Wayfarer Defendants with content or related services at their request. *Supra* at 6-8. How the Wayfarer Defendants, or individuals acting on their behalf, perpetuated the smear campaign against Ms. Lively (including by enlisting content creators like Mr. Hilton) to generate pro-Baldoni, anti-Lively content, and what the Wayfarer Parties communicated to third parties about Ms. Lively, are central to the retaliation and defamation claims in this case. *Gilead*, 2025 WL 1151412, at *7 ("Information is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action.").

16

Indeed, neither Mr. Hilton nor any of the Wayfarer Defendants have challenged the relevance of communications among them. There is no reason for the Court to find otherwise.

### B.  The Subpoena Is Narrowly Tailored To Core Issues in This Case.

The Subpoena's seven requests each are narrowly tailored to the core issues in the case, including the Wayfarer Defendants' efforts to use content creators, such as Mr. Hilton, to seed, generate, create, or influence public narratives about Ms. Lively in order to perpetuate the retaliation campaign. The requests are limited to only: (i) communications, agreements, or understandings between Mr. Hilton and the Wayfarer Defendants or their counsel; (ii) documents or communications reflecting the receipt or use of any content supplied by those individuals; and (iii) any consideration received in connection with such content. *See* Ex. A. Those issues are central to Ms. Lively's case, and the requests do not seek broad categories of materials that would go beyond those topics, including concerning Mr. Hilton's business or communications with anyone other than any of the Wayfarer Defendants or individuals or entities acting on their behalf.

### C.  The Subpoena Does Not Seek The Disclosure Of Privileged Materials.

1.  The Subpoena does not seek material covered by any applicable journalist's privilege.

    i.  *Mr. Hilton was not acting as a "professional journalist" when he generated the materials sought.*

To avail himself of a reporter's privilege, Mr. Hilton must demonstrate that he was acting in his capacity as a "professional journalist"—meaning he "engaged in gathering, preparing, collecting, writing, editing, filming, taping or photographing of news intended for a newspaper, magazine, news agency, press association or wire service or other professional medium or agency which has as one of its regular functions the processing and researching of news intended for dissemination to the public"—in connection with the material Ms. Lively seeks. N.Y. Civ. Rights Law § 79-h(a)(6); *Aspen Fin. Servs., Inc. v. Eighth Jud. Dist. Ct. of State ex rel. Cnty. of Clark*,

129 Nev. 878, 884 (2013) (movant must demonstrate "that the information sought by the subpoena is facially protected by the news shield statute").[22] Mr. Hilton does not identify himself as a journalist on any of his Platforms, but rather self describes as an influencer, which Merriam-Webster defines as "a person who is able to generate interest in something (such as a consumer product) by posting about it on social media." *Influencer*, Merriam-Webster Dictionary, https://www.merriam-webster.com/dictionary/influencer (last visited Aug. 4, 2025).

TAG relied on Mr. Hilton in his capacity as an influencer to seed, generate, create, or influence content or provide "digital or social media services directly or indirectly at the request of, or on behalf of, any Wayfarer Party or their agents or affiliates." *Supra* at 6-8. Creating for-profit content based on its beneficial value to Mr. Hilton's friends and allies (including contractual counterparties), rather than its newsworthiness, strongly "weighs against" finding that Mr. Hilton was acting in the capacity as a "professional journalist" while communicating with the Wayfarer Defendants. *In re Fitch, Inc.*, 330 F.3d 104, 109 (2d Cir. 2003) (affirming district court's ruling that credit reporting agency did not qualify as a "journalist" where communications with the client "reveal[ed] a level of involvement with the client's transactions that is not typical of the relationship between a journalist and the activities upon which the journalist reports"). As this Court has recognized, the "reporter's privilege is intended to protect the public's interest in being informed by 'a vigorous, aggressive and *independent* press.'" ECF No. 118 (March 4, 2025 Order) (citation omitted). The Second Circuit has explained that the "issue of the independence of the

