# EXHIBIT K

**P. Hilton's Letters Filed in SDNY Action**

# ECF No. 541

July 31, 2025

**Notice of Motion to Quash Subpoena Filed in the District of Nevada**

Judge Liman,

I - Mario Armando Lavandeira, Jr., known professionally as Perez Hilton - write as a nonparty in Lively v. Wayfarer Studios LLC (1:24-cv-10049) to inform the Court that today I filed a Motion to Quash the subpoena served on me by counsel for Plaintiff Blake Lively on July 19th.

My motion was filed in the United States District Court for the District of Nevada.

Las Vegas was listed as the place for compliance in the subpoena. It is also where I live and work and the appropriate venue for me to fight Blake Lively's pattern of abusive discovery practices. The subpoena she served on me is legally unsound and unenforceable.

This letter is provided as a courtesy to ensure that the Court is aware that proceedings relating to the enforceability of the subpoena are now pending in Nevada under Case No. 9875. See Exhibit A.

I have informed counsel for Ms. Lively and served them notice of my Motion To Quash. See Exhibit B.

Please note that no action is required from the Southern District of New York and I am simply fulfilling my obligation to inform the Court of developments that may relate to discovery matters in this case.

Submitted,

/s/ Mario Armando Lavandeira, Jr.

Mario Armando Lavandeira, Jr.

aka Perez Hilton

Generated: Jul 31, 2025 3:12PM

## U.S. District Court

### Nevada None - Las Vegas

Receipt Date: Jul 31, 2025 3:12PM

Mario Lavandeira

| Rcpt. No: 200015536 | | Trans. Date: Jul 31, 2025 3:12PM | | | Cashier ID: #RG (4937) | |
| --- | --- | --- | --- | --- | --- | --- |
| CD | Purpose | Case/Party/Defendant | | Qty | Price | Amt |
| 205 | Miscellaneous Filing Fees | | | 1 | 52.00 | 52.00 |

| CD | Tender | | | | | Amt |
| --- | --- | --- | --- | --- | --- | --- |
| MO | Money Order | #9875 | 07/31/2025 | | | $52.00 |
| | | | Total Due Prior to Payment: | | | $52.00 |
| | | | Total Tendered: | | | $52.00 |
| | | | Total Cash Received: | | | $0.00 |

**Comments**: 2:25-ms-00060

Only when the bank clears the check, money order, or verifies credit of funds, is the fee or debt officially paid or discharged. A $53 fee will be charged for a returned check.



003

# ECF No. 558

August 2, 2025

**Notice of Motion to Quash Subpoena Filed in the District of Nevada**

Judge Liman,

I - Mario Armando Lavandeira, Jr., known professionally as Perez Hilton - write as a nonparty in Lively v. Wayfarer Studios LLC (1:24-cv-10049) to inform the Court that I have filed a Motion to Quash the subpoena served on July 19th by counsel for Plaintiff Blake Lively.

My motion was filed in the United States District Court for the District of Nevada. I am attaching PDFs of the filing, which has been ingested and docketed by the court.

Las Vegas was listed as the place for compliance in the subpoena. It is also where I live and work and the appropriate venue for me to fight Blake Lively's pattern of abusive discovery practices. The subpoena she served on me is legally unsound and unenforceable.

It is my immense pleasure that this will all be decided in Nevada and not in your court, where - in my opinion - you have shown clear bias in favor of the defendant and have ruled in a manner that is shameful and of great concern for the public.

Per the court in Nevada: *NOTICE that this case, formerly Misc. Case No. 2:25-ms-00060, having become a contested proceeding on 7/28/25, has been converted to the regular civil docket and has been assigned case number 2:25-cv-01396. All future pleadings must be filed in the civil action and must bear said civil case number. (RJDG) (Entered: 07/31/2025)*

I have informed the unethical counsel for Ms. Lively and served them notice of my Motion To Quash. See Exhibit B.

Please note that no action is required from the Southern District of New York and I am simply fulfilling my obligation to inform the Court of developments that may relate to discovery matters in this case.

xoxo

/s/ Mario Armando Lavandeira, Jr.

Mario Armando Lavandeira, Jr.

aka Perez Hilton

# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA



**In Re Subpoena to:**

**MARIO LAVANDEIRA JR. aka PEREZ HILTON**

**MOTION TO QUASH SUBPOENA**

Non-party Mario Armando Lavandeira Jr., aka Perez Hilton, appearing pro se, respectfully moves this Court to quash the subpoena issued to him by the Southern District of New York in the matter of Blake Lively v. Wayfarer Studios, et al., for the reasons set forth below.

Mr. Lavandeira is a Nevada resident who was served in Nevada. The subpoena commands compliance at a location within this district, making this Court the appropriate venue for adjudicating this motion under Federal Rule of Civil Procedure 45(d)(3).

## PRELIMINARY STATEMENT

This motion challenges a subpoena that is overbroad and abusive. It targets Mario Armando Lavandeira Jr., professionally known as Perez Hilton — a private citizen, a resident of Nevada, and a journalist who is wholly uninvolved in the litigation pending in the Southern District of New

006

York. Mr. Lavandeira is not a party, not a witness, and not alleged to possess any unique information relevant to the claims at issue. Yet, the subpoena demands sensitive, privileged, and constitutionally protected materials - in blatant disregard for the First Amendment, Nevada's Shield Law, and Rule 45's procedural protections.

This is not discovery — it is a fishing expedition that chills journalistic freedom and imposes undue burden on a non-party. The Court should quash this subpoena in its entirety to prevent further abuse of process and to uphold the legal protections afforded to individuals like Mr. Lavandeira.

I anticipate that the subpoenaing party may attempt to characterize me as merely a "content creator" or social media personality. That framing is inaccurate and misleading. I am a journalist — a globally recognized one — with a decades-long track record of reporting on matters of public interest. For over 20 years, I have operated PerezHilton.com, a daily news website that continues to publish original reporting, commentary, and media coverage. The Court is invited to review the site to confirm that it remains an active and ongoing journalistic enterprise. My work and I have been cited by mainstream outlets, referenced in legal filings, and are followed by millions. I adhere to journalistic standards, protect my sources, and conduct my job in the same professional capacity as any reporter. Courts have long held that reporter's privilege and First Amendment protections apply regardless of platform — whether print, digital, or social — and I am no exception. This motion should be evaluated in light of my role as a working journalist entitled to all applicable legal protections.

## I. THE SUBPOENA IMPOSES AN UNDUE BURDEN ON A NON-PARTY

This subpoena places an undue and unjustifiable burden on me, a private citizen and non-party with no involvement whatsoever in the underlying litigation. I am not a party, not a witness, and not alleged to possess unique information relevant to any claim or defense in the case. As such, I am entitled to the strongest possible protection under Federal Rule of Civil Procedure 45(d)(3)(A), which mandates that courts must quash subpoenas that impose an undue burden.

The burden here is not hypothetical - it is real and severe. Complying would require extensive effort to review, compile, and potentially testify about private communications or unpublished material, none of which have been shown to be relevant, proportional, or obtainable from a more appropriate source. Courts have consistently held that discovery burdens placed on non-parties are to be given special weight and must be narrowly tailored (see Cusumano v. Microsoft Corp., 162 F.3d 708, 717 (1st Cir. 1998)).

The Ninth Circuit has echoed this view, warning that non-parties should not be conscripted into wide-reaching, speculative discovery campaigns (see Gonzales v. NBC, 194 F.3d 29, 35 (2d Cir. 1999), cited favorably in Shoen v. Shoen, 5 F.3d 1289, 1292 (9th Cir. 1993)). The subpoena here flouts this standard.

The burden here is especially disproportionate given my complete lack of involvement in this litigation and the absence of any claim that I possess unique knowledge. Requiring a non-party journalist to expend substantial time, energy, and resources to comply with an overly broad and invasive subpoena is exactly what Rule 45(d)(3)(A)(iv) was designed to prevent.

Courts have consistently held that non-parties deserve special protection from the burdens of civil discovery. See Cusumano v. Microsoft Corp., 162 F.3d 708, 717 (1st Cir. 1998) ("[C]oncern for the unwanted burden thrust upon non-parties is a factor entitled to special weight in evaluating the

balance of competing needs."). This is especially true for journalists. See Gonzales v. NBC, 194 F.3d 29, 35 (2d Cir. 1999) ("[C]ompelled disclosure from journalists is not appropriate unless the party has first exhausted all alternative sources.").

Since receiving this subpoena, I have already spent a substantial amount of time researching the law, drafting this motion, and defending my rights — time that has taken me away from my job as a journalist and from my responsibilities as a parent. That burden is real, personal, and entirely unjustified. The discovery process is not a license to conscript journalists into litigation to which they are strangers — especially when the requesting party has not even attempted to seek the information from more direct sources.

## II. THE SUBPOENA VIOLATES REPORTER'S PRIVILEGE AND THE FIRST AMENDMENT

The subpoena strikes at the heart of my constitutionally protected role as a journalist and media commentator. It seeks information obtained during the course of my newsgathering activities - information that is protected by both federal law and Nevada's absolute reporter's privilege.

Under well-established Ninth Circuit precedent, courts recognize a qualified journalist's privilege against compelled disclosure of both confidential and non-confidential information. This privilege arises from the First Amendment and protects against discovery that would chill freedom of the press and hinder the free flow of information to the public. As held in Shoen v. Shoen, 5 F.3d 1289 (9th Cir. 1993), and reaffirmed in Shoen v. Shoen, 48 F.3d 412 (9th Cir. 1995), the party seeking to overcome this privilege must demonstrate that the information is (1) highly relevant, (2) unavailable by alternative means, and (3) crucial to the case. Blake Lively's legal team has made

no such showing - nor could they.

Courts have repeatedly affirmed that even non-anonymous individuals enjoy robust First Amendment protections against compelled disclosure that would chill speech or association. In Perry v. Schwarzenegger, 591 F.3d 1147, 1152 (9th Cir. 2010), the Ninth Circuit quashed a subpoena seeking internal communications from identified individuals and advocacy groups involved in public discourse, holding that "[t]he freedom to associate with others for the common advancement of political beliefs and ideas lies at the heart of the First Amendment." The court concluded that compelled disclosure in such contexts poses a "serious risk of chilling" public participation, and thus must be narrowly tailored and justified by a compelling need — a standard not remotely met here.

As a Nevada resident, and with the place of compliance located in Nevada, I am also protected by Nevada's Shield Law, codified at NRS 49.275. This statute grants journalists absolute immunity from being compelled to disclose any published or unpublished information or the identity of any source, regardless of confidentiality. This includes digital media and online reporting.

Because I reside and was served in Nevada, and enforcement is being sought in the District of Nevada, this Court should apply Nevada privilege law in evaluating the subpoena. Under Federal Rule of Evidence 501, "state law governs privilege regarding a claim or defense for which state law supplies the rule of decision." Even when federal law applies, courts often consider state privilege laws when those laws offer heightened protection, particularly in cases involving non-party journalists. Nevada's Shield Law provides categorical protection against compelled disclosure of both published and unpublished information obtained in the course of journalism. That absolute privilege applies here.

Enforcing the subpoena would violate my First Amendment rights, the statutory protections of NRS 49.275, and long-standing judicial precedent. This Court must quash the subpoena to prevent the chilling effect it would have on press freedom, independent journalism, and the ability of reporters to inform the public without fear of compelled disclosure.

## III. THE SUBPOENA IS PROCEDURALLY DEFECTIVE AND LEGALLY INVALID UNDER RULE 45

This subpoena suffers from multiple procedural and jurisdictional defects that violate both the letter and spirit of Rule 45. As outlined below, it was issued from the wrong court, exceeds geographic limitations, and lacks enforceability.

First, it violates Rule 45(c)(1)(A), which limits the geographic scope of compliance. The subpoena was issued from the Southern District of New York but seeks compliance in Nevada — more than 2,000 miles away. Rule 45 strictly prohibits compelling attendance or production more than 100 miles from where the person resides, is employed, or regularly transacts business in person. Courts have repeatedly held that subpoenas served outside this range are invalid and unenforceable. See Schwarz v. Meinberg, No. 2:16-mc-00016, 2016 WL 4011620, at *2 (C.D. Cal. July 15, 2016); In re Apple Inc., 581 F. App'x 886, 889 (Fed. Cir. 2014); Powell v. Time Warner Cable, Inc., No. 2:09-CV-00600, 2010 WL 5464895, at *3 (S.D. Ohio Dec. 30, 2010). This subpoena plainly exceeds those bounds and must be quashed.

I live and work in Las Vegas, and I have no presence or connection to New York. The SDNY has no authority to compel compliance in this District. This jurisdictional defect alone renders the subpoena invalid and requires it to be quashed.

