**UNITED STATES DISTRICT COURT DISTRICT OF NEVADA**

Case Name: **In Re Mario Lavandeira, Jr.**

Case Number: **2:25-cv-01396-RFB-DJA**

**REPLY IN SUPPORT OF MOTION TO QUASH SUBPOENA;**

**OPPOSITION TO CROSS-MOTION TO TRANSFER AND TO COMPEL**

**I. PRELIMINARY STATEMENT**

This Court is asked to enforce a sweeping subpoena against a non-party Nevada resident and journalist. I have no stake in the underlying litigation between Ms. Lively and the Wayfarer Defendants, nor have I ever received compensation from Wayfarer or any affiliated party. I am not a litigant; I am a non-party media reporter exercising my First Amendment right to cover matters of public interest. In this instance, a real-life story of David vs Goliath - with Goliath being Ms. Lively and her A-list husband. This touches upon themes of power, corruption and alleged abuse by the Plaintiff against Mr. Baldoni and the Wayfarer parties - all of great interest to the followers of my reporting and the greater public at large.

Rule 45, Nevada law, and the federal common-law reporter's privilege all protect me from being conscripted into this dispute. Ms. Lively's opposition recycles rhetoric designed to brand me as an "influencer" rather than acknowledge my well-established role as a journalist, but the law protects my reporting regardless of labels.

Importantly, I am not refusing to cooperate with the judicial process. I respect this Court's authority, and while I cannot disclose privileged information such as sources and unpublished materials, I offer Ms. Lively to provide testimony by deposition, declaration, affidavit or trial appearance. My position is not one of defiance, but of respect for the law and for the duties that come with being a journalist.

This subpoena is overbroad, disproportionate, and harassing. It seeks private communications with sources, unpublished material, and privileged content. Worse still, Ms. Lively has previously filed court papers publicly revealing non-parties' personal addresses and sensitive information, demonstrating a reckless disregard for the privacy and safety of others. The risk of further injustice underscores why this Court must quash the subpoena outright.

## II. ALL INFORMATION SOUGHT IS JOURNALISTIC AND THEREFORE PRIVILEGED

*Every piece* of information Ms. Lively seeks was gathered, received, or created in my capacity as a reporter. As such, it falls squarely within the protections of both Nevada's absolute Shield Law, NRS 49.275, and the federal reporter's privilege recognized in the Ninth Circuit.

The law does not permit compelled disclosure of such information. Nevada's Shield Law provides **absolute protection**, not subject to balancing or exceptions. Diaz v. Eighth Jud. Dist. Ct., 116 Nev. 88, 993 P.2d 50 (2000). Similarly, the Ninth Circuit's test in Shoen v. Shoen, 5 F.3d 1289 (9th Cir. 1993), requires a demanding showing of necessity before a journalist can ever be compelled — a showing Ms. Lively has unsuccessfully attempted and definitely not met.

Rule 45(d)(3)(A)(iii) explicitly provides that a court must quash or modify a subpoena that "requires disclosure of privileged or other protected matter, if no exception or waiver applies." This language is mandatory. Because the subpoena targets only privileged and protected journalistic material, it cannot be salvaged by narrowing or modification. The only appropriate remedy is to quash it *in its entirety*.

The subpoena is not narrowly tailored to reach some incidental, non-privileged category of information. Instead, it seeks the sum total of my communications, materials, and sources relating to my journalistic coverage of Ms. Lively and the underlying litigation.

Just Some Examples of Overbreadth:

- Request No. 1: "All communications between you and the Wayfarer Parties."
  → Directly targets unpublished journalistic material and confidential sources.

- Request No. 3: "All documents relating to your coverage of Ms. Lively."
  → Captures drafts, editorial decisions, and unpublished notes — all core protected work.

- Request No. 7: "All communications with any third party regarding Ms. Lively.
  → Limitless scope intruding into work product and sources.

**III. DEMONSTRATING GOOD FAITH AND COOPERATION**

I want to make clear that I am not refusing to cooperate with the judicial process. To the contrary, I respect this Court's authority and have taken these issues seriously here - from the moment Ms. Lively served me with a subpoena. I quickly turned to the place of compliance, *this* Court, for relief - precisely because I know the law protects journalists, like myself, from being compelled to reveal privileged information, including sources and unpublished materials.

What Ms. Lively is demanding are the very communications and sources that are at the core of my role as an internationally known and respected journalist. Because those are protected under Nevada's Shield Law and the First Amendment, I cannot ethically or legally disclose them.

