USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:________________
DATE FILED: 8/27/2025

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

BLAKE LIVELY,

Plaintiff,

-v-

WAYFARER STUDIOS LLC, JUSTIN BALDONI, JAMEY HEATH, STEVE SAROWITZ, IT ENDS WITH US MOVIE LLC, MELISSA NATHAN, THE AGENCY GROUP PR LLC, JENNIFER ABEL, JED WALLACE, STREET RELATIONS INC.,

Defendants.

24-cv-10049 (LJL)

MEMORANDUM AND ORDER

LEWIS J. LIMAN, United States District Judge:

Plaintiff Blake Lively ("Lively") moves, pursuant to Federal Rule of Civil Procedure 37(a)(1), to compel the Wayfarer Parties[1] to comply with various discovery requests. Dkt. No. 552. Lively demands that the Wayfarer Parties produce: (1) materials referenced in or supporting their First Amended Complaint and its accompanying Exhibit A, Dkt. No. 553 at 4–5;[2] (2) materials from the ephemeral messaging platform Signal, *id.* at 5–6; (3) responsive materials after December 2024, *id.* at 6–7; (4) non-privileged materials with attorney Bryan Freedman ("Freedman"), *id.* at 7–8; (5) document No. 310 on their privilege log, *id.* at 8–11; (6) their agents' responsive communications, *id.* at 11–13; and (7) phone records to present, *id.* at

[1] The Wayfarer Parties are Wayfarer Studios LLC, Justin Baldoni, Jamey Heath, Steve Sarowitz, It Ends With Us Movie LLC, Melissa Nathan, The Agency Group PR LLC, and Jennifer Abel.
[2] Specifically, Lively demands that the Wayfarer Parties produce "All Documents and Communications referenced and/or cited in the Wayfarer SDNY Complaint, including Communications referenced and/or cited in the Complaint, the Amended Complaint, and/or Exhibit A to the Amended Complaint." Dkt. No. 554-5 at 13, 36–37, 58–59, 80–81, 102–03, 124–25, 147–48, 169–70.

13–14. Lively also asserts that each of the Wayfarer Parties has failed to produce documents that each party represented, in responses to the requests for production of documents ("RFPs"), that it would produce. *Id.* at 14–23. Lively further asks the Court to compel the Wayfarer Parties to address improper redactions under the ESI protocol, *id.* at 24, and to disclose the search terms and parameters used to perform their document collection and review, *id.* at 24–25.

The Wayfarer Parties do not dispute that they have an obligation to produce the following non-privileged documents in their possession, custody, or control: (1) documents identified in the Wayfarer Parties' Amended Complaint, including the birth video; (2) communications between the Wayfarer Parties and Defendants Jed Wallace and Street Relations, Inc., regarding Lively, including payment records; (3) the phone records of Jennifer Abel, Justin Baldoni, Jamey Heath, Steve Sarowitz, and Melissa Nathan; (4) personnel policies, sexual harassment training, and human resources complaints; (5) communications between Freedman and the Wayfarer Parties prior to the commencement of this litigation on December 31, 2024; (6) documents and communications related to Lively's Civil Rights Department Complaint (the "CRD Complaint"), her seventeen-point list of conditions for her return to production, the "timeline" document, and related non-privileged communications; (7) new files that mix video and audio recordings from the film's footage; (8) the Writers Guild of America waiver; and (9) documents that are in the possession, custody, or control of each of the Wayfarer Parties regardless of whether the document was already produced by another Wayfarer Party or by a third party. Dkt. No. 610 at 11–12. Nor do the Wayfarer Parties dispute that they have an obligation to produce the document at Item No. 310 of their privilege log or to modify the redactions in their previous productions to replace black box redactions with text box redactions indicating the reason for the redaction. *Id.* at 13. Accordingly, the motion to compel is granted as unopposed in these

respects and as to these categories of documents. The Wayfarer Parties shall produce the documents identified in (1) to (9) above in their possession, custody, or control, as well as the document at Item No. 310, and shall address their improper redactions by no later than September 2, 2025. Each Wayfarer Party shall address the deficiencies identified by Lively on pages 14–23 of her memorandum in support of the motion to compel no later than September 2, 2025. *See* Dkt. No. 553.

