UNITED STATES DISTRICT COURT DISTRICT OF NEVADA

Case Name: In Re Mario Lavandeira, Jr.
Case Number: 2:25-cv-01396-RFB-DJA

# SUPPLEMENTAL BRIEFING REGARDING APPLICABILITY OF PRIVILEGES UNDER FEDERAL COMMON LAW

Movant Mario Armando Lavandeira, Jr. ("Movant"), professionally known as Perez Hilton, respectfully submits this supplemental briefing pursuant to the Court's August 29, 2025 Minute Order requiring briefing regarding whether and how privileges under federal common law apply to the information sought by Respondents' subpoena.

## I. INTRODUCTION

This case implicates one of the most important protections in American law: the qualified privilege safeguarding journalists from compelled disclosure of sources and unpublished materials. Federal courts have long recognized that such protection is *essential* to the free flow of information to the public. See Branzburg v. Hayes, 408 U.S. 665, 681 (1972); Shoen v. Shoen, 5 F.3d 1289, 1293 (9th Cir. 1993) ("Shoen I").

Rule 45 expressly provides that a subpoena must be quashed if it "requires disclosure of privileged or other protected matter, if no exception or waiver applies." Fed. R. Civ. P. 45(d)(3)(A)(iii). Movant asserts that **everything** Ms. Lively seeks through this subpoena *is* privileged. Because the subpoena strikes at the heart of protected newsgathering activity, it cannot be enforced in whole or in part.

Movant is a working journalist and media contributor who resides in Nevada.

The subpoena at issue seeks his confidential reporting materials and threatens to unmask sources whose confidentiality is paramount to the ability of journalists everywhere to inform the public. The Court should recognize the applicability of the qualified reporter's privilege under federal common law, as well as the Nevada Shield Law, and quash the subpoena in full.

## II. THE FEDERAL QUALIFIED REPORTER'S PRIVILEGE APPLIES

**A. Federal courts recognize a qualified reporter's privilege**

Although the Supreme Court in Branzburg declined to adopt an absolute First Amendment privilege, courts across the circuits, including the Ninth Circuit, have consistently recognized a qualified privilege protecting journalists from compelled disclosure absent a heightened showing. See Shoen I, 5 F.3d at 1292–94; Shoen v. Shoen, 48 F.3d 412, 415 (9th Cir. 1995) ("Shoen II"). The concerns raised in Branzburg arose in the unique context of criminal grand jury proceedings. By contrast, courts have emphasized that in civil cases — particularly where the journalist is a non-party, like Mr. Lavandeira — the need for protection is at its zenith. See Shoen II, 48 F.3d at 416 (courts must be "particularly cautious" in ordering disclosure from journalists).

This reporter's privilege applies broadly to both confidential and non-confidential materials, including unpublished notes, communications, and work product. See Shoen I, 5 F.3d at 1294–95 (quoting United States v. Cuthbertson, 630 F.2d 139, 147 (3d Cir. 1980)) ("Compelled disclosure of

reporters' resource materials can constitute a significant intrusion into the newsgathering and editorial processes.").

In addition, the reporter's privilege derives not only from federal common law but also from the First Amendment itself. The Ninth Circuit has recognized that "[t]he journalist's privilege is a recognition of the First Amendment's protection of the press." Shoen I, 5 F.3d at 1292. Compelling disclosure of a journalist's unpublished information or confidential sources therefore implicates constitutional rights, not merely evidentiary ones. This Court must approach the subpoena with heightened sensitivity to the First Amendment interests at stake, especially where, as here, Movant is a non-party journalist whose reporting addresses matters of public concern.

### B. Movant qualifies as a journalist under federal common law

Movant has worked as a journalist for over two decades, operates a widely read news website, contributes to broadcast outlets including KTNV's The Las Vegas Morning Blend, and covers matters of public interest extending beyond mere entertainment news. Courts have expressly held that bloggers and digital journalists are entitled to reporter's privilege. See Obsidian Finance Group v. Cox, 740 F.3d 1284, 1291 (9th Cir. 2014) (First Amendment protections apply equally to online journalists).