---

[22] Whether the applicable privilege is rooted in common law, New York, or Nevada law, they all require Mr. Hilton to demonstrate that he is a professional journalist. *See* N.Y. Civ. Rights Law § 79-h(b) ("New York Shield Law") (providing "professional journalists" with a "privilege" against the compelled disclosure of "news obtained or received in confidence or the identity of the source of such news"); N.V. Rev Stat § 49.275 (applies to "to reporter, former reporter or editorial employee of any newspaper, periodical or press association or employee of any radio or television station"); *Fitch*, 330 F.3d at 109 (only "subtle" but "not material" differences between New York's Shield Law and common law privilege). The Court need not engage in any choice of law analysis when determining whether any such privilege is applicable. To the extent Mr. Hilton argues the application of Nevada law or a conflict among the laws, Ms. Lively reserves the right to seek a sur-reply to apply Nevada law.

journalistic process is crucial" to determining whether to permit an individual to assert the

privilege:

> For determining the existence, or in any event the strength, of the press privilege, *all forms of intention to publish or disseminate information are not on equal footing*. While freedom of speech and of the press belongs to virtually anyone who intends to publish anything (with a few narrow exceptions), *all those who intend to publish do not share an equal entitlement to the press privilege from compelled disclosure. Those who gather and publish information because they have been commissioned to publish in order to serve the objectives of others who have a stake in the subject of the reporting are not acting as an independent press. Those who do not retain independence as to what they will publish but are subservient to the objectives of others who have a stake in what will be published have either a weaker privilege or none at all*.

> This distinction is perhaps best understood through an illustrative example. Consider two persons, Smith and Jones, who separately undertake to investigate and write a book or article about a public figure in national politics. Smith undertakes to discover whatever she can through her investigations and to write a book that reflects whatever her investigations may show. Jones has been hired or commissioned by the public figure to write a book extolling his virtues and rebutting his critics. Smith unquestionably presents a stronger claim of entitlement to the press privilege (which is not to say the privilege might not be overcome, depending on the circumstances). Jones, who was commissioned to write a book promoting a particular point of view regardless of what her investigations may reveal, either possesses no privilege at all or, if she possesses the privilege, holds one that is weaker and more easily overcome.

> The privilege is designed to support the press in its valuable public service of seeking out and revealing truthful information. *An undertaking to publish matter in order to promote the interests of another, regardless of justification, does not serve the same public interest, regardless of whether the resultant work may prove to be one of high quality. It is not the policy of the law to exempt such undertakings from the obligation to produce information relevant to a dispute before a court of law*.

*Chevron Corp. v. Berlinger*, 629 F.3d 297, 307–08 (2d Cir. 2011) (emphasis added); *accord von Bulow by Auersperg v. von Bulow*, 811 F.2d 136, 144 (2d Cir. 1987) ("a paramount public interest in the maintenance of a vigorous, aggressive and *independent* press") (emphasis added); *In re Madden*, 151 F.3d 125, 130 (3d Cir. 1998) (refusing to extend the reporter's privilege to an entertainment columnist, holding that the privilege requires intent to gather and disseminate news

19

in the public interest – not celebrity gossip or promotional content); *Novagold Res., Inc. v. JCap Rsch. USA LLC*, No. 1:20-CV-02875, 2024 WL 4250265, at *6 (E.D.N.Y. Mar. 29, 2024) ("Evidence of financial independence is undoubtedly an important aspect of ensuring a free press."); *LaSalle Natl. Bank v. Duff & Phelps Credit Rating Co.,* 951 F. Supp. 1071, 1096 (S.D.N.Y. 1996) (credit reporting agency not protected by Shield Law where its rating "was privately contracted for and intended for us in the private placement Offering Memoranda").[23]

It would defy the animating principle behind the reporter's privilege to bar Ms. Lively from inquiring into content that Mr. Hilton generated based not on newsworthiness or the standards of professional independent journalism, but instead at the behest of private individuals who Ms. Lively has alleged were perpetuating a retaliatory campaign against her. It is not enough to assert that one is a "journalist," *but see* Mot. 1, when one does not engage in the vital activities that the law deems essential to being eligible for the application of the shield. While an influencer can, of course, be engaged in the "processing and researching of news intended for dissemination to the public," many influencers are engaged in entirely distinct types of commercial activity, such as for-profit brand or product promotion, advocacy on behalf of a person or corporation, or more.[24] Here, the information Ms. Lively seeks from Mr. Hilton is entirely aimed at his commercial activities that fall outside of the "processing and researching of news." Mr. Hilton is in the business of shaping narratives for clicks and profit, not informing the public. That is not the kind of work

---

[23] *See Too Much Media, LLC v. Hale*, 206 N.J. 209, 216, 218-19, 223, 228 (2011) (privilege did not extend "to a self-described journalist" who "exhibited none of the recognized qualities or characteristics traditionally associated with the news process, nor has she demonstrated an established connection or affiliation with any news entity").