Second, the subpoena fails to clearly and properly designate a specific court or authorized proceeding with jurisdiction over me. Although it lists a Las Vegas location for compliance, it was issued from the Southern District of New York — a court that has no authority over me as a Nevada resident and non-party. The subpoena does not state that this is being conducted under the supervision of a court in Nevada, nor does it identify any properly authorized proceeding in this District. Courts have held that a subpoena that fails to identify a proper issuing authority or legal basis for jurisdiction is procedurally defective and must be quashed. See Estate of Ungar v. Palestinian Authority, 412 F. Supp. 2d 328, 333 (S.D.N.Y. 2006) ("Subpoenas issued from a court that lacks jurisdiction over the person served are unenforceable."). This is not a minor technical flaw — it is a jurisdictional defect that strips the subpoena of any legal effect.

Third, the subpoena was served on me in Nevada and commands compliance in Nevada, where I reside and work. This is not a minor technical issue — it is a fatal jurisdictional flaw. Under Rule 45(d)(3), only the court for the district where compliance is required — here, the District of Nevada — may adjudicate a motion to quash or enforce a subpoena. The issuing court, the Southern District of New York, has no territorial power over me as a non-party outside its geographic reach.

Courts consistently hold that a subpoena served and made returnable outside the issuing court's jurisdiction is null and void. See Gipson v. Southwest Bell Tel. Co., 2009 WL 790203 (D. Kan. Mar. 24, 2009) (quashing subpoena issued from the wrong district); Wright v. American Int'l Group, 2020 WL 5526680, at 4 (S.D. Ohio Sept. 15, 2020) ("The issuing court lacks jurisdiction to enforce a subpoena outside its district under Rule 45.").

012

Because I have no presence in New York, and the subpoena neither originates from nor is enforceable by the court with jurisdiction over the place of compliance, it is invalid and must be quashed as a matter of law.

Courts have consistently held that when a subpoena is issued by a court that lacks territorial authority over the recipient, it is unenforceable and must be quashed. See Eurofins Discovery Services v. BioChain Institute, Inc., No. 21-mc-80160, 2021 WL 3510363, at *3 (N.D. Cal. Aug. 10, 2021) (quashing subpoena for lack of jurisdiction where it commanded compliance outside the issuing court's authority). The subpoena in this case is therefore void, and this Court — the District of Nevada — is the only proper forum to adjudicate the matter and to issue relief.

## IV. THE SUBPOENA FAILS BECAUSE THE INFORMATION SOUGHT IS READILY AVAILABLE FROM THE WAYFARER PARTIES - OTHER, MORE APPROPRIATE SOURCES

Even assuming, solely for the sake of argument, that the subpoena seeks material relevant to the underlying litigation, that alone is insufficient to justify compelling disclosure from a non-party journalist. Courts have consistently held that when constitutionally protected or privileged information is sought from members of the press, the requesting party must first demonstrate that the information is not available from other sources. See Gonzales v. NBC, 194 F.3d 29, 35 (2d Cir. 1999) ("[C]ompelled disclosure from journalists is not appropriate unless the party has first exhausted all alternative sources."); United States v. LaRouche Campaign, 841 F.2d 1176, 1181 (1st Cir. 1988) (quashing subpoena where "the party seeking the information failed to show that it was unavailable from another source").

013

In this case, the information sought is plainly available from parties to the litigation or other primary sources. I possess no exclusive access, no first-hand knowledge, and no involvement in the events at issue. As a journalist, I am protected by both the federal reporter's privilege and Nevada's absolute Shield Law. The subpoena must be quashed because it seeks to extract protected information from a non-party without meeting the threshold burden imposed by law.

Also, if the subpoena seeks relevant material - it still must be quashed because the information is plainly available from parties to the litigation or other primary sources, not from me, a non-party journalist. Under Federal Rule of Civil Procedure 26(b)(2)(C), courts must limit discovery when the information can be obtained from some other source that is more convenient, less burdensome, or less expensive. This principle applies with even greater force when the target of discovery is a non-party, especially one engaged in constitutionally protected press activity. As the Ninth Circuit held in Shoen v. Shoen, 48 F.3d 412, 416 (9th Cir. 1995), compelled disclosure is only permissible when the party seeking it has first shown unavailability from other sources.

Blake Lively and her legal team have not made-and cannot make-such a showing. They should pursue discovery through the parties actually involved in the lawsuit. I am not part of this case, and any information I do have is protected by law. Rule 26(b)(2)(C) and Rule 45(d)(3) both exist to prevent this kind of abuse.

Moreover, I possess no unique or exclusive access to any information relevant to this litigation. I am not a witness, insider, or party to any of the events at issue. What I have publicly commented on is based on materials already available in the court record or reported in the public domain. To the extent the subpoena seeks information that might be relevant, it can — and must — be obtained directly from the parties to the case, particularly the Wayfarer defendants. Courts have

consistently held that journalists cannot be forced to testify or produce materials when the information sought is available from more direct sources. See Shoen v. Shoen, 48 F.3d 412, 416 (9th Cir. 1995) ("If the information sought is available from a non-journalistic source, the subpoena should be quashed."); Gonzales v. NBC, 194 F.3d 29, 35 (2d Cir. 1999) ("Compelled disclosure from journalists is not appropriate unless the party has first exhausted all alternative sources.").

The law is clear: when information can be obtained from someone directly involved in the underlying dispute, courts will not permit discovery from an uninvolved journalist. See Gonzales v. NBC, 194 F.3d 29, 35 (2d Cir. 1999) ("Compelled disclosure from journalists is not appropriate unless the party has first exhausted all alternative sources.").

In this case, Blake Lively and her legal team have direct access to the Wayfarer defendants, who can answer for their own communications, statements, or alleged conduct. There is no showing that I possess any unique or exclusive evidence. Everything I have commented on was based on public court filings or other publicly reported facts. The burden is on the subpoenaing party to show that I have critical, non-duplicative evidence that cannot be acquired elsewhere — and they have not even attempted to make such a showing.

## V. THE SUBPOENA RISKS INTRUDING ON ATTORNEY-CLIENT PRIVILEGE AND CONFIDENTIAL LEGAL COMMUNICATIONS

This subpoena not only overreaches journalistically - it also threatens to pierce the veil of attorney-client privilege, one of the most sacred doctrines in American law. Any attempt to compel disclosure of legal communications-directly or indirectly-raises grave constitutional and

ethical concerns.

I am represented by attorney Bryan Freedman, although he is not representing me in this matter. Notably, Mr. Freedman is also lead counsel for Justin Baldoni and the Wayfarer defendants — the very parties at the center of this litigation. While I am not a party to this case, the subpoena may overlap with privileged or confidential communications I have had with Mr. Freedman or members of his firm. That fact alone heightens the risk of improper disclosure and potential ethical conflict.

Courts have held that once the possibility of attorney–client privilege is raised, the burden shifts to the subpoenaing party to prove that no privilege applies. See United States v. Chen, 99 F.3d 1495, 1501 (9th Cir. 1996) (holding that the party seeking disclosure "must prove, by clear and convincing evidence, that the privilege does not apply"). That burden has not been met here — nor has it even been addressed. The risk of breaching attorney–client privilege further reinforces the need to quash this subpoena in its entirety.

The Ninth Circuit has consistently held that courts must apply a strict standard when determining whether a subpoena can intrude into privileged realms (see Admiral Ins. Co. v. U.S. District Court, 881 F.2d 1486 (9th Cir. 1989)). There has been no privilege waiver. There has been no evidentiary showing of need. There has been no justification at all for this dangerous overstep.

No litigant is entitled to discovery that compromises attorney–client communications, especially not from a non-party with no material connection to the case.

## VI. The Subpoena Reflects the Type of Abuse Anti-SLAPP Principles Are Designed to Prevent

The principles underlying Nevada's anti-SLAPP statute (NRS 41.660) further underscore the impropriety of this subpoena.

Although Nevada's anti-SLAPP statute does not explicitly apply to subpoenas, its core principles are highly relevant here. The statute is designed to protect individuals — including journalists and commentators — from legal tactics intended to chill participation in public discourse. That is precisely what is occurring in this case: I provided commentary on a matter of public concern based entirely on public court filings, and now I am being dragged into federal litigation as a result.

Nevada's anti-SLAPP statute is meant to deter legal tactics aimed at punishing or chilling protected speech. This subpoena, issued against a non-party journalist based solely on constitutionally protected commentary about public litigation, exemplifies the kind of abusive legal pressure the statute seeks to discourage. Courts have long held that the power of discovery must not be used as a weapon against free expression. That principle applies here with equal force, reinforcing the need for this Court to quash the subpoena in full.

As the Ninth Circuit has held, Nevada's anti-SLAPP statute must be interpreted broadly to safeguard public participation in legal and policy debates. See Metabolic Research, Inc. v. Ferrell, 693 F.3d 795, 802 (9th Cir. 2012) ("The protections of Nevada's anti-SLAPP statute are to be construed broadly and interpreted to encourage participation in public discourse without fear of retribution through abusive litigation.").

This Court should take these policy concerns into account when evaluating the burden,

overbreadth, and chilling effect of enforcing this subpoena. The public's interest in robust

commentary on judicial proceedings is not advanced by punishing those who report or opine on

them.

## VII. The Subpoena Requires Disclosure of Privileged and Protected Information in Violation of Rule 45(d)(3)(A)(iii)

Rule 45(d)(3)(A)(iii) mandates that a court must quash or modify a subpoena that "requires

disclosure of privileged or other protected matter, if no exception or waiver applies." The rule is

mandatory: if privilege applies and no exception exists, the subpoena must be quashed.

As detailed above, the subpoena issued to me seeks information subject to multiple, overlapping

privileges:

- First, it targets materials protected by the First Amendment and the federal reporter's privilege, as established in Shoen v. Shoen, 5 F.3d 1289 (9th Cir. 1993) and 48 F.3d 412 (9th Cir. 1995).

- Second, it implicates Nevada's absolute journalist Shield Law, NRS 49.275, which categorically bars compelled disclosure of both published and unpublished materials obtained in the course of reporting.

- Third, it risks invading the attorney-client privilege, given my past communications with counsel that may fall within the subpoena's sweeping scope.

No exception or waiver applies to any of these protections. The subpoena does not identify

specific, non-privileged information, nor does it make any showing that privileged material should be pierced. Its breadth and vagueness only heighten the risk that it would improperly compel disclosure of protected content.

Under Rule 45(d)(3)(A)(iii), that alone is sufficient grounds for this Court to quash the subpoena in full.

## VIII. The Subpoena Seeks Confidential Editorial and Commercial Information in Violation of Rule 45(d)(3)(B)(i)

Rule 45(d)(3)(B)(i) authorizes courts to quash or modify a subpoena if it "requires disclosure of a trade secret or other confidential research, development, or commercial information." I own and operate a media website with editorial discretion and proprietary decision-making processes that are commercially sensitive.

The subpoena, by seeking access to internal communications, unpublished content, and newsgathering practices, threatens to expose confidential editorial strategies and reporting methods. These materials are not public, and disclosure would directly undermine the independence and viability of my work as a journalist.

Courts have acknowledged that such information is entitled to protection. See Gonzales v. NBC, 194 F.3d 29, 35 (2d Cir. 1999) (forced disclosure of internal editorial process can chill journalism); In re Subpoena Duces Tecum to ABC, 189 F.3d 117, 123 (2d Cir. 1999) (courts must be cautious when discovery intrudes on editorial judgments and unpublished materials); In re Bextra &

Celebrex, 249 F.R.D. 8, 12 (D. Mass. 2008) (courts routinely quash subpoenas seeking commercially sensitive information without justification).

This risk of compelled disclosure of protected material provides yet another independent — and compelling — reason to quash the subpoena in full.

## IX. THE SUBPOENA IS OVERBROAD, INTRUSIVE, AND A TRANSPARENT FISHING EXPEDITION

This subpoena exceeds the bounds of reasonable discovery and functions as a textbook fishing expedition. While it purports to identify certain document categories, those categories are broad, vaguely defined, and largely untethered to any specific claims or defenses in the underlying case. Courts have consistently rejected discovery requests that amount to open-ended demands for "anything that might be useful." See In re Subpoena to Verizon Internet Services, 257 F. Supp. 2d 244, 258 (D.D.C. 2003) ("[S]ubpoenas are not a license for fishing expeditions or intrusions into constitutionally protected areas.").

Rule 45 does not permit parties to impose undue burden or demand sweeping disclosure from non-parties in the hope of stumbling upon something relevant. See also Gropper v. David Ellis Real Estate, L.P., 2014 WL 518234, at *4 (S.D.N.Y. Feb. 10, 2014) (quashing overbroad subpoena that sought documents "regardless of whether they bear on any party's claim or defense").

Courts in the Ninth Circuit have repeatedly quashed subpoenas that fail to delineate relevance or specificity. Indeed, the Ninth Circuit has emphasized that "the litigant's interest in disclosure should yield to the journalist's privilege," and any subpoena must adhere to Rule 45's

proportionality and specificity requirements (Shoen II, 48 F.3d at 416; Farr v. Pitchess, 522 F.2d 464, 468-69). Broad, speculative demands for information - especially from non-parties-are routinely rejected.

Here, the subpoena targets me, a journalist and public figure, seeking unspecified communications and materials unrelated to any known claim, thereby risking a chilling effect on press freedom. Rule 45 does not permit such untargeted discovery. As one court put it, subpoenas "must represent a good faith effort to obtain identified evidence rather than a general 'fishing expedition.'"