However, in the spirit of good faith and cooperation, I am willing to provide alternative means of participation that respect the law while avoiding disclosure of privileged material. Specifically, I am prepared to:

- Sit for a deposition by Ms. Lively's counsel, subject to privilege objections;

- Submit a sworn affidavit or declaration; or

- Testify at trial, if called, consistent with my obligations as a journalist.

These alternatives demonstrate that I am not obstructing the judicial process. Rather, I am carefully balancing my duty as a journalist to protect sources and privileged information with my duty as a citizen to respect the courts.

**IV. TRANSFER UNDER RULE 45(f) IS UNWARRANTED**

Your Honor has already ordered that the place of compliance is required in *this* District. I have never consented to the jurisdiction of the Southern District Of New York. Rule 45(f) permits transfer to the issuing court **only** upon consent or in "exceptional circumstances."

The 2013 Advisory Committee Note states the "prime concern" is protecting local non-parties.

- There are absolutely *no exceptional circumstances here*. **This is a routine discovery dispute** involving relevance, burden, and privilege.

- Local non-party protection. I live and work in Nevada; Rule 45 presumes resolution here. See Agincourt Gaming, LLC v. Zynga, Inc., No. 2:14-cv-0708, 2014 WL 4079555, at *5 (D. Nev. Aug. 15, 2014).

- No conflicting rulings. The New York court has not resolved these issues. Speculative risk of inconsistency cannot outweigh my rights as a Nevada resident.

I respectfully urge this Court to resolve the subpoena dispute here, as contemplated by Rule 45. As a Nevada resident and non-party, I am entitled to the protections of this forum. Transferring the matter to the Southern District of New York would not only burden me, but also risk creating the appearance of unfairness.

This litigation has attracted *intense* public scrutiny. Many members of the public — myself included — have been following Judge Liman's handling of the underlying case closely. While I make no formal accusation against any judge, I note that there is significant concern expressed on social media and in commentary that his rulings in New York raise questions of impartiality. Even the perception of bias is harmful to public confidence in the courts.

The 2013 Advisory Committee Note to Rule 45(f) emphasized that transfer should not be ordered "as a matter of course," and that protecting local non-parties from undue burden and preserving fairness must be the guiding principle. By keeping this dispute in Nevada, where it properly belongs, this Court ensures both the reality and the appearance of fairness, fully consistent with the Rule's intent.

### V. THE SUBPOENA IS OVERBROAD, DISPROPORTIONATE, AND UNDULY BURDENSOME

**A. Rule 45(d) Standards**
Rule 45(d)(1) requires parties to avoid undue burden. Rule 45(d)(3)(A)(iv) mandates that courts must quash subpoenas that subject a non-party to undue burden. The word "must" again confirms the Court has no discretion once privilege or undue burden is shown.

Privilege is asserted here. *Everything* Ms. Lively seeks is privileged. Undue burden is also asserted here. Ms. Lively has already forced me to expend dozens of hours and resources to defend myself against her subpoena, which at its core she knows - though may argue otherwise - is asking for the privileged and protected information of a reporter.

### B. Rule 26(b) Proportionality and Non-Party Status

Discovery must be "proportional to the needs of the case," considering: importance of issues, amount in controversy, access to information, resources, and whether burden outweighs benefit. Fed. R. Civ. P. 26(b)(1).

- As a non-party, I am "afforded special weight" under Rule 26. Courts in this District recognize that proportionality strongly disfavors burdening non-parties. See Playstudios, Inc. v. Centerboard Advisors, Inc., 2019 WL 6493926, at *4 (D. Nev.).

- The Wayfarer Defendants—actual litigants—are the proper source of any relevant communications. Ms. Lively has not exhausted party discovery, a prerequisite before burdening a non-party.

### C. Lack of Specific Showing

As Nationstar Mortg., LLC v. Flamingo Trails No. 7 Landscape Maint. Ass'n, 316 F.R.D. 327, 334 (D. Nev. 2016), and Jackson v. Montgomery Ward & Co., 173 F.R.D. 524, 529 (D. Nev. 1997) make clear, conclusory assertions are insufficient. Ms. Lively offers only speculation.