The Wayfarer Parties offer only limited objections to Lively's motion to compel. They argue that they should not be required to produce: (1) the search terms they used for their document review (or should be required to do so only if Lively is as well), Dkt. No. 610 at 6, 13–14; or (2) documents postdating December 20, 2024, *id.* at 6, 14–17. They also argue that Lively's motion to compel communications on Signal, *id.* at 6–7, and Freedman's communications with press and social media content creators, *id.* at 18–20, is premature.

**I. Search Terms**

Turning to the first of these issues, the Court agrees that the Wayfarer Parties should produce their search terms used in document review. Although litigants '"commonly suspect that they are not getting all the documents they have requested and that an adversary is holding something back,' and while such suspicions, on their own, do not ordinarily support the entry of discovery orders against the responding party, a different analysis applies when the requesting party 'identifies specific evidence to call into question the responding party's contention that no further responsive documents exist.'" *This LLC v. HolaBelle, Inc.*, 2024 WL 4871688, at *5 (D. Conn. Nov. 22, 2024) (cleaned up) (first quoting *Margel v. E.G.L. Gem Lab Ltd.*, 2008 WL 2224288, at *3 (S.D.N.Y. May 29, 2008), then quoting *Mason Tenders Dist. Council of Greater N.Y. v. Phase Constr. Servs., Inc.*, 318 F.R.D. 28, 42–43 (S.D.N.Y. 2016)). When the party requesting discovery makes such a showing, courts have the discretion to order the responding

party to "explain specifically what efforts were undertaken to find relevant documents." *Mason Tenders*, 318 F.R.D. at 43. This includes directing responding parties "to disclose the search terms used in searching [their] databases for responsive documents." *CP Sols. PTE, Ltd. v. Gen. Elec. Co.*, 2006 WL 8446725, at *2 (D. Conn. June 12, 2006).

That remedy is necessary here, as Lively has "identifie[d] specific evidence . . . call[ing] into question" the adequacy of the Wayfarer Parties' search for responsive documents. *See HolaBelle*, 2024 WL 4871688, at *5. Third parties have produced documents in response to subpoenas from Lively that the Wayfarer Parties apparently should have disclosed but did not. For example, third parties have produced emails with Wayfarer Party representatives containing phrases such as "HR complaint" and "harassment protocols." *See* Dkt. Nos. 554-49, 554-50; *see also* Dkt. No. 554-2 at 17, 25 (RFPs 22 and 67 seeking all documents and communications "concerning any actual, alleged, or suspected harassment related to the Film" and "personnel policies and procedures . . . including but not limited to . . . policies concerning discrimination, sexual harassment, retaliation, workplace misconduct, or complaint reporting mechanisms"). Third parties have also produced text messages with the Wayfarer Parties including terms like "It Ends With Us." *See* Dkt. No. 646-7; *see also* Dkt. No. 554-2 at 13 (RFP 4 seeking all documents and communications "concerning the Film"). A reasonably diligent search would have captured these responsive messages, and the Wayfarer Parties' failure to produce these materials casts doubt on the completeness of their searches. Furthermore, the Wayfarer Parties have, without explanation, failed to disclose documents that they acknowledge are discoverable and that are presumably within their possession, custody, or control. Dkt. No. 610 at 11–12. These documents include materials annexed to and referenced in their own complaint. *Id.* at 11. That the Wayfarer Parties have yet to produce materials cited in their own legal filings provides

additional reason to believe that their other discovery obligations may have gone unfulfilled. Given these deficiencies, Lively is entitled to verify the processes by which the Wayfarer Parties have searched their databases for responsive documents.