The Ninth Circuit in Shoen II said subpoenas to journalists must be subject to a heightened sensitivity because they "inevitably impinge on the newsgathering process."

Shoen II, 48 F.3d at 416 ("Because compelled disclosure would likely inhibit the exercise of editorial discretion and could otherwise impair the news gathering process, courts must be particularly cautious in ordering disclosure from journalists.")

Civil litigants have ample alternative discovery tools, and subpoenas directed at non-party reporters pose heightened risks of harassment and intimidation (as has happened here). This case, a private civil dispute where Movant has no stake in the outcome, illustrates precisely why federal courts enforce the privilege most robustly in the civil, non-party setting.

**C. The balancing test weighs strongly against disclosure**

Federal courts apply a balancing test, requiring the party seeking disclosure to show that the information is:

1. Unobtainable from alternative sources,

2. Non-cumulative and **critical** to the claim or defense, and

3. Of overriding importance compared to the journalist's First Amendment interest.

See Shoen II, 48 F.3d at 416; Gonzales v. NBC, 194 F.3d 29, 35 (2d Cir. 1999).

Respondents cannot meet this heavy burden.

- The subpoena is breathtakingly broad, covering entire categories of Movant's reporting and extending back in time to a period even before when Ms. Lively alleges that the Wayfarer Defendants began what she claims was a retaliatory smear campaign.

- The requested information is obtainable from parties *directly* involved in the litigation (e.g., Wayfarer Studios, Justin Baldoni, or other witnesses).

- Disclosure would not only endanger Movant's sources, but also chill future whistleblowers and confidential informants nationwide from

speaking to journalists.

Federal courts have consistently quashed subpoenas seeking reporters' confidential or unpublished information in civil cases. In Shoen II, for example, the Ninth Circuit quashed a subpoena seeking journalists' unpublished notes, holding that such compelled disclosure would impermissibly intrude on the newsgathering process. 48 F.3d at 418. Likewise, in Gonzales v. NBC, the Second Circuit recognized a qualified privilege for non-confidential outtakes and held the privilege can be overcome only with a showing of likely relevance and lack of reasonable alternatives; on those facts, the court affirmed an order compelling limited production. 194 F.3d at 35. These and other decisions confirm that the relief Movant seeks here—quashing a burdensome subpoena directed at a non-party journalist—is fully consistent with established precedent.

Beyond the immediate impact on Movant, compelled disclosure here would inflict a broader chilling effect on the press. Confidential sources, whistleblowers, and ordinary citizens rely on assurances that journalists can protect their identities. If this Court were to permit disclosure, the inevitable consequence would be fewer individuals willing to come forward, undermining the press's ability to inform the public on matters of legitimate concern. The First Amendment requires courts to guard against such harms when weighing disclosure requests against a journalist's privilege.

## III. NEVADA SHIELD LAW PROVIDES ADDITIONAL PERSUASIVE AUTHORITY

Nevada's own Shield Law provides strong persuasive guidance for this Court. See NRS 49.275. Nevada affords journalists **absolute protection** against compelled disclosure of sources. The Nevada Supreme Court has extended this

protection to digital journalists and bloggers. See Toll v. Wilson, 135 Nev. 430 (2019).

The statute broadly protects "any published or unpublished information" obtained by a reporter "in the course of gathering, receiving or processing information for communication to the public," including "the source of any information." NRS 49.275.

This state policy reflects a deep commitment to protecting the press — a commitment the federal courts should respect when evaluating the balance of interests under Rule 501.

Respondent Ms. Livey has also repeatedly acknowledged Movant's role as a journalist in their filings, and the SDNY court has already determined it lacks personal jurisdiction over him. Having invoked state law protections in New York and conceded Movant's journalistic status, Respondents cannot now argue that Nevada's law should be disregarded when Movant is before his home court in Nevada. Principles of consistency, justice, and parity compel recognition of Nevada's absolute protections here.

Respondent Ms. Lively's own litigation positions confirm the fairness of this approach. Ms. Lively herself has argued in the Southern District of New York that California law governs her claims, and Judge Liman has agreed by applying California law in that court.

In the spirit of justice, fairness, and equality, the same principle should apply here: because Movant resides and works in Nevada and is hauled into court in Nevada, this Court should apply Nevada law.