[24] As an influencer, Mr. Hilton acts more akin to an advertiser whose role is to promote (not report) and who government agencies and courts have required to disclose their lack of independence. *See, e.g.*, FTC's "Guides Concerning the Use of Endorsements and Testimonials in Advertising, 16 C.F.R. 255 (2023) (treating influencers as advertisers, imposing disclosure requirements precisely because their content is commercial in nature); *Sava v. 21St Century Spirits, LLC*, 2024 WL 3161625, at *13 (N.D. Ill. June 25, 2024) (finding influencers who failed to disclose paid relationships could mislead consumers by presenting themselves as disinterested parties); *Ariix, LLC v. NutriSearch Corp.*, 985 F.3d 1107, 1116 (9th Cir. 2021) (even speech that does not resemble traditional advertising may still qualify as commercial speech if motivated by financial gain).

that New York's shield law was designed to protect. The Court need not engage in any further analysis if it finds Mr. Hilton cannot avail himself of a privilege reserved for individual working in their capacity as a "professional journalist."

ii.     *If applicable, the New York Shield Law does not protect the information Ms. Lively seeks.*

To successfully raise a claim of privilege under the New York Shield Law, the movant bears the burden of proving the specific information was imparted "under a 'cloak of confidentiality" with "an understanding, express or implied, that the information will not be disclosed." *People v. Bova*, 460 N.Y.S.2d 230, 233 (Sup. Ct. 1983); *Lipinski v. Skinner*, 781 F. Supp. 131, 136 (N.D.N.Y. 1991). The purpose of this rule is to protect the relationship between a journalist and his or her sources. But Mr. Hilton has not made any showing to establish that the communications in his possession are confidential, nor that his "influencer" activities rely upon the use of confidential sources to whom he offers confidentiality in exchange for information. *See People v. Troiano*, 486 N.Y.S.2d 991, 994 (N.Y.Co. Ct. 1985) (journalist privilege did not apply where "it [could not] be ascertained that there was an agreement between the parties as to what would be published and what would be kept secret"); *Bova*, 460 N.Y.S.2d at 233 (journalist privilege did not apply where nonparty "failed to adequately assert that the . . . interview was conducted under the requisite 'cloak of confidentiality'"); *Lipinski*, 781 F. Supp. at 136 (journalist privilege did not apply where nonparty offered nothing—other than "general statements"—to "indicate that every piece of information he possesse[d] relevant to th[e] lawsuit [was] confidential"). To the extent there was any confidentiality, it no longer exists since various of the Wayfarer Defendants have admitted to communicating with and providing content to Mr. Hilton. *Supra* at 6-8.

Because the information sought is not confidential, New York's Shield Law, if it applies, provides Mr. Hilton with only a qualified privilege, which is overcome here because the information sought by the Subpoena is: (i) highly material and relevant; (ii) critical or necessary to the maintenance of a party's claim, defense or proof of an issue material thereto; and (iii) not obtainable from any alternative source. N.Y. Civ. Rights Law § 79–h(c). The first prong of this three-part test is clearly satisfied, as the information Ms. Lively seeks is directly relevant to her claims for the reasons set forth above.

The second prong of the test also favors disclosure because Ms. Lively is entitled to redress injuries caused by the retaliatory and defamatory conduct of the Wayfarer Defendants. The information in Mr. Hilton's possession is critical to Ms. Lively's due and proper preparation for trial, and the exclusion of such evidence would deprive Ms. Lively of necessary information to establish the "untraceable" and unlawful campaign of retaliation the Wayfarer Defendants have waged against Ms. Lively through their host of (even unwitting) content creators. *In re Nat. Gas Commodities Litig.*, 235 F.R.D. 241, 244 (S.D.N.Y. 2006) ("material sought is 'necessary or critical' to the case . . . where the party's claim or defense 'virtually rises or falls with the admission or exclusion of the proffered evidence'").