The subpoena is painfully overbroad. Courts have routinely rejected similarly expansive requests — particularly when aimed at non-party journalists. See Oakley v. MSG Networks, Inc., No. 24-mc-23 (S.D.N.Y. Jan. 8, 2025), 2025 WL 72111, at 2 ("Subpoenas seeking 'all documents and communications' without reasonable limitation are presumptively improper."); Hedgeye Risk Mgmt., LLC v. Dale, No. 21-cv-3687, 2023 WL 4353076, at *5 (S.D.N.Y. July 5, 2023) (quashing subpoena for "sweeping and non-specific" requests not narrowly tailored); Gropper v. David Ellis Real Estate, L.P., No. 13-cv-2068, 2014 WL 518234, at *4 (S.D.N.Y. Feb. 10, 2014) ("Subpoenas that fail to specify categories or relevant timeframes are inherently overbroad and must be quashed.") Blake Lively's subpoena suffers from the same fatal flaws. That kind of fishing expedition is exactly what Rule 45(d)(3)(A)(iv) forbids.

The subpoena's breadth and disregard for proportionality make it oppressive and improper. It should be quashed. This overbreadth is contrary to Rule 45's mandate that subpoenas not impose an "undue burden" or be "unreasonable or oppressive." This is particularly true where, as here, the target is a non-party journalist entitled to heightened protection under both the First Amendment and Rule 45. See Hale v. State Farm Mut. Auto. Ins. Co., 2016 WL 1055580, at *4 (S.D. Ill. Mar.

17, 2016) (quashing non-party subpoena as overbroad, not proportional, and imposing undue burden).

The subpoena is an impermissible fishing expedition. It does not seek narrowly tailored, material evidence — it casts a wide net in hopes of uncovering something useful. Courts have consistently rejected such tactics, especially where privileged or protected materials are at stake. It should be quashed.

**RELATED FEDERAL COURT FILING**

For the Court's awareness and consideration, Movant notes that on July 19, 2025, a related motion was filed in the United States District Court for the Southern District of New York. That filing — docketed as Document 470 in Case No. 1:24-cv-10049 (Lively v. Wayfarer Studios LLC) — is a formal Motion to Seal or Redact Personal Information submitted by Movant in response to the very same subpoena at issue here.

The SDNY filing outlines in detail the serious privacy and safety risks associated with public disclosure of Movant's personal identifying information, particularly as a journalist and public figure with minor children and an elderly parent in the household. That motion is attached in this filing

**REQUEST FOR FEES AND COSTS**

Pursuant to Federal Rule of Civil Procedure 45(d)(1), Mr. Lavandeira requests that the Court award reasonable expenses incurred in responding to this improper subpoena. Rule 45(d)(1) imposes an affirmative duty on parties and their counsel to avoid imposing undue burden or expense on non-parties, and authorizes the Court to "enforce this duty and impose an appropriate sanction — which may include lost earnings and reasonable attorney's fees." This subpoena, which targets a journalist with no involvement in the underlying litigation and seeks protected information, falls squarely within the category of abusive discovery that courts have routinely sanctioned. See, e.g., Mount Hope Church v. Bash Back!, 705 F.3d 418, 429 (9th Cir. 2012) (reversing denial of sanctions under Rule 45 where subpoena was issued without due consideration for the burden on a non-party); Legal Voice v. Stormans Inc., 738 F.3d 1178, 1184 (9th Cir. 2013) (affirming award of fees to non-party public interest group improperly subpoenaed); In re NCAA Student-Athlete Name & Likeness Licensing Litig., No. 09-cv-01967, 2012 WL 4846522, at *2 (N.D. Cal. Oct. 10, 2012) (awarding fees under Rule 45(d)(1) where subpoena was overbroad and unduly burdensome); Miller v. Ghirardelli Chocolate Co., No. 12-cv-04936, 2013 WL 6775532, at *4 (N.D. Cal. Dec. 20, 2013) (same). Responding to this overreaching subpoena has required substantial time, legal research, and preparation of the instant motion and supporting materials. An award of reasonable costs would not only compensate Mr. Lavandeira for this undue hardship, but would send a clear message that the subpoena power cannot be wielded recklessly or punitively — especially against journalists and uninvolved third parties.

Rule 45(d)(1) requires parties and attorneys issuing subpoenas to "take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena." It further provides that "[t]he court… must enforce this duty and impose an appropriate sanction — which may include lost earnings and reasonable attorney's fees — on a party or attorney who fails to comply."

Blake Lively's legal team failed to meet this obligation. The subpoena directed at me — a non-party journalist — is overbroad, intrusive, legally deficient, and plainly designed to intimidate and burden rather than to obtain genuinely discoverable evidence. No effort was made to pursue discovery from parties actually involved in the litigation. Instead, the subpoena demands privileged and irrelevant material from someone with no nexus to the underlying claims, in direct violation of Rule 45(d)(1).

I respectfully request that the Court impose sanctions to reflect the improper and abusive nature of this subpoena, and to deter similar conduct in the future.

Sanctions Are Also Warranted Under Rule 26(g)

In addition to Rule 45(d)(1), sanctions are independently warranted under Federal Rule of Civil Procedure 26(g). That rule requires attorneys to certify that all discovery requests are legally

justified, not issued for improper purposes, and proportionate to the needs of the case. Blake

Lively's legal team failed that standard here. This subpoena targets a non-party journalist with no

connection to the underlying litigation, seeks privileged and protected material, and imposes

significant burden without first pursuing discovery from actual parties. Its overbreadth, legal

deficiencies, and apparent disregard for jurisdictional limits further indicate it was not interposed

in good faith.

Rule 26(g)(3) provides that if a certification is violated without substantial justification, "the court,

on motion or on its own, must impose an appropriate sanction on the signer, the party on whose

behalf the signer was acting, or both." I ask that this Court exercise that authority and award costs

or other appropriate relief to deter future misuse of the discovery process.

Finally, Rule 11(c) authorizes sanctions when a filing is submitted "for any improper purpose,

such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation." The

sweeping scope and harassing nature of this subpoena — directed at a journalist —  strongly

suggest it was issued in retaliation for lawful commentary on a matter of public concern.

 For these reasons, I urge that the Court impose appropriate sanctions to reflect the improper,

burdensome, and constitutionally offensive nature of this subpoena, and to deter similar abuses in

the future. Such an award is especially warranted where the subpoena targets a journalist and

threatens to chill constitutionally protected expression and reporting.

**CONCLUSION**

For the record, I have not been paid by Justin Baldoni. I have not been paid by any of the Wayfarer defendants. I have not been paid by anyone to cover this litigation. My commentary and analysis have been wholly independent, based solely on my own reading of the docket and my interpretation of the underlying facts.

In relation to me, this subpoena is an egregious misuse of civil discovery — legally baseless, constitutionally offensive, and procedurally defective. It targets a non-party journalist with no involvement in the litigation, demanding sensitive and  privileged information - in flagrant disregard of the First Amendment, Nevada's Shield Law (NRS 49.275), and the procedural safeguards of Rule 45(d).

Because the subpoena threatens the compelled disclosure of privileged and constitutionally protected information, its enforcement would cause irreparable harm — both to me personally and to the broader public interest in a free and independent press.

Courts have long held that "the loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." Elrod v. Burns, 427 U.S. 347, 373 (1976). Disclosure here would not only violate reporter's privilege, but would inflict constitutional harm that cannot be undone.

The subpoena fails every applicable legal test: it imposes undue burden, ignores geographic limitations, and seeks information readily available from the parties to the case.

Worse still, it sends a dangerous signal — that journalists can be harassed, intimidated, and dragged into federal court simply for doing their jobs. That cannot be allowed. This Court has both the authority and the obligation to quash the subpoena in full and to reaffirm that discovery is not a bludgeon to be wielded against the free press. Anything less would reward abuse and invite repetition.

On July 26, 2025, Plaintiff Blake Lively, through counsel, submitted a letter to Judge Lewis J. Liman in the Southern District of New York acknowledging that she has withdrawn all subpoenas served on third-party service providers (including Google and X) in relation to several non-party individuals who filed motions to quash. A true and correct copy of that letter is attached hereto. This move — made only after multiple non-parties asserted their legal rights — is a tacit admission that those subpoenas were legally defective and unenforceable. The subpoena served on me suffers from the exact same flaws, and its continued enforcement would amount to selective harassment. The Court should take judicial notice of this pattern, and likewise quash the subpoena issued to me in full.

*Movant does not waive and specifically reserves any and all objections to this or any other discovery directed at him.*

For all the reasons stated above - I request that the Court quash the deficient and unenforceable subpoena in its entirety and grant any further relief it deems just and proper.

Dated: July 28, 2025

Respectfully submitted,

/s/ Mario Lavandeira

Mario Lavandeira aka Perez Hilton

Pro Se Movant

From: Perez Hilton ph@perezhilton.com
Subject: Service Of Motion To Quash
Date: Jul 31, 2025 at 5:18:55 PM
To: Esra Hudson EHudson@manatt.com
Cc: mgottlieb@willkie.com, Stephanie Roeser SRoeser@manatt.com,
anathan@willkie.com, Matthew Bruno MBruno@manatt.com,
mgovernski@dirllp.com, laura.prather@haynesboone.com,
michael.lambert@haynesboone.com, kbender@willkie.com

Ms. Hudson,

It is my immense pleasure to inform you that I have just filed a motion to quash the
legally unsound and unenforceable subpoena you served me with on July 19.

The place of compliance you listed in the subpoena is Las Vegas, where I live and
work. That is also the appropriate venue to address your continued improper and
abusive use of the discovery process.

Attached is my receipt and confirmation that my motion to quash has been filed. It
has been assigned case #9875 at U.S. District Court, Court Of Nevada, Las Vegas.
See attachment.

I would also like to thank Mr. Gottlieb for bringing me up to Judge Liman at the
hearing yesterday. I am flattered that you all think I played such a pivotal part in the
non-existent smear campaign you have accused Justin Baldoni and the Wayfarer
parties of orchestrating against zero time Oscar nominated actress Blake Lively.

As a courtesy, I will inform the Southern District Of New York that motion to quash
has been accepted and filed in Nevada. Thankfully Judge Liman will not get to rule
on this.

Have a wonderful day!

xoxo
Perez



**Tap to Download**
**0C0A3C8A-**

**E92B-4B3A-87D2-77E0C7A8098...**
3.4 MB

From: **Perez Hilton** >
To: Hilton Perez >
Cc: **Esra Hudson** > mgottlieb@willkie.com >
**Stephanie Roeser** > anathan@willkie.com >
**Matthew Bruno** > mgovernski@dirllp.com >
laura.prather@haynesboone.com >
michael.lambert@haynesboone.com >
kbender@willkie.com >
Today at 10:37 AM

## UPDATED Info / Motion To Quash

Hey, cuties!

Just wanted to let you know that my Motion To Quash your unenforceable subpoena has been ingested, docketed and updated.

"NOTICE that this case, formerly Misc. Case No. 2:25-ms-00060, having become a contested proceeding on 7/28/25, has been converted to the regular civil docket and has been assigned case number 2:25-cv-01396. All future pleadings must be filed in the civil action and must bear said civil case number. (RJDG) (Entered: 07/31/2025)"

Have a super duper weekend!

I am super proud of you all and the millions you've been grifting from Ryan Reynolds' bank account!

031

Keep up the mediocre work!

# ECF No. 573

August 5, 2025

**CORRECTION**

Judge Liman,

I - Mario Armando Lavandeira, Jr., known professionally as Perez Hilton - write as a subpoenaed third party in Lively v. Wayfarer Studios LLC (1:24-cv-10049) to inform the Court that I made an error in a recently filed letter of mine.

In docket #558 - the main document - I wrote: "It is my immense pleasure that this will all be decided in Nevada and not in your court, where - in my opinion - you have shown clear bias in favor of the defendant and have ruled in a manner that is shameful and of great concern for the public."

I mistakenly said "defendant", but I meant to say plaintiff - Blake Lively.

I would like to correct the record and affirm I do believe you are biased in her favor.

I would also like to publicly thank Ms. Lively and her mediocre legal team for choosing to serve me a legally unsound and unenforceable subpoena against me - issued out of your court. In doing so, Lively and her counsel have now given me the right to respond and be heard by this court - such as in correcting the record now or my request for sanctions earlier today against Mr. Gottlieb (for lying to the court and misrepresenting something I never said).

Submitted,

/s/ Mario Armando Lavandeira, Jr.

Mario Armando Lavandeira, Jr.

aka Perez Hilton

# ECF No. 574

August 5, 2025

**REQUEST FOR SANCTION**

Judge Liman,

I - Mario Armando Lavandeira, Jr., known professionally as Perez Hilton - write as a subpoenaed nonparty in Lively v. Wayfarer Studios LLC (1:24-cv-10049) to inform the Court of a factual inaccuracy.