In fact, Ms. Lively's entire subpoena is built on speculation. Her counsel told this Court that the Wayfarer Defendants in the related litigation encouraged me "to spread disparaging (and false) narratives about Ms. Lively." That is not true - likewise most of the assertions and misrepresentations made on her behalf to this Court are false. Lies, lies and more lies.

### VI. OVERBREADTH, FIRST AMENDMENT, AND CHILLING EFFECT

Subpoenas directed at journalists implicate core First Amendment concerns. Compelled disclosure of sources, unpublished notes, and internal communications threatens not only my reporting but also chills speech by others who may fear retaliation for speaking to the press.

The Ninth Circuit recognizes this danger: Shoen v. Shoen, 5 F.3d 1289 (9th Cir. 1993) held that civil litigants' interests yield to the privilege absent a compelling showing. The chilling effect is compounded here by Ms. Lively's public attacks on creators-journalists and her prior reckless doxing of non-parties' personal information.

This Court should not permit discovery that will deter journalists and commentators from covering matters of public concern. And, in this instance, the subject matter is of special relevance to my audience.

As a journalist, I have reported about Ms. Lively on my website - PerezHilton.com - and on my social media channels *for decades*. Though I have never seen her act in anything, she was a friend of international superstar Ms. Taylor Swift for many years and by association I covered her and Ms. Lively's husband, well-known actor Ryan Reynolds.

It is preposterous and incorrect to assume that I would need or be given talking points to cover a story that would be highly relevant to my demo, which is primarily women of a certain age - near that of Ms. Lively's. I began covering the *It Ends With Us* saga in August of 2024 organically. And, what Ms. Lively has not told this Court is that in text message exchanges between the Wayfarer Defendants in August of 2024, they called me irrelevant and a hasbeen. Those have been submitted as evidence in the related litigation and that enough should be proof to anyone that the Wayfarer parties were not engaged in a plan with me against Ms. Lively. Why would they? They thought I was a loser who didn't move the needle.

## VII. MS. LIVELY'S SUBPOENA CAMPAIGN AGAINST JOURNALISTS IS IMPROPER AND HARASSING

Ms. Lively's subpoena is not an isolated instance. She has issued similar subpoenas to multiple other reporters and creator-journalists who have reported on this litigation. Yet as of the date and time of this filing, not a single federal court has compelled any journalist to comply with her burdensome and improper demands. She was even *outrageously* asking for the banking information of some.

This pattern reveals that the subpoenas are not designed to obtain truly necessary evidence, but to harass and intimidate members of the press who have reported critically on her litigation. Courts have repeatedly cautioned that subpoenas should not be used as fishing expeditions or as tools of harassment. See Micro Motion, Inc. v. Kane Steel Co., 894 F.2d 1318, 1327 (Fed. Cir. 1990) ("Rule 45 was not intended to burden non-parties with the production of irrelevant documents.").

Allowing this subpoena to proceed would not only chill reporting in this case but would create a dangerous precedent - emboldening rich and powerful litigants, like Ms. Lively, to use discovery as a weapon against the press. Rule 45(d)(1) expressly requires that parties avoid such undue burdens on non-parties.

Ms. Lively's well-documented requests for discovery seem hyper-focused on her hurt feelings, seeking discovery for an alleged smear campaign, and not to back up her unproven claims of sexual harassment.

Defending oneself and correcting a false narrative is not a smear campaign. Likewise, Ms. Lively knows that what she is asking of me and fellow journalists is protected and privileged information. And she doesn't care. She is harassing reporters with burdensome subpoenas, designed to hopefully drain them of money and energy. That is a legal tactic - not an attempt at true discovery.

Additionally, it would cause my website and journalistic endeavors harm if my competitors were aware of my "trade secrets" - not the least of which are my sources, which Ms. Lively wants unmasked.

## VIII. NEVADA'S SHIELD LAW PROVIDES ABSOLUTE PROTECTION

Nevada's Shield Law, NRS 49.275, is the broadest in the nation. Thankfully.

- Diaz v. Eighth Jud. Dist. Ct., 116 Nev. 88, 993 P.2d 50 (2000): *absolute* protection for professional journalistic activity.

- Toll v. Wilson, 135 Nev. 430, 453 P.3d 1215 (2019): confirms digital-only journalists, like myself, are covered.

By statute, I cannot be compelled to disclose sources or unpublished information gathered for communication to the public. Federal courts sitting in Nevada apply Nevada's Shield Law to subpoenas served on Nevada journalists. This makes the privilege here absolute.