The Wayfarer Parties respond that they should not be required to produce their search terms unless Lively is as well. Dkt. No. 610 at 14. They cite no authority for that proposition. *Id.* And their position overlooks why disclosure of search terms is appropriate here. The Court orders disclosure of collateral information such as search terms not as a matter of course, but because Lively has proffered specific evidence regarding deficiencies in the Wayfarer Parties' productions. These deficiencies give rise to the inference that additional responsive materials exist but have not yet been disclosed. The Wayfarer Parties have not attempted to offer an analogous showing regarding Lively's discovery productions, so their request for a reciprocal disclosure is unwarranted. *Cf. Scelsi v. Habberstad Motorsport Inc.*, 2021 WL 6065768, at *3 (E.D.N.Y. Dec. 22, 2021) ("Discovery is not a 'tit for tat' process.").[3]

**II. Production Postdating December 2024**

Lively also moves to compel the Wayfarer Parties to produce responsive materials that postdate December 2024. Dkt. No. 553 at 6–7. The Wayfarer Parties produced documents only through December 20, 2024, the date Lively filed her CRD Complaint. Dkt. No. 610 at 14. The Wayfarer Parties argue that a request for documents to present would be overbroad and burdensome, that the obligation is disproportionate to that on Lively—who produced documents only through December 31, 2024—and that a more reasonable cutoff would be February 18, 2025, the date of the filing of Lively's Amended Complaint in this action. *Id.* at 14–16. The Wayfarer Parties also object to Lively's request that they produce a privilege log for documents

[3] The Wayfarer Parties did not file their own motion to compel.

withheld on the basis of privilege after the filing of her original complaint. *Id.* at 17.

The Court has previously addressed whether Lively is entitled to certain discovery postdating December 20, 2024. Dkt. No. 355 at 3–4. In response to an interrogatory requesting that the Wayfarer Parties "[i]dentify all reporters and news or media outlets of any kind with whom You have communicated in any manner, concerning Ms. Lively, Mr. Reynolds, the CRD Complaint, the Actions, or the Lively/Reynolds Companies," the Wayfarer Parties agreed to provide responses only through December 21, 2024. *Id.* at 3. The Court rejected that limitation, noting that the "Wayfarer Parties' engagement with media outlets after the release of the CRD complaint is relevant to the truth or falsity of [the smear-campaign] allegations." *Id.* The Court likewise ordered nonparties Katherine Case and Breanna Koslow to produce documents regarding Lively and her claims, the film, and the "Digital Campaign" postdating December 20, 2024. *See* Dkt. No. 381 at 24. The same reasoning applies here. The Court eschews a rigid December 20, 2024, cutoff deadline given the nature of Lively's claims and the likely relevance of at least some materials postdating the filing of her CRD complaint. *See Serin v. N. Leasing Sys., Inc.*, 2010 WL 6501659, at *2 (S.D.N.Y. Apr. 16, 2010) (rejecting defendants' arguments that discovery should not be permitted to the present and citing "the nature of [plaintiffs'] claims, which allege[d] an 'open-ended pattern of racketeering activity'"); *see also Cleary v. Kaleida Health*, 2024 WL 4901952, at *11 (W.D.N.Y. Nov. 27, 2024) (noting that although certain documents created after the commencement of litigation are protected by the work-product doctrine, "this does not mean that non-privileged documents created after the commencement of litigation are not discoverable").

The pertinent questions, then, are (1) which materials postdating December 20, 2024, are discoverable and (2) through what date are they discoverable? As an initial matter, the Wayfarer

Parties observe that some of Lively's requests have no apparent connection to any alleged smear campaign and therefore cannot provide a basis for continued discovery "through the present." Dkt. No. 610 at 15. In her reply memorandum of law, however, Lively responds by narrowing the RFPs for which she seeks discovery through the present to a specific list. *See* Dkt. No. 646 at 7 n.8; Dkt. No. 648-1. This narrowing brought Lively's motion into compliance with Local Civil Rule 37.1, which provides that "[u]pon any motion or application involving discovery or disclosure requests or responses under Fed. R. Civ. P. 37, the moving party must specify and quote or set forth verbatim in the motion papers each discovery request and response to which the motion or application is addressed." L. Civ. R. 37.1. Given that Lively provided the list only after the Wayfarer Parties filed their opposition brief, the Court granted the Wayfarer Parties leave to respond to the narrowed subset of requests. *See* Dkt. No. 678.