Nevada's legislature has made a clear and deliberate policy choice to provide journalists the **strongest possible protection**. Nevada's Shield Law, NRS

49.275, affords *absolute* protection against compelled disclosure of sources or unpublished information. The Nevada Supreme Court has confirmed this **absolute scope**, extending it to digital journalists and online publishers. See Toll v. Wilson, 135 Nev. 430 (2019).

Accordingly, just as Ms. Lively successfully invoked California law in New York, Movant respectfully submits that Nevada law should and must apply here. And when Nevada law is applied, the result is unambiguous: **the Shield Law grants absolute immunity from compelled disclosure.**

## IV. APPLICATION TO THE SUBPOENAED MATERIALS

Movant has prepared a showing for in camera review, as ordered by the Court.

However, disclosure of the actual underlying materials — particularly any identifying details of confidential sources — would irreparably breach the trust between journalist and source. Consistent with reporter's privilege, Movant is prepared to provide redacted materials that allow the Court to evaluate relevance without compelling source disclosure.

Moreover, Movant has already demonstrated in prior filings that Respondent Ms. Lively has disclosed sensitive personal information of non-parties in this litigation. That history compounds the risk of irreparable harm should confidential journalistic sources be exposed here. Even disclosure limited to the Court risks eventual dissemination beyond these proceedings. This danger further underscores the necessity of maintaining redactions and enforcing the reporter's privilege to its *full* extent.

## V. THE SUBPOENA IMPOSES AN UNDUE BURDEN AND SHOULD BE QUASHED

Even apart from privilege, Rule 45(d)(3)(A)(iv) requires quashing a subpoena that subjects a nonparty to undue burden. Compelling Movant, a Nevada resident uninvolved in the underlying dispute, to unmask sources and disclose confidential reporting would impose exactly such a burden.

The subpoena would also force Movant to expend substantial time and resources compiling journalistic materials, disrupting ongoing reporting obligations, and exposing him to risk of harassment and retaliation. These are precisely the kinds of undue burdens that Rule 45(d) was designed to prevent.

Federal courts are always protective of non-parties.

Movant is not a party to this litigation and has no stake in its outcome. Rule 45(d)(1) places an affirmative duty on parties and their counsel to avoid burdening non-parties with discovery demands. That duty is especially compelling where, as here, the non-party is a journalist whose independence and sources are at risk.

## VI. THE SUBPOENA IS REDUNDANT AND UNNECESSARY IN LIGHT OF JUDGE LIMAN'S RULING

Even if the subpoenaed materials were not privileged (and they are), the subpoena is now wholly unnecessary and duplicative. On August 27, 2025, Judge Liman in the Southern District of New York granted Ms. Lively's motion to compel against the Wayfarer defendants. See Lively v. Wayfarer Studios LLC, No. 24-cv-10049 (S.D.N.Y. Aug. 27, 2025) (ECF No. 711).

This development is *critical*. Judge Liman's ruling requires the defendants in Ms. Lively's own lawsuit to produce responsive documents and information directly. That means if the information Ms. Lively seeks from Movant exists at all, it will already be produced to her through proper party discovery.

The federal common law governing reporter's privilege makes clear that compelled disclosure from a journalist is improper unless the party first *exhausts* alternative sources. Shoen v. Shoen, 48 F.3d 412, 416 (9th Cir. 1995) ("Shoen II") (requiring showing that information is not obtainable from other sources). See also Gonzales v. NBC, 194 F.3d 29, 35 (2d Cir. 1999). Here, Ms. Lively is actively receiving the very discovery she claims to need, directly from the parties to her case.

Thus, compelling Movant's compliance would not only violate privilege, it would be entirely redundant. The subpoena would serve no legitimate purpose except to harass and burden a non-party journalist. Rule 45(d)(1) obligates parties to avoid imposing such undue burden, and Rule 45(d)(3)(A)(iv) requires quashing a subpoena that does so.

Accordingly, the Court should find that Ms. Lively's subpoena fails for the additional and independent reason that it is duplicative and unnecessary in light of Judge Liman's ruling.