Finally, the third prong is met because Ms. Lively has been attempting to obtain the Wayfarer Defendants' communications with content creators such as Mr. Hilton *for nearly six months. Supra* at 6-8. The Wayfarer Defendants have, at every turn, refused to provide such information voluntarily and insisted that Ms. Lively expend considerable resources, fighting objections and litigating her entitlement to these communications. To date, Ms. Lively has received virtually no communications with content creators, and none with Mr. Hilton despite the fact that neither Mr. Hilton nor the Wayfarer Defendants have denied their existence. None of the Wayfarer

Defendants have produced any Signal communications—notwithstanding admissions to using ███

███████████████████████████████████████████████—which leads to the strong

possibility that the Wayfarer Defendants have deleted, destroyed, or lost evidence. The refusal of

the Wayfarer Defendants to produce (or perhaps to retain) such communications, combined with

this Motion, amounts to a shell game that risks depriving Ms. Lively from discovering pertinent

information about the retaliation scheme. While Ms. Lively has filed a motion to compel the

production of such information, time is running low with document discovery ten days from

closing. Under these circumstances, there is no basis for requiring Ms. Lively to continue incurring

expenses attempting to identify what party or third-party has possession, custody, or control of the

communications and compel their production in multiple courts when there is no question that Mr.

Hilton possesses them. *See Nat. Gas Commodities*, 235 F.R.D. at 245 (requested data was not

obtainable from other sources where Plaintiffs sought the information from Defendants but none

of which produced a complete set of the reported data); *In re Nat. Gas Commodity Litig.*, 235

F.R.D. 199, 216 (S.D.N.Y. 2005) (reporter's privilege "does not require that every theoretical

source be exhausted"); *accord In re W. States Wholesale Nat. Gas Antitrust Litig.*, No.

203CV01431PMPPAL, 2009 WL 10692733, at *16 (D. Nev. Aug. 14, 2009) (litigant not required

"to engage in onerous, wide-ranging discovery, or discovery from every conceivable source");

*U.S. Commodity Futures Trading Comm'n v. McGraw-Hill Companies, Inc.*, 507 F. Supp. 2d 45,

55 (D.D.C. 2007) ("In exhaustion, the rule of reason governs.").[25]

---

[25] *See also California Att'y*, 2023 WL 7037474, at *6 (third party subpoena requests overlapping with party discovery were proper where plaintiff "made efforts to obtain much of this information through party discovery"); *DoorDash*, 754 F. Supp. 3d at 580 ("overlap between the communications Plaintiffs are seeking from the Non-Parties and the communications Plaintiffs have obtained or will obtain from the [Defendant] . . . is an insufficient ground on which to quash [a] subpoena"); *Allstate Ins. Co. v. A & F Med. P.C.*, No. 14-CV-6756 (JBW), 2016 WL 7116067, at *3 (E.D.N.Y. Dec. 6, 2016) ("Even assuming arguendo that the subpoenaed documents were sought by plaintiffs through party discovery . . . plaintiffs are nevertheless within their rights to seek the discovery from a non-party"); *Amphenol Corp. v. Fractus, S.A.*, No. 19 MISC. 160 (PAE), 2019 WL 2521300, at *11 (S.D.N.Y. June 19, 2019) ("that [plaintiff]

2.     The Requested Documents Are Not Protected By the Attorney Client Privilege

The Subpoena seeks only non-privileged documents and communications. It is well-established that even "where an attorney-client relationship exists, the client may not reflexively withhold every communication with its attorney as privileged." *Bonde v. Wexler & Kaufman, PLLC*, 345 F.R.D. 31, 39–40 (S.D.N.Y. 2023). Mr. Hilton has insisted, repeatedly, that Mr. Freedman is not serving as his counsel with respect to the Subpoena, nor has he asserted that he was serving as his counsel at any point relating to this matter. Accordingly, communications between Mr. Hilton and Mr. Freedman concerning the issues in this case—rather than issues for which Mr. Hilton retained Mr. Freedman—are not confidential communications for purposes of obtaining legal advice and must be produced. *Roche Freedman LLP v. Cyrulnik*, No. 21CV01746JGKSN, 2022 WL 17979801, at *1 (S.D.N.Y. Dec. 28, 2022) ("When an attorney is consulted in a capacity other than as a lawyer, as (for example) a policy advisor, media expert, business consultant, banker, referee or friend, that consultation is not privileged."); *see also* 1 McCormick On Evid. § 88 (9th ed. 2025) (same).