In docket number 555 - filed yesterday, the OMNIBUS BRIEF IN SUPPORT OF PLAINTIFF BLAKE LIVELY'S MOTIONS TO COMPEL, Michael Gottlieb shared a misrepresentation about me that I believe is a lie.

Ms. Lively's lawyer wrote: *"Meanwhile, third parties have produced materials indicating such communications exist, (Exs. 24 at 2-3; 27 at 3), and the content providers have discussed receiving information from the Wayfarer Defendants' counsel. 19"*

Footnote 19 was a link to a video I made, which can be found here:
https://www.reddit.com/r/teamjustinbaldoni/comments/1ll7har/exclusive_major_victory_for_justin_baldoni/

For the record, I NEVER said I received the information shared in the referenced video from Bryan Freedman or anyone at his law firm, as Mr. Gottlieb would erroneously like you to believe. I explicitly stated that I got my exclusive intel from a Baldoni source, but I did not disclose the identity of that source - nor would I ever.

I believe this kind of misleading behavior from Lively's legal team is deplorable and unethical. I also believe strongly that it is a sanctionable offense and I urge the court to hold Mr. Gottlieb accountable - using your inherent power to sanction.

However, given your clear bias in favor of Ms. Lively, I know the likelihood of that happening is slim to none.

Submitted,

/s/ Mario Armando Lavandeira, Jr.

Mario Armando Lavandeira, Jr.

aka Perez Hilton

035

# ECF No. 578

August 6, 2025

**Non-Response To Motion To Compel**

Hey, Judge Liman.

It's me again!

I - Mario Armando Lavandeira, Jr., known professionally as Perez Hilton - write as a nonparty in Lively v. Wayfarer Studios LLC (1:24-cv-10049).

I feel like we're starting to be pals with how much I'm writing to you! But, I know you're still *much* friendlier with Blake Lively's counsel.

This letter is NOT a response to the Motion To Compel just filed in your court by the disgraceful Esra Hudson.

This letter *is* a request for sanctions against Ms. Hudson, which your sexy and smart self has every right to impose on that clown - based on your inherent powers in this court.

It pains me that I can not respond to the Motion To Compel, but unless I am given the unredacted version of that AND all the exhibits unredacted as well - then I am afraid this letter as a non-response will have to suffice.

I only speak for myself. I have no knowledge if Mr. Baldoni or any of the Wayfarer defendants seek to move to keep sealing all the documents submitted by Ms. Lively's publicity-seeking lawyer, Esra Hudson.

Additionally, while I am not responding to the Motion To Compel, I want to remind everyone YET AGAIN that last week I already filed in Nevada district court a Motion To Quash this burdensome, unethical subpoena that is seeking my privileged and protected information as a journalist.

037

I am joyfully representing myself in subpoenagate without an attorney, which I have every legal right to do, and though I haven't spent more than a minute or two preparing this letter, my research shows me that Ms. Hudson is misrepresenting the truth. Yet again. ANOTHER reason why you should sanction that disgraceful attorney and award *me* attorney's fees!

I have never consented to the SDNY having jurisdiction over the compliance of my subpoena.

My rudimentary findings are consistent with what I already know, what you know and what all of the VanZan scammer's legal team knows. That the appropriate venue to quash or compel this subpoena is Las Vegas. That is where I live, where I work, where I was served and that is listed in Ms. Lively's own subpoena as the place of compliance.

I look forward to litigating this and winning in Nevada.

The world is watching this case and your docket, Judge Liman.

Indignantly,

/s/ Mario Armando Lavandeira, Jr.

Mario Armando Lavandeira, Jr.

aka Perez Hilton

# ECF No. 579

August 6, 2025

**Lack Of Service**

Dear Judge Liman,

I - Mario Armando Lavandeira, Jr., known professionally as Perez Hilton - write as a nonparty in Lively v. Wayfarer Studios LLC (1:24-cv-10049) in response to your new order pertaining to me. Docket #568.

This is to inform the court that I have NOT been "served with a copy of the communication" by Subpoena Serena, also known as Blake Lively. I have received no materials whatsoever.

Also, this is to put in writing that I will comply with the Court's Protective Order regarding the use of Confidential discovery material.

Additionally, I have no interest in responding to the plantation-loving princess' opposition to my Motion For A Protective order. I do not believe that this court can rule fairly. I fully expect you to once again side with Ms. Lively, as I believe you are biased. Therefore, I won't waste any more time than I already have responding to her opposition for a Protective Order.

And, finally, with regards to her cross-motion to compel, the court knows it has no standing on that matter. The appropriate venue to litigate the subpoena against me is in the U.S. federal district court of Nevada, where - as I have informed counsel and this court - last week I filed a motion to quash. That court has already taken this up and yesterday deplorable Esra informed you she would be responding THERE.

xoxo

/s/ Mario Armando Lavandeira, Jr.

Mario Armando Lavandeira, Jr.

aka Perez Hilton

# ECF No. 580

August 5, 2025

**Reminder Of Motion to Quash Subpoena Filed in the District of Nevada**

Judge Liman,

I - Mario Armando Lavandeira, Jr., known professionally as Perez Hilton - write as a nonparty in Lively v. Wayfarer Studios LLC (1:24-cv-10049) to remind the Court that last week I filed a Motion to Quash the subpoena served on me by counsel for Plaintiff Blake Lively.

I just saw docket #561, where the laughable Esra Hudson informs you that she is submitting a motion to compel. To which I respond "WTF?" and "LOL".

I am not sure what law school Ms. Hudson attended, but she is serving up first-class buffoonery.

If Ms. Hudson wants to attempt to compel me, she has to address that matter in Nevada - the appropriate venue, where this issue has already been taken up by the district court there.

I have not yet read this motion, as it has not been made public by the time I write this letter to you. But I'm very much looking forward to the laughs from Blake Lively's reprehensible attorney.

If I feel the need to correct the record after reading this waste of time Motion To Compel filed with you - in the wrong court -  I will respond accordingly.

xoxo

/s/ Mario Armando Lavandeira, Jr.

Mario Armando Lavandeira, Jr.

aka Perez Hilton

# ECF No. 590

August 8, 2025

**Request For Deposition Transcript**

Judge Liman,

I - Mario Armando Lavandeira, Jr., known professionally as Perez Hilton - write as a nonparty in Lively v. Wayfarer Studios LLC (1:24-cv-10049) to request that Blake Lively's entire deposition transcript be shared with me, per your Honor's established privacy guidelines. Confidentially.

I have been given the sage advice that this information is important for me to have - to help me shape and inform future communications with this court and to be able to defend myself fairly and appropriately.

Respectfully submitted,

/s/ Mario Armando Lavandeira, Jr.

Mario Armando Lavandeira, Jr.

aka Perez Hilton

# ECF No. 592

August 8, 2025

**Response To Judge's Order, Docket #583 - And Request For Clarification - And Request For Extensions - And Request To Withdraw Protective Order**

Dear Judge Liman,

I - Mario Armando Lavandeira, Jr., known professionally as Perez Hilton - write as a nonparty in Lively v. Wayfarer Studios LLC (1:24-cv-10049) in response to your order about me - docket #583.

In this order today, you write. "The Court is aware that Lavandeira has filed a motion to quash in the United States District Court for the District of Nevada and that Lavandeira has taken the position that he will not otherwise respond to Lively's cross motion in this Court. Dkt. Nos. 558, 578–79. However, Lively also has a right to have her cross motion decided."

As I am aware, your Honor likes to cite the law, cases and rulings, in your orders. Just today - in docket number #582 granting Ms. Lively's motion to strike - you cited plenty of case law for why striking was appropriate.

In this order pertaining to me, however, you cited no cases or rulings for why Ms. Lively has a *right* to have her cross motion decided in YOUR court when you, she and her legal team are all well aware of my previously filed motion to quash in Nevada.

It is my understanding that judges interpret the law - they don't invent the law. So, if you can please point me in the correct direction of the appropriate case law that proves Ms. Lively has a right to have her cross motion decided in your court when there is already pre-existing litigation with regards to this improper subpoena in question, that would be more than appreciated. It is imperative.

Additionally, in her cross motion to compel, Ms. Lively already informed this court that she intends to respond in Nevada (by August 18th, Ms. Hudson wrote). Therefore, it is unclear to me why your Honor feels the need to obstruct her plans and intervene.

Respectfully, I request an extension from this court in ruling on my motion here and Ms. Lively's opposition and cross motion until the court in Las Vegas finishes letting this all play out in Nevada, which I believe is the appropriate venue.

As already mentioned, Ms.Lively has informed you of her intent to respond in Nevada. There is a great likelihood that she may move that court to transfer the decision to you at the SDNY, as she did with her subpoena against Justin Baldoni's lawyer, Bryan Freedman, in California. I am aware of the possibility that you could end up ruling on my Motion To Quash, an outcome which would not be ideal - for reasons I have previously stated with this court and publicly.

However, this latest move - to force my hand now in your court - seems highly improper. And unnecessary, as I explained why above.

Also - in your order today, you write: "Given Lavandeira's pro se status and the special solicitude that status is owed, the Court advises Lavandeira that, should he fail to respond to Lively's cross motion and should the Court determine that it has jurisdiction to compel, Lavandeira risks waiving any arguments that Lively's motion is improper."

I write requesting needed clarity, as a pro se movant representing myself without a lawyer.

To properly respond to your Honor's order, it is *imperative* that I know as soon as possible if this court has jurisdiction over me and/or jurisdiction to compel.

You said today about me: "should the Court determine that it has jurisdiction to compel".

I legitimately do not believe I can respond fairly or appropriately until this very critical issue is clarified.

Accordingly, I *also* move this court for an extension to respond to Ms. Lively's opposition to my motion and cross-motion to compel until your Honor gives me the clarity that I am seeking and is needed. Do you and this court have jurisdiction over me to compel?

If the above does not please or satisfy your Honor, I ALSO now am *formally requesting* with you and this court to withdraw my referenced motion for a Protective Order. Withdrawing the request for a Protective Order would thusly render Ms. Lively's opposition and cross-motion to compel as moot.

Awaiting your answers and with deepest gratitude for the clarity and clarifications.

Respectfully submitted,

/s/ Mario Armando Lavandeira, Jr.

Mario Armando Lavandeira, Jr.

aka Perez Hilton

# ECF No. 625

August 6, 2025

**Request To Permanently Seal / Permanently Redact**

Judge Liman,

I - Mario Armando Lavandeira, Jr., known professionally as Perez Hilton - write as a nonparty in Lively v. Wayfarer Studios LLC (1:24-cv-10049) to request the court permanently seal and / or permanently redact my personally identifiable information.

As your Honor himself previously told me when denying my motion for a protective order, this court already has protections in place for my real safety concerns. "The Court already has taken measures to protect the privacy of third parties in this matter." Docket #505 -  dated July 28, 2025.

 Per your Honor's instructions, I am officially writing to:

- Designate that my home address is "Attorney's Eyes Only",  this is  nonpublic materials the public disclosure of which "will cause harm to the . . . personal interests of the producing person and/or a thirty party to whom a duty of confidentiality is owed."

- Move the court to permanently seal or permanently redact Exhibit A in docket #595, the subpoena served on me with my home address listed.

- Request that any other instances in any filings current and any future filings that may list my home address, either redacted or unredacted, be permanently redacted without me even having to request that again.

As I already shared with this court, this case has garnered great interest and threats have already been made against parties and non-parties alike. Your Honor has previously assured me that he will protect my privacy and help ensure my safety.

I now ask your honor to deliver on that.

Additionally, I also write to:

- Designate that my phone number and email address listed in these documents are Confidential and be permanently redacted in current and any future filings, without me having to even request that. My phone number and email address listed in these documents are not publicly available and the public disclosure of which "will cause harm to the . . . personal interests of the producing person and/or a thirty party to whom a duty of confidentiality is owed."

This is all a matter of real and grave concern.

Thank you for your anticipated help with this.

Respectfully submitted,

/s/ Mario Armando Lavandeira, Jr.

Mario Armando Lavandeira, Jr.

aka Perez Hilton

# ECF No. 653

August 12, 2025

**Lies To This Court About Movant / Minor Children**

Esteemed Judge Liman,

I - Mario Armando Lavandeira, Jr., known professionally as Perez Hilton - write as a nonparty in Lively v. Wayfarer Studios LLC (1:24-cv-10049) to applaud Ms. Lively for taking *"no position on Mr. Hilton's request to seal Exhibits C and D, if the Court finds such action consisted with the Court's Protective Order."* See Docket #613.

The Exhibits mentioned above are pictures of my young children and now Ms. Lively has punted the onus on to you - to decide whether or not to seal these exhibits, per my request at Docket #594.

I am sure your Honor will objectively rule in my favor here, as this Court would not want to do *anything* that could potentially harm my minor children. I have a true worry for them being on this Court's public docket.

In deciding this, I want to point out to the Court that Ms. Hudson made **no attempt** at demonstrating HOW including pictures of my children in her exhibits is relevant.

It is not relevant to any of the claims whatsoever.