## IX. LEGAL DEFINITION OF A JOURNALIST AND BIOGRAPHICAL BACKGROUND

### A. Legal Definition

Federal courts define "journalist" functionally, focusing on intent and activity rather than institutional affiliation. The privilege applies to those who gather news for dissemination to the public. See Shoen v. Shoen, 5 F.3d 1289 (9th Cir. 1993); Obsidian Fin. Group, LLC v. Cox, 740 F.3d 1284 (9th Cir. 2014).

As the Ninth Circuit emphasized, the question is whether the person intended to gather and communicate information to the public. By that test, I am plainly a journalist.

Federal courts have long recognized that journalism is not limited to traditional print reporters. In Shoen v. Shoen, 5 F.3d 1289, 1293 (9th Cir. 1993), the Ninth Circuit held that "what makes journalism journalism is not its format but its content." In Obsidian Fin. Group, LLC v. Cox, 740 F.3d 1284, 1291 (9th Cir. 2014), the Ninth Circuit confirmed that bloggers and online reporters are entitled to the same First Amendment protections as institutional press. I fall squarely within this definition.

For over twenty years I have reported on, commented about and analyzed celebrity and cultural news through [PerezHilton.com](PerezHilton.com), my YouTube channel, and The Perez Hilton Podcast with Chris Booker. My reporting has been cited by mainstream outlets including CNN, *The New York Times*, *The Guardian* and even our local newspaper, *The Las Vegas Review Journal*. I have received global recognition as an influential journalist, commentator, and media figure. I am therefore a reporter within the meaning of both Nevada's Shield Law and the First Amendment.

In fact, in Ms. Lively's response to my Motion To Quash, she even tells this Court that on my website I refer to myself as "the internet's most notorious gossip columnist". In other words, **a journalist**.

### B. Biography

Mario Armando Lavandeira Jr., professionally known as Perez Hilton, is a pioneering American journalist, columnist, podcaster, and media commentator. He founded and operates [PerezHilton.com](PerezHilton.com), one of the most widely read celebrity news and gossip platforms of the last two decades, reaching millions of readers.

Beyond his website, he:

- Hosts a podcast ("The Perez Hilton Podcast with Chris Booker"), discussing news and culture.

- Contributes commentary on entertainment and media in many other podcasts as an invited guest.

- Is a frequent television commentator, providing analysis on celebrity and cultural issues for news shows.

- Regularly appears as a reporter in documentaries - to provide them expert "testimony" and background.

- Is widely recognized as a leading digital journalist, dubbed "the original celebrity social media influencer" by multiple outlets.

His work has been cited and covered by mainstream news organizations, documentaries, legal filings and academic commentary. He has been recognized within the media industry and globally at large as a trailblazer in digital journalism, long before "blogger" and "podcaster" were considered mainstream journalism roles.

**C: My Legal Status As A Journalist**

In short, my career has been devoted to the journalistic function of gathering, analyzing, and disseminating information to the public. And, as such, I am a journalist.

I have not revealed who my sources are and if Ms. Lively believes that they are any of the Wayfarer parties, it is her obligation to seek that information from *them* and exhaust that process in the Southern District Of New York. She has not exhausted that process - it is ongoing. And, my sources and work product are privileged and protected under Nevada and federal law, as this Court recognizes.

**X. FEDERAL REPORTER'S PRIVILEGE PROVIDES AN INDEPENDENT SHIELD**

The Ninth Circuit recognizes a qualified First Amendment privilege:

- Obsidian Fin. Group, LLC v. Cox, 740 F.3d 1284 (9th Cir. 2014): bloggers and independent journalists receive the same protections.

- Shoen v. Shoen (Shoen I & II), 5 F.3d 1289, 48 F.3d 412: litigants must show exhaustion, non-cumulativeness, and critical necessity.

Ms. Lively has not met any prong of this test.

Ms. Lively recently filed in the Southern District Of New York a Motion To Compel her subpoenas against the Wayfarer Defendants. She has not exhausted party discovery yet, she has not demonstratively shown that non-party material is critical, and she has not shown that information cannot be obtained elsewhere. I have no unique knowledge or information that would help Ms. Lively's claims and all I have in my possession is privileged.

## XI. ATTORNEY-CLIENT PRIVILEGE

The subpoena threatens privileged legal communications and must be quashed.

- NRS 49.095 codifies privilege.