In their supplemental letter, the Wayfarer Parties argue that because the specified RFPs are directed only to Wayfarer Studios and not to the other Wayfarer Parties, Lively has again failed to fulfill her Rule 37.1 obligations with respect to defendants other than Wayfarer Studios. Dkt. No. 686 at 1 n.1. This argument misses the mark. In attaching the list of relevant RFPs, Lively noted that "equivalent Requests exist for the remaining Wayfarer Defendants." Dkt. No. 648 ¶ 4. This statement sufficed to incorporate by reference the specified RFPs as to each of the Wayfarer Parties, and it gave sufficient notice both to the Wayfarer Parties and to the Court regarding the "discovery request[s] and response[s] to which the motion or application is addressed." L. Civ. R. 37.1. To be sure, some of the specified RFPs in the list were propounded only as to Wayfarer Studios, but that does not mean that Lively failed to fulfill her Rule 37.1 obligations. Rather, it means that the other parties have no obligation to respond to these Wayfarer Studio-specific requests. In other words, Lively seeks the specified RFPs for each of

the Wayfarer Parties to the extent those specific RFPs were actually propounded on the parties.

As for the relevance of the specified RFPs, the Wayfarer Parties contend that only certain requests—RFPs 38–41, 43–44, 49–54, and 57—potentially relate to Lively's allegations of an ongoing smear campaign. Dkt. No. 686 at 1. Moreover, the Wayfarer Parties assert that even these RFPs sweep in materials that are not directly pertinent to the alleged smear campaign because, for example, they seek documents "without regard to whether the efforts paint Lively in a negative light." *Id.* at 2. However, Lively is not limited to seeking only those documents and communications that provide direct evidence of attempts to paint her in a negative light. She is entitled to all materials relevant to her claims. "For purposes of discovery, relevance is broadly and liberally construed" as information that "bears on or might reasonably lead to information that bears on any material fact or issue in the action." *Nau v. Papoosha*, 2023 WL 122031, at *8 (D. Conn. Jan. 6, 2023) (Merriam, J.) (citation omitted). With certain exceptions detailed below, the RFPs specified in Lively's list meet this threshold. Indeed, many of the RPFs concern communications with media outlets, social-media accounts, and the "Digital Campaign" more broadly, and the Court has already held that the "Wayfarer Parties' engagement with media outlets after the release of the CRD complaint is relevant to the truth or falsity of [the smear-campaign] allegations." Dkt. No. 355 at 3.

Responding to Lively's reply memorandum of law, the Wayfarer Parties object to two sets of requests in particular. First, they object to Lively's requests for other individuals' complaints of harassment, discrimination, or retaliation stemming from the film. Dkt. No. 686 at 2. Courts regularly permit discovery of these sorts of materials on the grounds that they are relevant to issues such as notice, retaliation, workplace atmospheres, and alleged failures to investigate or remediate. *See, e.g.*, *Delancey v. Wells*, 2025 WL 1009415, at *4–5 (S.D.N.Y.

Apr. 4, 2025); *Loc. 3621, EMS Officers Union, DC-37, AFSCME, AFL-CIO v. City of New York*, 2020 WL 1166047, at *4 (S.D.N.Y. Mar. 11, 2020); *Melendez v. Greiner*, 2003 WL 22434101, at *3–5 (S.D.N.Y. Oct. 23, 2003). Here, the Court likewise finds that, if other sexual harassment, discrimination, or retaliation complaints related to the film exist, they are relevant to Lively's claims.[4]

The Wayfarer Parties suggest that courts typically permit discovery only of *prior* misconduct complaints, not those postdating a plaintiff's complaint. Dkt. No. 686 at 2. The caselaw, however, imposes no such bright line. *See Hyatt v. Rock*, 2016 WL 6820378, at *3 (N.D.N.Y. Nov. 18, 2016) (noting that "complaints of misconduct against a particular Defendant, *either before or after* the event which is the subject of a civil rights lawsuit, can be discoverable so long as the misconduct is similar to the constitutional violation alleged in the complaint or relevant to a defendant's truth or veracity" (emphasis added)); *Bolia v. Mercury Print Prods., Inc.*, 2004 WL 2526407, at *1 (W.D.N.Y. Oct. 28, 2004) (explaining that other claims of discrimination may be discoverable where, among other things, the complaints are "limited to a reasonable time *before and after* the discrimination complained of" (emphasis added and citation omitted)). Of course, at some point, materials both pre- and postdating a plaintiff's complaint