## VII. PROPORTIONALITY UNDER RULE 26(b)(1) INDEPENDENTLY WARRANTS QUASHING OR SEVERELY LIMITING THE SUBPOENA

Even apart from privilege, the subpoena fails Rule 26(b)(1). Discovery must be "relevant to any party's claim or defense and proportional to the needs of the case," considering (1) the importance of the issues at stake, (2) the amount in controversy, (3) the parties' relative access to the information, (4) the parties' resources, (5) the importance of the discovery in resolving the issues, and (6) whether the burden or expense of the proposed discovery outweighs its likely benefit. Fed. R. Civ. P. 26(b)(1). Courts also give special weight to the burden on non-parties when applying proportionality. See, e.g., Moon v. SCP Pool Corp., 232 F.R.D. 633, 638 (C.D. Cal. 2005) (non-party status is a significant factor in assessing burden).

Applied here, every factor favors quashing the subpoena:

1. Relative access / alternative sources. Judge Liman has ordered the Wayfarer defendants to produce discovery, giving Respondents direct access to the very information they claim to need. Party discovery is the proper, less burdensome channel; compelling a non-party journalist is unnecessary and disproportionate.

2. Importance vs. marginal benefit. Respondents seek sweeping categories of unpublished journalistic materials. Any marginal benefit is speculative and duplicative in light of ongoing party discovery, while the corresponding harm to newsgathering and source relationships is concrete and severe.

3. Burden and expense outweigh likely benefit. Compliance would require time-intensive collection, review, redaction, and handling of sensitive materials, disrupting ongoing reporting and exposing Movant and his sources to risk. That burden far exceeds any incremental benefit to Respondents.

4. Non-party status and resources. Movant is not a party and has no stake in the outcome. Rule 26's proportionality calculus is especially protective of non-parties, and Rule 45(d)(1) imposes an affirmative duty on Respondents to avoid imposing such burdens.

5. Public-interest issues at stake. The requested discovery targets the core of protected newsgathering. Disproportionate compulsion here would chill confidential sources and undermine the public's right to receive information—outcomes Rule 26(b)(1)'s proportionality limits are designed to prevent.

Because the subpoena is not proportional to the needs of the case, it should be quashed under Rule 26(b)(1) and Rule 45(d). In the alternative, any order short of quashing must be narrowly tailored to the least intrusive means and subject to strict protective conditions.

## VIII. CONCLUSION

For all of the reasons set forth above, Movant respectfully submits that the subpoena must be quashed in full. Rule 45 requires quashing a subpoena that seeks privileged information, and all of the materials Ms. Lively seeks are covered by the reporter's privilege under federal common law and by Nevada's Shield Law, which affords absolute protection.

Nevada's Shield Law reflects this state's deep-rooted commitment to a free and independent press, a commitment that aligns with the First Amendment and should guide this Court's analysis.

In addition, compelling Movant's compliance would impose an undue burden on a non-party journalist and serve no legitimate purpose. Ms. Lively is already receiving discovery from the Wayfarer Defendants pursuant to Judge Liman's order. Any materials she claims to need will be produced through that channel, rendering this subpoena not only improper but entirely redundant. Compelling disclosure in this case would not only contravene Rule 45, but would also undermine the First Amendment values at the heart of the reporter's privilege — values that protect the public's right to receive information from a free and independent press.

If this Court were to compel Movant's compliance, the consequences would extend far beyond this case. Confidential sources across the country would hear that even a Nevada journalist, protected by state and federal law, could be forced to reveal identities under a civil subpoena. The resulting chilling effect would harm not only Movant, but also the needed role of journalists and the public's right to be informed on matters of legitimate concern.

Federal courts across the country have consistently quashed subpoenas seeking reporters' confidential information in civil cases, recognizing the profound risk such discovery poses to the free press. This case presents no basis for departure. See Shoen II, 48 F.3d at 416–18; Gonzales, 194 F.3d at 31–35.

Accordingly, the Court should sustain Movant's assertion of privilege and quash the subpoena in its entirety.

Respectfully submitted,
/s/ Mario Lavandeira
Mario Armando Lavandeira, Jr.
aka Perez Hilton
Pro Se
Las Vegas, Nevada
August 29, 2025