**D.  Mr. Hilton Has Failed To Demonstrate Any Undue Burden.**

Mr. Hilton has failed to meet his burden of demonstrating that the Subpoena causes undue burden. *Malibu Media, LLC v. Doe*, No. 15CV3504JFBSIL, 2016 WL 4444799, at *5 (E.D.N.Y. Aug. 23, 2016) (party challenging subpoena bears the burden of demonstrating undue burden). "Whether a subpoena imposes an undue burden depends upon factors such as relevance, the requesting party's need for the documents, the breadth of the document request, the time period covered by it, the particularity with which the documents are described, and the burden imposed."

---

may be able to seek discovery (some likely overlapping) on these subjects from the Carrier Defendants does not preclude [plaintiff] from seeking such discovery from [a non-party]") (collecting cases).

*Sberbank of Russia v. Traisman*, No. 3:14CV216 (WWE), 2016 WL 4479533, at \*1 (D. Conn. Aug. 23, 2016). As discussed above, Mr. Hilton has not shown any undue financial detriment or probable negative consequences that would result from compliance with the subpoena. *Supra* at 15 (citing cases); *see also Amphenol*, 2019 WL 2521300, at \*10 (finding no undue burden from subpoena "requesting . . . discovery tightly focused on a limited number of [subjects]"). Nor can he demonstrate that the information requested is irrelevant, overbroad, or unnecessary to Ms. Lively's case. *See Supra* at 16, 17, 22. Moreover, as Ms. Lively has been unable to obtain the documents sought from the Wayfarer Defendants, she may properly seek them directly from Mr. Hilton. *See Supra* at 23 n. 25 (collecting cases).

## III. THE COURT SHOULD COMPEL MR. HILTON TO RESPOND TO AND PRODUCE MATERIALS RESPONSIVE TO THE SUBPOENA.

Mr. Hilton has submitted to this Court's jurisdiction by seeking affirmative relief in this action and, accordingly, it is within this Court's power to compel him to produce all materials responsive to the Subpoena. *See* ECF Nos. 470, 478, 510; *Wultz v. Bank of China, Ltd*, 304 F.R.D. 38, 43 n.5 (D.D.C. 2014) ("if a nonparty 'moves for a protective order in the court of the underlying action [he] thereby submits to that court's jurisdiction'"); *see also Andros Compania Maritima, S.A. v. Intertanker Ltd.*, 718 F. Supp. 1215, 1217 (S.D.N.Y. 1989) ("appearing and seeking affirmative relief from the Court" waives "a[ny] challenge to the Court's in personam jurisdiction").

Ms. Lively respectfully requests that the Court compel Mr. Hilton to respond to the Subpoena in full within seven days of entry of an order. For the reasons discussed above, all the arguments advanced by Mr. Hilton (and therefore the sole objections preserved) fail. Accordingly, Mr. Hilton must produce all material responsive to the Subpoena other than those subject to another applicable privilege and, as to any withheld materials, a privilege log that complies with the federal

rules. In the event the Court grants Ms. Lively's cross-motion to compel, it should order Mr. Hilton

to pay the attorney fees required to compel such discovery. *See* Fed. R. Civ. P. 37(a)(5).

Respectfully submitted,

Dated: August 5, 2025                       /s/ Esra A. Hudson

WILLKIE FARR & GALLAGHER LLP        MANATT, PHELPS & PHILLIPS LLP
Michael J. Gottlieb                         Esra A. Hudson (admitted *pro hac vice*)
Kristin E. Bender                           Stephanie A. Roeser (admitted *pro hac vice*)
1875 K Street NW                            2049 Century Park East, Suite 1700
Washington, DC 20006                        Los Angeles, California 90067
(202) 303-1000                              (310) 312-4000
mgottlieb@willkie.com                       ehudson@manatt.com
kbender@willkie.com                         sroeser@manatt.com

Aaron E. Nathan                             Matthew F. Bruno
787 Seventh Avenue                          7 Times Square
New York, NY 10019                          New York, NY 10036
(212) 728-8904                              (212) 790-4525
anathan@willkie.com                         mbruno@manatt.com

                                            DUNN ISAACSON RHEE LLP
                                            Meryl C. Governski (admitted *pro hac vice*)
                                            401 Ninth Street, NW
                                            Washington, DC 20004
                                            (202) 240-2900
                                            mgovernski@dirllp.com

*Attorneys for Blake Lively*