Doing so is only a continuation of the abusive discovery practices I believe Ms. Lively's lawyers have engaged in throughout this litigation, and I'm pretty confident the more than 107 creator-journalists Ms. Lively's team subpoenaed would echo that assessment.

I read the logic Ms. Hudson cited in why she thought it was appropriate to share pictures of my minor children. She wrote: "*Ms. Lively cited and filed Exhibits C and D on the public docket with a good-faith belief that the materials were not confidential, as reflected by their general availability to anyone who visits Mr. Hilton's public Instagram (including any of his nearly 1 million followers) or his own website. That good-faith belief is supported by the Protective Order in this case, which by its express terms protects only "nonpublic and confidential material." ECF No. 125 at 1; see also id at §2 (defining "Confidential" or "Attorneys' Eyes Only" to apply only to "such portion of such nonpublic material the public disclosure of which is either restricted by law or will cause harm to the business, commercial, financial or personal interests of the producing person and/or a third party to whom a duty of confidentiality is owed and that consists of" specific types of information. (emphasis added))."*

As a pro se movant who is not a lawyer, my understanding of that logic is that Ms. Hudson felt emboldened to include pictures of my minor children on the public court docket because she could. Because your Honor would allow it and *has* consistently allowed Lively's legal team to share the home addresses and phone numbers of many nonparties to this litigation. These are instances - too many to count - where redacted versions could have been filed for the public docket and the correct and true sensitive, non-public information submitted to the Court under seal. But Ms. Lively's legal team wants to play dirty. And so far they have **not once** been reprimanded for this reprehensible behavior.

I *respectfully* am disgusted. Both by the tactics of Ms. Lively's high-priced lawyers and this Court turning a repeated blind eye to that behavior, which I referenced in my letter from August 10th. See Docket #612.

In her letter to your Honor today, Ms. Hudson FALSELY asserts: *"In his letter, Mr. Hilton does not acknowledge that Exhibits C and D reflect content that he, himself, posted on his publicly accessible platforms."*

In my letter to this Court - just referenced - I explicitly stated: *"Ms. Lively and her legal team have taken away my agency. I choose to share my children on social media - if and how and when I want."*

Ms. Hudson would like me to explain why I view her behavior as cruel and calculated. She writes: "*Nor does he attempt to explain as a matter of fact or law why the public filing of his own publicly available content is "cruel" or "calculated" or otherwise sanctionable."*

Let me happily explain.

In December of 2016, Ms. Lively took her minor children to the Hollywood Walk Of Fame induction ceremony for her husband, Ryan Reynolds.

Ms. Lively attended that event knowing that her children would be photographed by invited photo-journalists, like the Associated Press and Getty Images.

Subsequently, Ms. Lively has made the public plea that journalists not share pictures of her children.

In my role as a journalist, on my website - PerezHilton.com - and across social media, I have honored Ms. Lively's request.

Since I just mentioned the Walk Of Fame ceremony, I could include pictures of Ms. Lively and her minor children at that event as exhibits to this letter. But I will not do such a thing. That would be cruel and calculated. And unnecessary. Just as unnecessary as Ms. Hudson, on behalf of her client, filing multiple pictures of my young children on this Court's public docket.

Additionally, Ms. Hudson has **lied** to this Court. She wrote: *"It strains credulity to credit Mr. Hilton's characterizations given that he is responsible not only for posting the materials publicly in the first place, but also for amplifying Ms. Lively's filings to generate his own "content" on his various platforms, in which he now accuses Ms. Lively of using Mr. Hilton's children to "hurt" him and "endanger" them. Such accusations are false and defamatory, and inconsistent with the Court's order prohibiting using "language that is disrespectful of the parties, their counsel, or the Court."*

I categorically denounce the assertion that my opinion about Ms. Hudson and Ms. Lively's behavior violates this Court's order prohibiting language that is "disrespectful of the parties, their counsel, or the Court."

I expressed myself in the aforementioned letter respectfully. AND, his Honor said on August the 8th in Docket #581: *"For avoidance of all doubt, this Order does not prevent any party or nonparty from vigorously arguing on behalf of their clients (or, when appearing pro se, on behalf of themselves) or from asserting publicly that a decision of this Court or any other court was wrongly decided or that an argument promoted by a party or nonparty is incorrect."*

And, for the sake of clarity, I vehemently deny the false claim that my opinions about Ms. Hudson and Ms. Lively's behavior are defamatory.

What I have said is constitutionally protected free speech. Your Honor himself asserted the ability to express that respectfully last week, which I did - respectfully - in the letter dated *after* this Court's order on language.

Ms. Lively is a public figure and my opinions do not even come close to meeting the legal definition of defamation, neither for her nor for the public actions of her legal team.

Ms. Hudson also strategically ignored my reasoning for being concerned about my minor children's safety after she unnecessarily exposed them to this Court's docket. As I mentioned and gave detailed examples in my letter to your Honor, several parties and nonparties in this litigation have received death threats. There has been an attempted kidnapping. There was an arson attack. There's been bullying and unwanted harassment. And I want to do everything in my power to shield my children from this.

It speaks volumes that Ms. Lively "generally takes no position" on that.

Additionally, Ms. Hudson also ignored my alternative request to this Court. Should sealing not be deemed appropriate, the Exhibits mentioned above *can* be resubmitted to this court's public docket without the pictures of my children - which Lively's counsel now know are my children. Their appearance or disappearance from the Exhibits does not materially change the substance of what Ms. Lively is arguing.

In summation, I wish to express to your Honor **deep gratitude** in advance for granting a concerned parent's sensible request and helping to keep his minor children safe.

Respectfully submitted,

/s/ Mario Armando Lavandeira, Jr.

Mario Armando Lavandeira, Jr.

aka Perez Hilton

# ECF No. 654

August 11, 2025

**DIFFERENT REQUEST FOR EXTENSION OF TIME TO RESPOND TO PLAINTIFF'S CROSS-MOTION TO COMPEL**

***AND*** **REQUEST TO PAUSE PROCEEDINGS PENDING NEVADA RULING**

Most Esteemed Judge Liman,

I - Mario Armando Lavandeira, Jr., known professionally as Perez Hilton - write as a nonparty in Lively v. Wayfarer Studios LLC (1:24-cv-10049) in response to the Court's August 11, 2025 Order (Dkt. No. 589), which clarifies that the Court has not yet determined whether it has jurisdiction over me or authority to compel compliance with Plaintiff Blake Lively's subpoena.

I respectfully request a short extension of time and a pause in proceedings on Plaintiff's cross-motion to compel (Dkt. No. 566), until the United States District Court for the District of Nevada rules on my pending motion to quash the same subpoena. That motion was filed on July 28, 2025, in the court of compliance - pursuant to Rule 45, and it remains under consideration.

**Reasons for the Requests:**

1. **Proper Venue Under Rule 45** – Federal Rule of Civil Procedure 45(d)(3) provides that a motion to quash or modify "must be filed in the court for the district where compliance is required." The subpoena at issue lists Las Vegas, Nevada, as the place of compliance, and I reside and work there. Courts have repeatedly recognized that *only* the compliance court has authority to enforce or quash a subpoena in the first instance, absent a transfer under Rule 45(f). See, e.g., Agincourt Gaming, LLC v. Zynga, Inc., No. 2:14-cv-0708-RFB-NJK, 2014 WL 4079555, at *4 (D. Nev. Aug. 15, 2014) ("The compliance court is the proper forum to resolve subpoena-related disputes."); Raap v. Brier & Thorn, Inc., No. 19-mc-0015, 2019 WL 13178678, at *1 (D. Colo. July 16, 2019).

2. **Avoiding Conflicting Rulings and Promoting Judicial Economy** – Pausing here until Nevada rules will prevent the possibility of two federal courts issuing inconsistent orders on the same subpoena. Federal courts favor coordination between districts to promote "judicial economy and avoid the risk of inconsistent judgments." Colorado River Water Conservation Dist. v. United States, 424 U.S. 800, 817 (1976). Federal Rule of Civil Procedure 45(f) and its Advisory Committee Notes emphasize that transfer and coordination between courts is intended to "avoid burdens on local nonparties subject to subpoenas" and to promote consistent rulings. See Fed. R. Civ. P. 45(f) advisory committee's note to 2013 amendment ("Transfer is sometimes warranted in order to avoid disrupting the issuing court's management of the underlying litigation, as when that court has already ruled on issues presented by the motion or the same issues are likely to arise in discovery in many districts.").

061

**This coordination concern is especially relevant here because the U.S. District Court for the District of Nevada - where the subpoena's place of compliance lies - has already ordered Plaintiff to respond to my motion to quash by today, Monday, August 11, 2025.** That deadline is two days before my response to Plaintiff's cross-motion is due in this Court on August 13. As a result, it is highly likely that the Nevada court will complete briefing, and potentially issue a ruling, before this Court would rule on the cross-motion here. Allowing Nevada to proceed first would ensure efficiency, conserve resources, and avoid unnecessary duplication or inconsistent outcomes. If Nevada resolves the matter, further proceedings here may be unnecessary.

3. No Prejudice to Plaintiff – Plaintiff has already indicated an intent to respond in Nevada. Any necessary proceedings in this Court can resume promptly if Nevada declines jurisdiction or transfers the matter under Rule 45(f).

This request is not intended to delay for delay's sake. I will respond in this Court immediately if the Nevada court determines it will not decide the motion to quash or transfers the matter to SDNY.

For these reasons, I respectfully ask the Court to extend my August 13, 2025 response deadline and pause further briefing on Plaintiff's cross-motion to compel until the Nevada proceedings have concluded.

I appreciate your Honor's guidance, thoughtful approach and kindness when responding to me and ruling - as I represent myself without a lawyer, pro se.

Thank you for your consideration.

Respectfully and humbly submitted,

/s/ Mario Armando Lavandeira, Jr.

Mario Armando Lavandeira, Jr.

aka Perez Hilton

# ECF No. 655

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK


**Lively v. Wayfarer Studios LLC (1:24-cv-10049)**


**NON-PARTY RESPONDENT'S LIMITED RESPONSE — PERSONAL JURISDICTION *ONLY***


August 13, 2025


Most Honorable Judge Liman,

I - Mario Armando Lavandeira, Jr., known professionally as Perez Hilton - write as a nonparty in Lively v. Wayfarer Studios LLC (1:24-cv-10049).

**Background:**

Pursuant to the Court's directive, I submit this limited response solely to address the question of personal jurisdiction over me in connection with the subpoena at issue. I do *not* consent to this Court's jurisdiction to enforce or compel compliance with the subpoena.

I affirm that the United States District Court for the District of Nevada – where I reside, work, and where the subpoena expressly designates compliance – is the **proper** venue under Federal Rule of Civil Procedure 45(d)(3).

I only submitted to this Court a narrowly tailored request for a protective order under Rule 26(c) to halt what I believed were abusive discovery practices by Ms. Lively's counsel, particularly the repeated issuance of burdensome subpoenas to nonparties. This was a defensive *procedural* measure, not an engagement with the merits of the underlying litigation.

Additionally, the Honorable Judge Richard F. Boulware, II - the judge for the United States District Court for the District of Nevada - who is overseeing my Motion To Quash, ordered with regards to my request to quash: *"Compliance is required in **this** District."* Meaning his Court in Las Vegas. This order was issued on August 12, 2025. See Exhibit A.

A federal judge has ***already* issued an order** that compliance for the subpoena served on me by Ms. Lively must be handled in *his* District - not the Southern District Of New York.

This filing in SDNY is made under protest and does not waive any other objections to the subpoena. I expressly reserve all remaining objections, including those based on relevance, undue burden, overbreadth, First Amendment protections, the reporter's privilege and every single argument made in my previously filed Motion To Quash in Nevada, which has just today been properly served on Ms. Lively's counsel. See Exhibit B and Exhibit C.

If this Court in the SDNY lacks personal jurisdiction, the motion to compel is moot and nothing else needs to be considered.

**Argument:**

*A Rule 26(c) Protective Order Motion Does Not Waive Personal Jurisdiction*

*Waiver Requires Merits-Based Engagement*

Waiver occurs only when a party's conduct creates a "reasonable expectation" that it will defend the suit on the merits — a fact-specific determination. Merely filing procedural or defensive motions does *not* trigger waiver. See Hamilton v. Atlas Turner, Inc., 197 F.3d 58, 60–62 (2d Cir. 1999) (finding forfeiture only after years of extensive merits litigation despite initial assertion of defense); Datskow v. Teledyne, Inc., 899 F.2d 1298, 1303 (2d Cir. 1990)

(similar).

### *Defensive Procedural Filings Are Preserving, Not Waiving*

Courts distinguish between motions seeking procedural relief (such as a protective order) and filings addressing substantive claims. Only the latter may constitute waiver. See Rates Tech. Inc. v. Nortel Networks Corp., 399 F.3d 130, 135 (2d Cir. 2005) (affirming that consistent assertion of the jurisdictional defense from the outset avoids waiver).