- Wardleigh v. Second Judicial Dist. Ct., 111 Nev. 345, 891 P.2d 1180 (1995), and Wynn Resorts, Ltd. v. Eighth Jud. Dist. Ct., 399 P.3d 334 (Nev. 2017) enforce it strictly.

The breadth of Ms. Lively's subpoena also risks sweeping in attorney–client privileged communications and attorney work product. For example, my correspondence with legal counsel. Bryan Freedman, lead attorney for Mr. Baldoni, has been my lawyer for decades - though he has not represented me with my responses to this subpoena.

Mr. Freedman is *still* my attorney. I *have* communicated with Mr. Freedman and other lawyers at his firm on numerous occasions during the relevant time period of the subpoena - about a wide variety of legal issues. Ms. Lively's requests for production would entitle her to all those communications. Once again, that is privileged.

Courts strictly forbid discovery intruding into attorney–client privilege absent extraordinary circumstances. See Upjohn Co. v. United States, 449 U.S. 383, 389 (1981). This provides yet another independent basis for quashing the subpoena in full.

## XII. ALTERNATIVE RELIEF

If any production is ordered, this Court should:

- Limit requests to narrow, non-privileged categories;

- Require exhaustion of party sources first;

- Impose an attorneys'-eyes-only protective order here;

- Shift all costs to Ms. Lively under Rule 45(d)(2)(B)(ii). See Legal Voice v. Stormans, Inc., 738 F.3d 1178, 1184 (9th Cir. 2013).

### XIII. REQUEST FOR FEES AND COSTS

Rule 45(d)(1) authorizes sanctions against parties who impose undue burden on non-parties. Given the subpoena's scope, Ms. Lively's failure to exhaust party discovery, and the chilling effect of targeting a journalist, this Court should award me reasonable costs and fees.

Sanctions in the form of reasonable fees and costs are warranted both to compensate me and to deter future abuse. Legal Voice v. Stormans, Inc., 738 F.3d 1178, 1184 (9th Cir. 2013).

### XIV. CONCLUSION

Ms. Lively and her lawyers have launched an expansive subpoena campaign against journalists. As a non-party journalist and Nevada resident, I should not be conscripted into this litigation or forced to risk my safety and my children's safety by producing private communications and unpublished material. Nevada law, federal law, and the First Amendment all shield me from such intrusion.

In addition, I respectfully note that I have worked diligently and expeditiously to respond to Ms. Lively's opposition so that this Court may rule without delay. This Court is the correct forum under Rule 45 to adjudicate this subpoena, as it was served for compliance in Nevada on a Nevada resident. Prompt resolution here will not only protect me as a non-party reporter, but will also avoid unnecessary entanglement with parallel proceedings in the Southern District of New York. It is both proper and efficient for this Court to decide the matter before any other court attempts to do so.

Every mandatory ground for quashing is present:

- The subpoena demands privileged matter (Rule 45(d)(3)(A)(iii)).

- It imposes undue burden on a non-party (Rule 45(d)(3)(A)(iv)).

- It violates Nevada's absolute Shield Law (NRS 49.275).

- It fails Rule 26(b) proportionality.

- It threatens core First Amendment rights.

For these reasons, the Court should:

1. Deny transfer under Rule 45(f);

2. Grant my Motion to Quash in full;

3. Deny Ms. Lively's cross-motion to compel; and

4. Award me costs and fees under Rule 45(d).

Granting Ms. Lively's subpoena would not only contravene Rule 45, Nevada law, and the First Amendment, but it would mark *the first time* any court in this litigation has compelled compliance from a journalist — an outcome unsupported by law, policy, or fairness.

**Respectfully submitted,**

/s/ Mario Lavandeira

Mario Armando Lavandeira, Jr.

aka Perez Hilton

Pro Se

Las Vegas, Nevada

August 19, 2025

**CERTIFICATE OF SERVICE**

I hereby certify that on August 19, 2025, I caused a true and correct copy of the foregoing to be filed by email with the Clerk of Court for the District of Nevada, and that I also served a copy via email and Delivery Service - as required by this Court - upon counsel for Plaintiff, Blake Lively, at the following email and physical address:

BOIES SCHILLER FLEXNER LLP
Richard J. Pocker
300 South Fourth Street, Suite 800
Las Vegas, NV 89101
(702) 382-7300
rpocker@bsfllp.com


 /s/ Mario Lavandeira

Mario Armando Lavandeira, Jr.

aka Perez Hilton