[4] The Wayfarer Parties correctly observe that in order to meet the relevance requirement, the complaints must be "limited to the same form of discrimination" alleged by Lively. *Harris v. Bronx Parent Hous. Network*, 2020 WL 763740, at *3 (S.D.N.Y. Feb. 14, 2020); *Melendez*, 2003 WL 22434101, at *3 (explaining that a plaintiff failed to establish the relevance of other grievances or complaints to "the extent [they] relate to matters of a wholly different character than the matters alleged in his Complaint"). Lively does not dispute the proposition. The Wayfarer Parties therefore need not provide complaints unrelated to sexual or gender-based harassment, discrimination, or retaliation, if any such complaints exist. The complaints must likewise be limited to those involving the named defendants—including all employees of Wayfarer itself. *See Delancey*, 2025 WL 1009415, at *4 ("[T]he Court is mindful that other people's complaints about people other than those involved in the case are not core to proving Plaintiff's claims . . . .").

might become sufficiently temporally attenuated such that their relevance diminishes and their discovery creates issues of overbreadth and disproportionality. *See Delancey*, 2025 WL 1009415, at *4 (noting in one case that complaints postdating a plaintiff's departure from a job would have "marginal bearing" on the issues). But that does not mean that a complaint made shortly before a plaintiff's complaint is necessarily more relevant than one made shortly after. And given the time limits the Court places on Lively's requests as detailed below, these materials raise no relevance, overbreadth, or disproportionality issues. *See Local 3621*, 2020 WL 1166047, at *4 ("Furthermore, with the date range limitation the Court imposes below, the burden on Defendants will necessarily be minimized.").

The second category of materials to which the Wayfarer Parties object relates to Lively's requests for changes in their policies and procedures. Dkt. No. 686 at 2. Courts often grant discovery regarding subsequent measures taken by a party which might in some way bear on its alleged wrongdoing. *See Trinidad v. Roman Catholic Diocese of Brooklyn*, 2023 WL 3984341, at *3 (E.D.N.Y. June 13, 2023) (overruling the defendant's objections and granting discovery of subsequent remedial measures notwithstanding the fact that those materials might not be admissible as evidence at trial); *see also Palmer v. Metro-North R.R. Co.*, 2025 WL 2159160, at *1 (D. Conn. July 30, 2025); *Holick v. Cellular Sales of N.Y., LLC*, 2014 WL 4771719, at *3 (N.D.N.Y. Sept. 24, 2014). As with most, if not all, discovery issues, there is no "blanket rule" regarding discovery of these measures, *see* Dkt. No. 686 at 2, but the Court finds based on the allegations and claims at issue here that the requested materials are appropriate. Indeed, the Wayfarer Parties do not object on relevance grounds. Dkt. No. 686 at 2. Instead, they assert that the relevant RFPs are not proportional to the needs of the case because they are not limited to policies and procedures regarding gender-based harassment, discrimination, or retaliation. As

above, the time limits the Court places on these requests reduce any issues of overbreadth and disproportionality. And again, as above, the solution is not to limit discovery entirely but to narrow the requests appropriately. Lively is therefore entitled to responses to RFPs 67, 80, and 82 so long as the materials are not specific to other types of discrimination.[5]

That brings the Court to the second question: Through what date are these materials discoverable? Lively seeks discovery through the present—that is, for the approximately nine months since she filed her CRD complaint. Dkt. No. 646 at 6–9. The Wayfarer Parties respond that if extended discovery is permissible, the cutoff date should be February 18, 2025, when Lively filed her Amended Complaint. Based on considerations of relevance, overbreadth, and proportionality, the Court deems the Wayfarer Parties' proposed cutoff date more appropriate.

Although, as previously explained, the materials detailed above are relevant to Lively's claims (including beyond December 20, 2024), their relevance diminishes over time with greater distance from the underlying allegations in the complaint. Moreover, the further in time the documents are from the allegations in the complaint, the more likely they are to pertain to this litigation itself. Simply put, Lively's allegations of ongoing harm justify certain extensions of the discovery window, but without more, they cannot justify perpetual discovery—especially given the potential that her allegations regarding a smear campaign overlap with advocacy related to the underlying suit. Given that the likely relevance of these materials decreases over time, the proportionality and tailoring of Lively's requests do as well. Requiring the Wayfarer Parties to produce documents for the last nine months would be not only burdensome but likely sweep in extraneous materials outside the core allegations in the suit. Each of the Wayfarer

---

[5] The Court does not order production of materials responsive to RFPs 158–59, which exclusively seek information related to reputations of the Wayfarer Parties themselves.