### *Rule 12(h)(1) Preserves the Defense*

Federal Rule of Civil Procedure 12(h)(1) provides that the defense of lack of personal jurisdiction is waived only if not raised in the first responsive filing or motion. A motion for a protective order under Rule 26(c) is not a responsive pleading and therefore does not waive jurisdictional objections.

### *Las Vegas, Nevada Is the Proper Venue Under Rule 45*

### *Compliance Venue Is Controlling*

FRCP 45(d)(3)(A) requires that motions to quash or modify a subpoena be filed "in the court for the district where compliance is required." The subpoena here designates Las Vegas, Nevada, as the compliance location - *not* New York.

### *Courts Enforce Venue Limits Strictly*

In KGK Jewelry LLC v. ESDNetwork, No. 11-cv-9236, 2014 WL 1199326, at *2–4 (S.D.N.Y. Mar. 21, 2014), *this Court* held it lacked jurisdiction to decide motions to quash because the compliance courts were located elsewhere, explaining: "Jurisdiction over a motion to quash or modify remains with 'the court for the district where compliance is required.'"

Likewise, in Agincourt Gaming, LLC v. Zynga, Inc., No. 2:14-cv-0708-RCJ, 2014 WL 4079555, at *3–4 (D. Nev. Aug. 15, 2014), the District of Nevada emphasized that the place of compliance is tethered to the subpoenaed person's location and that courts outside that district lack jurisdiction to resolve such motions absent a proper Rule 45(f) transfer. No such transfer has been granted with regards to this subpoena.

### Transfers Under Rule 45(f) Are Rare

While Rule 45(f) allows a compliance court to transfer a subpoena-related motion to the issuing court, such transfers require either the nonparty's consent - none has been given by me - or "exceptional circumstances." Ms. Lively has made no claims of *exceptional* circumstances. She has not filed a response in Nevada and her cross-motion to compel in this Court makes no notice of any exceptional circumstances that would warrant a transfer to SDNY.

The Advisory Committee has noted that the prime concern is avoiding burden on local nonparties, like me. See Wultz v. Bank of China Ltd., 304 F.R.D. 38, 43–50 (D.D.C. 2014).

### Due Process Forbids Jurisdiction in SDNY

Under International Shoe Co. v. Washington, 326 U.S. 310, 316 (1945), personal jurisdiction exists only where a party has "minimum contacts" with the forum and litigation there does not offend "traditional notions of fair play and substantial justice."

As a Nevada resident with no relevant contacts with New York beyond the limited, defensive filing of a Rule 26(c) motion, I lack such contacts. Compelling me to litigate in SDNY would impose an undue burden and violate due process principles. See Burger King Corp. v. Rudzewicz, 471 U.S. 462, 472–73 (1985).

**Conclusion**

For the reasons above:

1. My Rule 26(c) motion did not waive my personal jurisdiction defense.

2. This Court lacks personal jurisdiction to enforce or compel compliance with the subpoena.

3. Las Vegas, Nevada is the proper forum under Rule 45.

4. The motion to compel should therefore be denied with prejudice in this Court, so that no further motion to compel may be brought in the Southern District of New York against me in this matter.

5. If Plaintiff wishes to pursue further relief, it must be sought — if at all — in the proper forum, the United States District Court for the District of Nevada, consistent with Rule 45 and due process.

Respectfully submitted,

/s/ Mario Armando Lavandeira, Jr.

Mario Armando Lavandeira, Jr.

aka Perez Hilton

Las Vegas, Nevada

From: cmecf@nvd.uscourts.gov
Subject: Activity in Case 2:25-cv-01396-RFB-DJA In Re Mario Lavandeira, Jr.
Minute Order
Date: Aug 12, 2025 at 5:02:27 PM
To: cmecfhelpdesk@nvd.uscourts.gov

This is an automatic e-mail message generated by the CM/ECF system.
Please DO NOT RESPOND to this e-mail because the mail box is unattended.

***NOTE TO PUBLIC ACCESS USERS*** Judicial Conference of the United
States policy permits attorneys of record and parties in a case (including pro
se litigants) to receive one free electronic copy of all documents filed
electronically, if receipt is required by law or directed by the filer. PACER
access fees apply to all other users. To avoid later charges, download a copy
of each document during this first viewing. However, if the referenced
document is a transcript, the free copy and 30 page limit do not apply.

### United States District Court

### District of Nevada

**Notice of Electronic Filing**

The following transaction was entered on 8/12/2025 at 5:01 PM PDT and filed on
8/12/2025

**Case Name:**        In Re Mario Lavandeira, Jr.
**Case Number:**      2:25-cv-01396-RFB-DJA
**Filer:**
**Document Number:** 9(No document attached)

**Docket Text:**
MINUTE ORDER IN CHAMBERS of the Honorable Judge Richard F. Boulware, II on
8/12/2025.

This action was commenced by Mario Lavendeira, Jr., aka Perez Hilton ("Hilton"),
filing the [1] Motion to Quash Subpoena. The subject subpoena was served on
Hilton, issued by the United States District Court for the Southern District of New
York in Blake Lively v. Wayfarer Studios LLC, Case Nos. 1:24-cv-10049, 1:24-
cv-00449, and signed by Michael Gottlieb on behalf of Blake Lively, the plaintiff in
the underlying action. See ECF No. [3]. Compliance is required in this District. Id.

The CM/ECF e-filing software automatically indicated a response deadline of August 11, 2025 when the Motion to Quash was docketed on July 28, 2025. See ECF No. [1].

On August 4, 2025, Hilton filed the [7] "Proof of Service," which is an unauthenticated document purporting to attach an email chain between Hilton and an attorney Esra Hudson. There is no indication in the document as to when Hilton claims to have sent the Motion to Quash to Esra Hudson, nor what relation Esra Hudson has to Blake Lively.

On August 12, 2025, Hilton filed a [8] Notice of Non-Opposition, which indicates Hilton misinterpreted the automatic docket text setting a response deadline of August 11, 2025 as an order of this Court. The [8] Notice requests the Motion to Quash be granted as unopposed pursuant to Local Rule 7-2(d).

The Court finds the [7] is insufficient to establish proper service of the [1] Motion to Quash under Federal Rules of Civil Procedure 5 and Local Rule 5-1.

Therefore, IT IS HEREBY ORDERED that on or before August 19, 2025, Hilton must serve a copy of the [1] Motion to Quash on Blake Lively's counsel, Michael Gottlieb, pursuant to Fed R. Civ. P. 5(b) and LR 5-1.

IT IS FURTHER ORDERED that on or before August 19, 2025, Hilton must file a Certificate of Service, which specifies the date as well as the manner of service, using this Court's approved Certificate of Service form, which can be found at https://www.nvd.uscourts.gov/wp-content/uploads/2022/07/Certificate-of-Service-2022.pdf.

IT IS FURTHER ORDERED that Blake Lively's response to the [1] Motion is due 14 days after proper service, consistent with this Order. See LR 7-2.

(Copies have been distributed pursuant to the NEF - IML)


## 2:25-cv-01396-RFB-DJA Notice has been electronically mailed to:

Mario Lavandeira, Jr.    ph@perezhilton.com

**2:25-cv-01396-RFB-DJA Notice has been delivered by other means to:**

## CERTIFICATE OF SERVICE

*\* You must serve each document you file by sending or delivering to the opposing side. Complete this form, and include it with any document that you file and serve.\**

I hereby certify that on the  13  day of August, 2025, I personally served a true and correct

copy of the foregoing ___ Motion to Quash Subpoena _____ by the following means

*[check one]*

         CM/ECF

         U.S. Mail

         Hand-Delivery (including handing it to recipient or delivering it to the person's office

         or usual place of abode and leaving it with someone of suitable age and discretion who

         resides there)

    X  Delivery Service (e.g., FedEx, UPS)

         Other means (if the other party has consented in writing to service by such means)

to the following individuals *[Write the full name and contact information for each person you sent the document.]*

Michael J. Gottlieb                      _____

WILLKIE FARR & GALLAGHER LLP         _____

1875 K Street NW, Washington, DC 20006    _____

(202) 303-1000  —  mgottlieb@willkie.com    _____

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Signature: _____

Name:    Mario Armando Lavandeira, Jr - aka Perez Hilton

Address:    8506 W 3rd St #101

            Los Angeles, CA 90048

073

# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA



**In Re Subpoena to:**

**MARIO LAVANDEIRA JR. aka PEREZ HILTON**

**MOTION TO QUASH SUBPOENA**

Non-party Mario Armando Lavandeira Jr., aka Perez Hilton, appearing pro se, respectfully moves this Court to quash the subpoena issued to him by the Southern District of New York in the matter of Blake Lively v. Wayfarer Studios, et al., for the reasons set forth below.

Mr. Lavandeira is a Nevada resident who was served in Nevada. The subpoena commands compliance at a location within this district, making this Court the appropriate venue for adjudicating this motion under Federal Rule of Civil Procedure 45(d)(3).

## PRELIMINARY STATEMENT

This motion challenges a subpoena that is overbroad and abusive. It targets Mario Armando Lavandeira Jr., professionally known as Perez Hilton — a private citizen, a resident of Nevada, and a journalist who is wholly uninvolved in the litigation pending in the Southern District of New

York. Mr. Lavandeira is not a party, not a witness, and not alleged to possess any unique information relevant to the claims at issue. Yet, the subpoena demands sensitive, privileged, and constitutionally protected materials - in blatant disregard for the First Amendment, Nevada's Shield Law, and Rule 45's procedural protections.

This is not discovery — it is a fishing expedition that chills journalistic freedom and imposes undue burden on a non-party. The Court should quash this subpoena in its entirety to prevent further abuse of process and to uphold the legal protections afforded to individuals like Mr. Lavandeira.

I anticipate that the subpoenaing party may attempt to characterize me as merely a "content creator" or social media personality. That framing is inaccurate and misleading. I am a journalist — a globally recognized one — with a decades-long track record of reporting on matters of public interest. For over 20 years, I have operated PerezHilton.com, a daily news website that continues to publish original reporting, commentary, and media coverage. The Court is invited to review the site to confirm that it remains an active and ongoing journalistic enterprise. My work and I have been cited by mainstream outlets, referenced in legal filings, and are followed by millions. I adhere to journalistic standards, protect my sources, and conduct my job in the same professional capacity as any reporter. Courts have long held that reporter's privilege and First Amendment protections apply regardless of platform — whether print, digital, or social — and I am no exception. This motion should be evaluated in light of my role as a working journalist entitled to all applicable legal protections.

# I. THE SUBPOENA IMPOSES AN UNDUE BURDEN ON A NON-PARTY

This subpoena places an undue and unjustifiable burden on me, a private citizen and non-party with no involvement whatsoever in the underlying litigation. I am not a party, not a witness, and not alleged to possess unique information relevant to any claim or defense in the case. As such, I am entitled to the strongest possible protection under Federal Rule of Civil Procedure 45(d)(3)(A), which mandates that courts must quash subpoenas that impose an undue burden.

The burden here is not hypothetical - it is real and severe. Complying would require extensive effort to review, compile, and potentially testify about private communications or unpublished material, none of which have been shown to be relevant, proportional, or obtainable from a more appropriate source. Courts have consistently held that discovery burdens placed on non-parties are to be given special weight and must be narrowly tailored (see Cusumano v. Microsoft Corp., 162 F.3d 708, 717 (1st Cir. 1998)).

The Ninth Circuit has echoed this view, warning that non-parties should not be conscripted into wide-reaching, speculative discovery campaigns (see Gonzales v. NBC, 194 F.3d 29, 35 (2d Cir. 1999), cited favorably in Shoen v. Shoen, 5 F.3d 1289, 1292 (9th Cir. 1993)). The subpoena here flouts this standard.

The burden here is especially disproportionate given my complete lack of involvement in this litigation and the absence of any claim that I possess unique knowledge. Requiring a non-party journalist to expend substantial time, energy, and resources to comply with an overly broad and invasive subpoena is exactly what Rule 45(d)(3)(A)(iv) was designed to prevent.

Courts have consistently held that non-parties deserve special protection from the burdens of civil discovery. See Cusumano v. Microsoft Corp., 162 F.3d 708, 717 (1st Cir. 1998) ("[C]oncern for the unwanted burden thrust upon non-parties is a factor entitled to special weight in evaluating the

balance of competing needs."). This is especially true for journalists. See Gonzales v. NBC, 194

F.3d 29, 35 (2d Cir. 1999) ("[C]ompelled disclosure from journalists is not appropriate unless the

party has first exhausted all alternative sources.").

Since receiving this subpoena, I have already spent a substantial amount of time researching the

law, drafting this motion, and defending my rights — time that has taken me away from my job as

a journalist and from my responsibilities as a parent. That burden is real, personal, and entirely

unjustified. The discovery process is not a license to conscript journalists into litigation to which

they are strangers — especially when the requesting party has not even attempted to seek the

information from more direct sources.

## II. THE SUBPOENA VIOLATES REPORTER'S PRIVILEGE AND THE FIRST
## AMENDMENT

 The subpoena strikes at the heart of my constitutionally protected role as a journalist and media

commentator. It seeks information obtained during the course of my newsgathering activities -

information that is protected by both federal law and Nevada's absolute reporter's privilege.