Parties is accordingly ordered to provide responses to the enumerated RFPs through February 18, 2025, except as otherwise limited by this Memorandum and Order.[6]

Finally, the parties dispute whether the Wayfarer Parties should be required to provide a privilege log with respect to documents postdating Lively's complaint. *Compare* Dkt. No. 553 at 7; Dkt. No. 646 at 9, *with* Dkt. No. 611 at 17. The Court orders the Wayfarer Parties to produce a categorical privilege log in accordance with Local Civil Rule 26.2(c). *See Gary Friedrich Enters., LLC v. Marvel Enters., Inc.*, 2011 WL 1642381, at *2 (S.D.N.Y. Apr. 26, 2011) (noting that defendants "need not individually identify each privileged communication created in connection with this litigation").

**III. Signal Messages**

Next, Lively demands that the Wayfarer Parties produce materials from the ephemeral messaging platform Signal. It is undisputed that the Wayfarer Parties used Signal to discuss topics relevant to this litigation. Dkt. No. 553 at 5–6. The Wayfarer Parties respond that the motion is premature, as Lively did not propound her request for Signal communications until July 16, 2025, but they also state that "[s]ubject to appropriate narrowing of the requests to address relevant subject matters, [they] intend to agree to produce Signal communications." Dkt. No. 610 at 18. Lively responds that the motion is ripe because regardless of when she propounded the specific requests for Signal messages, the messages are responsive to her previous requests for "communications" and therefore should have been turned over. Dkt. No.

---

[6] The Wayfarer Parties argue that "any order extending the cut-off must impose a mutual obligation." Dkt. No. 611 at 16. But as with their request for a reciprocal disclosure of discovery search terms, they have made no showing to justify that request. Lively has filed a motion to compel, and on the basis of that motion, the Court has determined that there is reason to believe Lively's RFPs might yield relevant documents postdating December 20, 2024. The Wayfarer Parties have not filed an analogous motion to compel, nor have they specified for which requests ongoing discovery is appropriate.

646 at 9. The Court agrees with Lively.

Local Civil Rule 26.3 establishes certain uniform definitions incorporated by reference into all discovery requests, and it defines "communication" as "the transmittal of information (in the form of facts, ideas, inquiries, or otherwise)." L. Civ. R. 26.3(c)(1). Messages between individuals, regardless of the platform on which they are sent and received, clearly qualify under Local Rule 26.3 as "communications." If there were any doubt, Lively's RFPs specifically define "Email, Messaging Applications & Direct *Communication* Platforms" to include Signal. *See* Dkt. No. 554-2 at 7 (emphasis added). The parties likewise agreed to define "Messaging *Communications*" in their ESI Protocol as including Signal. *See* Dkt. No. 208 at 5 (emphasis added). The Wayfarer Parties accordingly should have been aware that their obligation to provide, for example, "Communications concerning the solicitation or procurement of any Social Media content," included communications made on Signal. *See* Dkt. No. 554-2 at 23. The Wayfarer Parties respond that if Signal messages "were encompassed by previous requests for production, presumably Lively would not have served the requests on July 16." Dkt. No. 610 at 18. That inference is unwarranted. Lively propounded the specific requests for Signal messages after the Wayfarer Parties declined to produce those communications. The fact that, in response to the Wayfarer Parties' failure to disclose what clearly qualify as "communications," Lively propounded a more specific, supplemental request for those communications neither narrowed the scope of her original requests nor implicitly acknowledged that the original requests were inapplicable.

**IV. Production from Agents**

Finally, Lively demands that the Wayfarer Parties produce responsive communications that their agents—including Freedman and his firm Liner Freedman Taitelman & Cooley, LLP ("Liner")—made on their behalf. Dkt. No. 553 at 11–13. Lively asserts that the Court should

compel the Wayfarer Parties to ask their counsel for the client file and any written communications to content creators or journalists made on behalf of the Wayfarer Parties or within the scope of the representation. Dkt. No. 553 at 13.