Under well-established Ninth Circuit precedent, courts recognize a qualified journalist's privilege

against compelled disclosure of both confidential and non-confidential information. This privilege

arises from the First Amendment and protects against discovery that would chill freedom of the

press and hinder the free flow of information to the public. As held in Shoen v. Shoen, 5 F.3d 1289

(9th Cir. 1993), and reaffirmed in Shoen v. Shoen, 48 F.3d 412 (9th Cir. 1995), the party seeking to

overcome this privilege must demonstrate that the information is (1) highly relevant, (2)

unavailable by alternative means, and (3) crucial to the case. Blake Lively's legal team has made

no such showing - nor could they.

Courts have repeatedly affirmed that even non-anonymous individuals enjoy robust First Amendment protections against compelled disclosure that would chill speech or association. In Perry v. Schwarzenegger, 591 F.3d 1147, 1152 (9th Cir. 2010), the Ninth Circuit quashed a subpoena seeking internal communications from identified individuals and advocacy groups involved in public discourse, holding that "[t]he freedom to associate with others for the common advancement of political beliefs and ideas lies at the heart of the First Amendment." The court concluded that compelled disclosure in such contexts poses a "serious risk of chilling" public participation, and thus must be narrowly tailored and justified by a compelling need — a standard not remotely met here.

As a Nevada resident, and with the place of compliance located in Nevada, I am also protected by Nevada's Shield Law, codified at NRS 49.275. This statute grants journalists absolute immunity from being compelled to disclose any published or unpublished information or the identity of any source, regardless of confidentiality. This includes digital media and online reporting.

Because I reside and was served in Nevada, and enforcement is being sought in the District of Nevada, this Court should apply Nevada privilege law in evaluating the subpoena. Under Federal Rule of Evidence 501, "state law governs privilege regarding a claim or defense for which state law supplies the rule of decision." Even when federal law applies, courts often consider state privilege laws when those laws offer heightened protection, particularly in cases involving non-party journalists. Nevada's Shield Law provides categorical protection against compelled disclosure of both published and unpublished information obtained in the course of journalism. That absolute privilege applies here.

Enforcing the subpoena would violate my First Amendment rights, the statutory protections of NRS 49.275, and long-standing judicial precedent. This Court must quash the subpoena to prevent the chilling effect it would have on press freedom, independent journalism, and the ability of reporters to inform the public without fear of compelled disclosure.

## III. THE SUBPOENA IS PROCEDURALLY DEFECTIVE AND LEGALLY INVALID UNDER RULE 45

This subpoena suffers from multiple procedural and jurisdictional defects that violate both the letter and spirit of Rule 45. As outlined below, it was issued from the wrong court, exceeds geographic limitations, and lacks enforceability.

First, it violates Rule 45(c)(1)(A), which limits the geographic scope of compliance. The subpoena was issued from the Southern District of New York but seeks compliance in Nevada — more than 2,000 miles away. Rule 45 strictly prohibits compelling attendance or production more than 100 miles from where the person resides, is employed, or regularly transacts business in person. Courts have repeatedly held that subpoenas served outside this range are invalid and unenforceable. See Schwarz v. Meinberg, No. 2:16-mc-00016, 2016 WL 4011620, at *2 (C.D. Cal. July 15, 2016); In re Apple Inc., 581 F. App'x 886, 889 (Fed. Cir. 2014); Powell v. Time Warner Cable, Inc., No. 2:09-CV-00600, 2010 WL 5464895, at *3 (S.D. Ohio Dec. 30, 2010). This subpoena plainly exceeds those bounds and must be quashed.

I live and work in Las Vegas, and I have no presence or connection to New York. The SDNY has no authority to compel compliance in this District. This jurisdictional defect alone renders the subpoena invalid and requires it to be quashed.

Second, the subpoena fails to clearly and properly designate a specific court or authorized proceeding with jurisdiction over me. Although it lists a Las Vegas location for compliance, it was issued from the Southern District of New York — a court that has no authority over me as a Nevada resident and non-party. The subpoena does not state that this is being conducted under the supervision of a court in Nevada, nor does it identify any properly authorized proceeding in this District. Courts have held that a subpoena that fails to identify a proper issuing authority or legal basis for jurisdiction is procedurally defective and must be quashed. See Estate of Ungar v. Palestinian Authority, 412 F. Supp. 2d 328, 333 (S.D.N.Y. 2006) ("Subpoenas issued from a court that lacks jurisdiction over the person served are unenforceable."). This is not a minor technical flaw — it is a jurisdictional defect that strips the subpoena of any legal effect.

Third, the subpoena was served on me in Nevada and commands compliance in Nevada, where I reside and work. This is not a minor technical issue — it is a fatal jurisdictional flaw. Under Rule 45(d)(3), only the court for the district where compliance is required — here, the District of Nevada — may adjudicate a motion to quash or enforce a subpoena. The issuing court, the Southern District of New York, has no territorial power over me as a non-party outside its geographic reach.

Courts consistently hold that a subpoena served and made returnable outside the issuing court's jurisdiction is null and void. See Gipson v. Southwest Bell Tel. Co., 2009 WL 790203 (D. Kan. Mar. 24, 2009) (quashing subpoena issued from the wrong district); Wright v. American Int'l Group, 2020 WL 5526680, at 4 (S.D. Ohio Sept. 15, 2020) ("The issuing court lacks jurisdiction to enforce a subpoena outside its district under Rule 45.").

Because I have no presence in New York, and the subpoena neither originates from nor is enforceable by the court with jurisdiction over the place of compliance, it is invalid and must be quashed as a matter of law.

Courts have consistently held that when a subpoena is issued by a court that lacks territorial authority over the recipient, it is unenforceable and must be quashed. See Eurofins Discovery Services v. BioChain Institute, Inc., No. 21-mc-80160, 2021 WL 3510363, at *3 (N.D. Cal. Aug. 10, 2021) (quashing subpoena for lack of jurisdiction where it commanded compliance outside the issuing court's authority). The subpoena in this case is therefore void, and this Court — the District of Nevada — is the only proper forum to adjudicate the matter and to issue relief.

## IV. THE SUBPOENA FAILS BECAUSE THE INFORMATION SOUGHT IS READILY AVAILABLE FROM THE WAYFARER PARTIES - OTHER, MORE APPROPRIATE SOURCES

Even assuming, solely for the sake of argument, that the subpoena seeks material relevant to the underlying litigation, that alone is insufficient to justify compelling disclosure from a non-party journalist. Courts have consistently held that when constitutionally protected or privileged information is sought from members of the press, the requesting party must first demonstrate that the information is not available from other sources. See Gonzales v. NBC, 194 F.3d 29, 35 (2d Cir. 1999) ("[C]ompelled disclosure from journalists is not appropriate unless the party has first exhausted all alternative sources."); United States v. LaRouche Campaign, 841 F.2d 1176, 1181 (1st Cir. 1988) (quashing subpoena where "the party seeking the information failed to show that it was unavailable from another source").

In this case, the information sought is plainly available from parties to the litigation or other primary sources. I possess no exclusive access, no first-hand knowledge, and no involvement in the events at issue. As a journalist, I am protected by both the federal reporter's privilege and Nevada's absolute Shield Law. The subpoena must be quashed because it seeks to extract protected information from a non-party without meeting the threshold burden imposed by law.

Also, if the subpoena seeks relevant material - it still must be quashed because the information is plainly available from parties to the litigation or other primary sources, not from me, a non-party journalist. Under Federal Rule of Civil Procedure 26(b)(2)(C), courts must limit discovery when the information can be obtained from some other source that is more convenient, less burdensome, or less expensive. This principle applies with even greater force when the target of discovery is a non-party, especially one engaged in constitutionally protected press activity. As the Ninth Circuit held in Shoen v. Shoen, 48 F.3d 412, 416 (9th Cir. 1995), compelled disclosure is only permissible when the party seeking it has first shown unavailability from other sources.

Blake Lively and her legal team have not made-and cannot make-such a showing. They should pursue discovery through the parties actually involved in the lawsuit. I am not part of this case, and any information I do have is protected by law. Rule 26(b)(2)(C) and Rule 45(d)(3) both exist to prevent this kind of abuse.

Moreover, I possess no unique or exclusive access to any information relevant to this litigation. I am not a witness, insider, or party to any of the events at issue. What I have publicly commented on is based on materials already available in the court record or reported in the public domain. To the extent the subpoena seeks information that might be relevant, it can — and must — be obtained directly from the parties to the case, particularly the Wayfarer defendants. Courts have

consistently held that journalists cannot be forced to testify or produce materials when the information sought is available from more direct sources. See Shoen v. Shoen, 48 F.3d 412, 416 (9th Cir. 1995) ("If the information sought is available from a non-journalistic source, the subpoena should be quashed."); Gonzales v. NBC, 194 F.3d 29, 35 (2d Cir. 1999) ("Compelled disclosure from journalists is not appropriate unless the party has first exhausted all alternative sources.").

The law is clear: when information can be obtained from someone directly involved in the underlying dispute, courts will not permit discovery from an uninvolved journalist. See Gonzales v. NBC, 194 F.3d 29, 35 (2d Cir. 1999) ("Compelled disclosure from journalists is not appropriate unless the party has first exhausted all alternative sources.").

In this case, Blake Lively and her legal team have direct access to the Wayfarer defendants, who can answer for their own communications, statements, or alleged conduct. There is no showing that I possess any unique or exclusive evidence. Everything I have commented on was based on public court filings or other publicly reported facts. The burden is on the subpoenaing party to show that I have critical, non-duplicative evidence that cannot be acquired elsewhere — and they have not even attempted to make such a showing.

## V. THE SUBPOENA RISKS INTRUDING ON ATTORNEY-CLIENT PRIVILEGE AND CONFIDENTIAL LEGAL COMMUNICATIONS

This subpoena not only overreaches journalistically - it also threatens to pierce the veil of attorney-client privilege, one of the most sacred doctrines in American law. Any attempt to compel disclosure of legal communications-directly or indirectly-raises grave constitutional and

ethical concerns.

I am represented by attorney Bryan Freedman, although he is not representing me in this matter. Notably, Mr. Freedman is also lead counsel for Justin Baldoni and the Wayfarer defendants — the very parties at the center of this litigation. While I am not a party to this case, the subpoena may overlap with privileged or confidential communications I have had with Mr. Freedman or members of his firm. That fact alone heightens the risk of improper disclosure and potential ethical conflict.

Courts have held that once the possibility of attorney–client privilege is raised, the burden shifts to the subpoenaing party to prove that no privilege applies. See United States v. Chen, 99 F.3d 1495, 1501 (9th Cir. 1996) (holding that the party seeking disclosure "must prove, by clear and convincing evidence, that the privilege does not apply"). That burden has not been met here — nor has it even been addressed. The risk of breaching attorney–client privilege further reinforces the need to quash this subpoena in its entirety.

The Ninth Circuit has consistently held that courts must apply a strict standard when determining whether a subpoena can intrude into privileged realms (see Admiral Ins. Co. v. U.S. District Court, 881 F.2d 1486 (9th Cir. 1989)). There has been no privilege waiver. There has been no evidentiary showing of need. There has been no justification at all for this dangerous overstep.

No litigant is entitled to discovery that compromises attorney–client communications, especially not from a non-party with no material connection to the case.

## VI. The Subpoena Reflects the Type of Abuse Anti-SLAPP Principles Are Designed to Prevent

The principles underlying Nevada's anti-SLAPP statute (NRS 41.660) further underscore the impropriety of this subpoena.

Although Nevada's anti-SLAPP statute does not explicitly apply to subpoenas, its core principles are highly relevant here. The statute is designed to protect individuals — including journalists and commentators — from legal tactics intended to chill participation in public discourse. That is precisely what is occurring in this case: I provided commentary on a matter of public concern based entirely on public court filings, and now I am being dragged into federal litigation as a result.

Nevada's anti-SLAPP statute is meant to deter legal tactics aimed at punishing or chilling protected speech. This subpoena, issued against a non-party journalist based solely on constitutionally protected commentary about public litigation, exemplifies the kind of abusive legal pressure the statute seeks to discourage. Courts have long held that the power of discovery must not be used as a weapon against free expression. That principle applies here with equal force, reinforcing the need for this Court to quash the subpoena in full.

As the Ninth Circuit has held, Nevada's anti-SLAPP statute must be interpreted broadly to safeguard public participation in legal and policy debates. See Metabolic Research, Inc. v. Ferrell, 693 F.3d 795, 802 (9th Cir. 2012) ("The protections of Nevada's anti-SLAPP statute are to be construed broadly and interpreted to encourage participation in public discourse without fear of retribution through abusive litigation.").

This Court should take these policy concerns into account when evaluating the burden,

overbreadth, and chilling effect of enforcing this subpoena. The public's interest in robust

commentary on judicial proceedings is not advanced by punishing those who report or opine on

them.