The Wayfarer Parties again respond that the request is premature because on August 11, 2025, Lively asked the Wayfarer Parties to supplement their responses to include documents from Liner. Dkt. No. 610 at 10–11. As with the discussion above, the issue turns on whether Lively previously demanded the information in prior RFPs. She did. Lively's RFPs define "You" to include "anyone else acting or purporting to act on [their] behalf and anyone on whose behalf [they] are acting." *See* Dkt. No. 554-2 at 10, 67, 93, 117, 141. The Wayfarer Parties state that Lively's definition is broader than the one provided in Local Rule 26.3, and that where there is a conflict between discovery definitions, the Local Rules govern. Dkt. No. 610 at 19. Local Rule 26.3, however, defines "parties," and the RFP definition upon which Lively relies involves a different term: "You." Of course, the individuals to whom the RFPs were directed were, in this case, "parties." But that does not mean that there is any actual conflict between the relevant terms such that the Local Rules would preempt Lively's definition. Because the plain language of Lively's request covers an attorney or law firm when acting as their client's agent, Lively has already propounded RFPs seeking relevant communications that Liner and others made as agents of the Wayfarer Parties.

There is also little doubt that the Wayfarer Parties' client file—which presumably contains communications, if any, that their attorneys made on their behalf—is within the Wayfarer Parties' "possession, custody, or control." *See* Fed. R. Civ. P. 34(a)(1). "The concept of control has been construed broadly" to include documents a party "has the right, authority, or practical ability to obtain . . . from a non-party to the action." *Eletson Holdings Inc. v. Levona*

*Holdings Ltd.*, 2025 WL 1335511, at *2 (S.D.N.Y. May 7, 2025) (first quoting *Coventry Cap. US LLC v. EEA Life Settlements Inc.*, 334 F.R.D. 68, 72 (S.D.N.Y. 2020), then quoting *Smith v. Pergola 36 LLC*, 2022 WL 17832506, at *4 (S.D.N.Y. Dec. 21, 2022)). "Documents in the possession of a party's attorney may be considered to be within the control of the party." *Markus v. Rozhkov*, 615 B.R. 679, 705–06 (S.D.N.Y. 2020) (citation omitted); *see* 7 Moore's Federal Practice § 34.14[2][c] (3d ed. 2025). Indeed, in connection with this very case, Liner has already represented that "if Freedman made a written communication to a Content Creator or to a journalist to shape communications on behalf of the Wayfarer Parties or within the scope of the representation, and if the Wayfarer Parties asked for a copy of that communication, Liner would provide it to the Wayfarer Parties." *See Liner Freedman Taitelman Cooley, LLP v. Lively*, 2025 WL 2205973, at *6 (S.D.N.Y. Aug. 4, 2025). The Court relied in part on that representation in denying Lively's subpoena seeking documents directly from Liner. *Id.* The Wayfarer Parties thus have the "practical ability to obtain [this information] . . . from a non-party to the action." *Eletson*, 2025 WL 1335511, at *2. They are accordingly directed to request the client file from their counsel.[7]

**V. Conclusion**

The motion to compel is GRANTED IN PART and DENIED IN PART. The Wayfarer Parties are directed to produce discovery in accordance with this Memorandum and Order.

[7] The Wayfarer Parties cite this Court's prior decision denying Lively's request for discovery from Liner, and specifically the Court's statement that it would allow Lively to "propound renewed interrogatories or document requests to the Wayfarer Parties for the [those] documents or communications." Dkt. No. 610 at 19–20 (quoting *Liner*, 2025 WL 2205973, at *7). This language, the Wayfarer Parties suggest, indicates that the Court believed Lively had not yet requested the information she now seeks. That case, however, did not present the issue now before the Court—namely, whether Lively had in fact already issued RFPs to the Wayfarer Parties for the requested information, and whether the term "You" conflicts with Local Civil Rule 26.3's definition of "parties." The Court's prior ruling therefore intimated no views on those matters.

Except as otherwise specified, such discovery shall be produced no later than September 8, 2025.

The Clerk of Court is respectfully directed to close Dkt. No. 552.

    SO ORDERED.

Dated: August 27, 2025  
       New York, New York

                                          LEWIS J. LIMAN  
                                      United States District Judge