## VII. The Subpoena Requires Disclosure of Privileged and Protected Information in Violation of Rule 45(d)(3)(A)(iii)

Rule 45(d)(3)(A)(iii) mandates that a court must quash or modify a subpoena that "requires

disclosure of privileged or other protected matter, if no exception or waiver applies." The rule is

mandatory: if privilege applies and no exception exists, the subpoena must be quashed.

As detailed above, the subpoena issued to me seeks information subject to multiple, overlapping

privileges:

- First, it targets materials protected by the First Amendment and the federal reporter's privilege, as established in Shoen v. Shoen, 5 F.3d 1289 (9th Cir. 1993) and 48 F.3d 412 (9th Cir. 1995).

- Second, it implicates Nevada's absolute journalist Shield Law, NRS 49.275, which categorically bars compelled disclosure of both published and unpublished materials obtained in the course of reporting.

- Third, it risks invading the attorney-client privilege, given my past communications with counsel that may fall within the subpoena's sweeping scope.

No exception or waiver applies to any of these protections. The subpoena does not identify

specific, non-privileged information, nor does it make any showing that privileged material should be pierced. Its breadth and vagueness only heighten the risk that it would improperly compel disclosure of protected content.

Under Rule 45(d)(3)(A)(iii), that alone is sufficient grounds for this Court to quash the subpoena in full.

## VIII. The Subpoena Seeks Confidential Editorial and Commercial Information in Violation of Rule 45(d)(3)(B)(i)

Rule 45(d)(3)(B)(i) authorizes courts to quash or modify a subpoena if it "requires disclosure of a trade secret or other confidential research, development, or commercial information." I own and operate a media website with editorial discretion and proprietary decision-making processes that are commercially sensitive.

The subpoena, by seeking access to internal communications, unpublished content, and newsgathering practices, threatens to expose confidential editorial strategies and reporting methods. These materials are not public, and disclosure would directly undermine the independence and viability of my work as a journalist.

Courts have acknowledged that such information is entitled to protection. See Gonzales v. NBC, 194 F.3d 29, 35 (2d Cir. 1999) (forced disclosure of internal editorial process can chill journalism); In re Subpoena Duces Tecum to ABC, 189 F.3d 117, 123 (2d Cir. 1999) (courts must be cautious when discovery intrudes on editorial judgments and unpublished materials); In re Bextra &

Celebrex, 249 F.R.D. 8, 12 (D. Mass. 2008) (courts routinely quash subpoenas seeking commercially sensitive information without justification).

This risk of compelled disclosure of protected material provides yet another independent — and compelling — reason to quash the subpoena in full.

# IX. THE SUBPOENA IS OVERBROAD, INTRUSIVE, AND A TRANSPARENT FISHING EXPEDITION

This subpoena exceeds the bounds of reasonable discovery and functions as a textbook fishing expedition. While it purports to identify certain document categories, those categories are broad, vaguely defined, and largely untethered to any specific claims or defenses in the underlying case. Courts have consistently rejected discovery requests that amount to open-ended demands for "anything that might be useful." See In re Subpoena to Verizon Internet Services, 257 F. Supp. 2d 244, 258 (D.D.C. 2003) ("[S]ubpoenas are not a license for fishing expeditions or intrusions into constitutionally protected areas.").

Rule 45 does not permit parties to impose undue burden or demand sweeping disclosure from non-parties in the hope of stumbling upon something relevant. See also Gropper v. David Ellis Real Estate, L.P., 2014 WL 518234, at *4 (S.D.N.Y. Feb. 10, 2014) (quashing overbroad subpoena that sought documents "regardless of whether they bear on any party's claim or defense").

Courts in the Ninth Circuit have repeatedly quashed subpoenas that fail to delineate relevance or specificity. Indeed, the Ninth Circuit has emphasized that "the litigant's interest in disclosure should yield to the journalist's privilege," and any subpoena must adhere to Rule 45's

proportionality and specificity requirements (Shoen II, 48 F.3d at 416; Farr v. Pitchess, 522 F.2d 464, 468-69). Broad, speculative demands for information - especially from non-parties-are routinely rejected.

Here, the subpoena targets me, a journalist and public figure, seeking unspecified communications and materials unrelated to any known claim, thereby risking a chilling effect on press freedom. Rule 45 does not permit such untargeted discovery. As one court put it, subpoenas "must represent a good faith effort to obtain identified evidence rather than a general 'fishing expedition.'"

The subpoena is painfully overbroad. Courts have routinely rejected similarly expansive requests — particularly when aimed at non-party journalists. See Oakley v. MSG Networks, Inc., No. 24-mc-23 (S.D.N.Y. Jan. 8, 2025), 2025 WL 72111, at 2 ("Subpoenas seeking 'all documents and communications' without reasonable limitation are presumptively improper."); Hedgeye Risk Mgmt., LLC v. Dale, No. 21-cv-3687, 2023 WL 4353076, at *5 (S.D.N.Y. July 5, 2023) (quashing subpoena for "sweeping and non-specific" requests not narrowly tailored); Gropper v. David Ellis Real Estate, L.P., No. 13-cv-2068, 2014 WL 518234, at *4 (S.D.N.Y. Feb. 10, 2014) ("Subpoenas that fail to specify categories or relevant timeframes are inherently overbroad and must be quashed.") Blake Lively's subpoena suffers from the same fatal flaws. That kind of fishing expedition is exactly what Rule 45(d)(3)(A)(iv) forbids.

The subpoena's breadth and disregard for proportionality make it oppressive and improper. It should be quashed. This overbreadth is contrary to Rule 45's mandate that subpoenas not impose an "undue burden" or be "unreasonable or oppressive." This is particularly true where, as here, the target is a non-party journalist entitled to heightened protection under both the First Amendment and Rule 45. See Hale v. State Farm Mut. Auto. Ins. Co., 2016 WL 1055580, at *4 (S.D. Ill. Mar.

17, 2016) (quashing non-party subpoena as overbroad, not proportional, and imposing undue burden).

The subpoena is an impermissible fishing expedition. It does not seek narrowly tailored, material evidence — it casts a wide net in hopes of uncovering something useful. Courts have consistently rejected such tactics, especially where privileged or protected materials are at stake. It should be quashed.

**RELATED FEDERAL COURT FILING**

For the Court's awareness and consideration, Movant notes that on July 19, 2025, a related motion was filed in the United States District Court for the Southern District of New York. That filing — docketed as Document 470 in Case No. 1:24-cv-10049 (Lively v. Wayfarer Studios LLC) — is a formal Motion to Seal or Redact Personal Information submitted by Movant in response to the very same subpoena at issue here.

The SDNY filing outlines in detail the serious privacy and safety risks associated with public disclosure of Movant's personal identifying information, particularly as a journalist and public figure with minor children and an elderly parent in the household. That motion is attached in this filing

**REQUEST FOR FEES AND COSTS**

Pursuant to Federal Rule of Civil Procedure 45(d)(1), Mr. Lavandeira requests that the Court

award reasonable expenses incurred in responding to this improper subpoena. Rule 45(d)(1)

imposes an affirmative duty on parties and their counsel to avoid imposing undue burden or

expense on non-parties, and authorizes the Court to "enforce this duty and impose an appropriate

sanction — which may include lost earnings and reasonable attorney's fees." This subpoena,

which targets a journalist with no involvement in the underlying litigation and seeks protected

information, falls squarely within the category of abusive discovery that courts have routinely

sanctioned. See, e.g., Mount Hope Church v. Bash Back!, 705 F.3d 418, 429 (9th Cir. 2012)

(reversing denial of sanctions under Rule 45 where subpoena was issued without due

consideration for the burden on a non-party); Legal Voice v. Stormans Inc., 738 F.3d 1178, 1184

(9th Cir. 2013) (affirming award of fees to non-party public interest group improperly

subpoenaed); In re NCAA Student-Athlete Name & Likeness Licensing Litig., No. 09-cv-01967,

2012 WL 4846522, at *2 (N.D. Cal. Oct. 10, 2012) (awarding fees under Rule 45(d)(1) where

subpoena was overbroad and unduly burdensome); Miller v. Ghirardelli Chocolate Co., No.

12-cv-04936, 2013 WL 6775532, at *4 (N.D. Cal. Dec. 20, 2013) (same). Responding to this

overreaching subpoena has required substantial time, legal research, and preparation of the instant

motion and supporting materials. An award of reasonable costs would not only compensate Mr.

Lavandeira for this undue hardship, but would send a clear message that the subpoena power

cannot be wielded recklessly or punitively — especially against journalists and uninvolved third

parties.

Rule 45(d)(1) requires parties and attorneys issuing subpoenas to "take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena." It further provides that "[t]he court… must enforce this duty and impose an appropriate sanction — which may include lost earnings and reasonable attorney's fees — on a party or attorney who fails to comply."

Blake Lively's legal team failed to meet this obligation. The subpoena directed at me — a non-party journalist — is overbroad, intrusive, legally deficient, and plainly designed to intimidate and burden rather than to obtain genuinely discoverable evidence. No effort was made to pursue discovery from parties actually involved in the litigation. Instead, the subpoena demands privileged and irrelevant material from someone with no nexus to the underlying claims, in direct violation of Rule 45(d)(1).

I respectfully request that the Court impose sanctions to reflect the improper and abusive nature of this subpoena, and to deter similar conduct in the future.

Sanctions Are Also Warranted Under Rule 26(g)

In addition to Rule 45(d)(1), sanctions are independently warranted under Federal Rule of Civil Procedure 26(g). That rule requires attorneys to certify that all discovery requests are legally

justified, not issued for improper purposes, and proportionate to the needs of the case. Blake

Lively's legal team failed that standard here. This subpoena targets a non-party journalist with no

connection to the underlying litigation, seeks privileged and protected material, and imposes

significant burden without first pursuing discovery from actual parties. Its overbreadth, legal

deficiencies, and apparent disregard for jurisdictional limits further indicate it was not interposed

in good faith.

Rule 26(g)(3) provides that if a certification is violated without substantial justification, "the court,

on motion or on its own, must impose an appropriate sanction on the signer, the party on whose

behalf the signer was acting, or both." I ask that this Court exercise that authority and award costs

or other appropriate relief to deter future misuse of the discovery process.

Finally, Rule 11(c) authorizes sanctions when a filing is submitted "for any improper purpose,

such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation." The

sweeping scope and harassing nature of this subpoena — directed at a journalist —  strongly

suggest it was issued in retaliation for lawful commentary on a matter of public concern.

 For these reasons, I urge that the Court impose appropriate sanctions to reflect the improper,

burdensome, and constitutionally offensive nature of this subpoena, and to deter similar abuses in

the future. Such an award is especially warranted where the subpoena targets a journalist and

threatens to chill constitutionally protected expression and reporting.

## CONCLUSION

For the record, I have not been paid by Justin Baldoni. I have not been paid by any of the Wayfarer defendants. I have not been paid by anyone to cover this litigation. My commentary and analysis have been wholly independent, based solely on my own reading of the docket and my interpretation of the underlying facts.

In relation to me, this subpoena is an egregious misuse of civil discovery — legally baseless, constitutionally offensive, and procedurally defective. It targets a non-party journalist with no involvement in the litigation, demanding sensitive and  privileged information - in flagrant disregard of the First Amendment, Nevada's Shield Law (NRS 49.275), and the procedural safeguards of Rule 45(d).

Because the subpoena threatens the compelled disclosure of privileged and constitutionally protected information, its enforcement would cause irreparable harm — both to me personally and to the broader public interest in a free and independent press.

Courts have long held that "the loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." Elrod v. Burns, 427 U.S. 347, 373 (1976). Disclosure here would not only violate reporter's privilege, but would inflict constitutional harm that cannot be undone.

The subpoena fails every applicable legal test: it imposes undue burden, ignores geographic limitations, and seeks information readily available from the parties to the case.

Worse still, it sends a dangerous signal — that journalists can be harassed, intimidated, and dragged into federal court simply for doing their jobs. That cannot be allowed. This Court has both the authority and the obligation to quash the subpoena in full and to reaffirm that discovery is not a bludgeon to be wielded against the free press. Anything less would reward abuse and invite repetition.

On July 26, 2025, Plaintiff Blake Lively, through counsel, submitted a letter to Judge Lewis J. Liman in the Southern District of New York acknowledging that she has withdrawn all subpoenas served on third-party service providers (including Google and X) in relation to several non-party individuals who filed motions to quash. A true and correct copy of that letter is attached hereto. This move — made only after multiple non-parties asserted their legal rights — is a tacit admission that those subpoenas were legally defective and unenforceable. The subpoena served on me suffers from the exact same flaws, and its continued enforcement would amount to selective harassment. The Court should take judicial notice of this pattern, and likewise quash the subpoena issued to me in full.

*Movant does not waive and specifically reserves any and all objections to this or any other discovery directed at him.*

For all the reasons stated above - I request that the Court quash the deficient and unenforceable subpoena in its entirety and grant any further relief it deems just and proper.

Dated: July 28, 2025

Respectfully submitted,

/s/ Mario Lavandeira

Mario Lavandeira aka Perez Hilton

Pro Se Movant