BOIES SCHILLER FLEXNER LLP
Richard J. Pocker (NV Bar No. 3568)
300 South Fourth Street, Suite 800
Las Vegas, NV 89101
(702) 382-7300
rpocker@bsfllp.com

BOIES SCHILLER FLEXNER LLP
Sigrid S. McCawley
401 E. Las Olas Blvd., Suite 1200
Ft. Lauderdale, FL 33301
(954) 356- 0011
smccawley@bsfllp.com

MANATT, PHELPS & PHILLIPS LLP
Esra A. Hudson
Stephanie A. Roeser
2049 Century Park East, Suite 1700
Los Angeles, California 90067
(310) 312-4000
ehudson@manatt.com
sroeser@manatt.com

Matthew F. Bruno
7 Times Square
New York, NY 10036
(212) 790-4525
mbruno@manatt.com

WILLKIE FARR & GALLAGHER LLP
Michael J. Gottlieb
Kristin E. Bender
1875 K Street NW
Washington, DC 20006
(202) 303-1000
mgottlieb@willkie.com
kbender@willkie.com

Aaron E. Nathan
Lauren K. Martin (admitted *pro hac vice*)
787 Seventh Avenue
New York, NY 10019
(212) 728-8904
anathan@willkie.com
lkmartin@willkie.com

DUNN ISAACSON RHEE LLP
Meryl C. Governski (admitted *pro hac vice*)
401 Ninth Street, NW
Washington, DC 20004
(202) 240-2900
mgovernski@dirllp.com

*Attorneys for Respondent Blake Lively*

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEVADA**

**In Re Subpoena to:**

**MARIO LAVANDEIRA JR.**
**aka PEREZ HILTON**

Case No. 2:25-CV-01396-RFB-DJA

**SUPPLEMENTAL BRIEFING IN SUPPORT OF THE OPPOSITION TO THIRD-PARTY PEREZ HILTON'S MOTION TO QUASH AND CROSS MOTION TO COMPEL**

SUPPLEMENTAL BRIEF IN SUPPORT OF THE OPPOSITION TO THIRD-PARTY PEREZ HILTON'S MOTION TO QUASH AND CROSS-MOTION TO COMPEL

## TABLE OF CONTENTS

INTRODUCTION ....................................................................................................1

SUPPLEMENTAL FACTUAL BACKGROUND ..........................................................2

LEGAL STANDARD ..............................................................................................3

ARGUMENT ..........................................................................................................4

I. THE FEDERAL COMMON LAW QUALIFIED REPORTER PRIVILEGE, RATHER THAN STATE PRIVILEGE LAW, APPLIES TO THE SUBPOENA BECAUSE IT SEEKS EVIDENCE DIRECTLY RELEVANT TO FEDERAL CLAIMS ..........................................................................................4

II. THE FEDERAL COMMON LAW QUALIFIED REPORTER PRIVILEGE DOES NOT PROTECT THE INFORMATION IN MR. HILTON'S POSSESSION. ..........................................................................................7

A. The Federal Common Law Qualified Reporter Privilege Does Not Attach To The Information Sought From Mr. Hilton. ..........................................7

B. Ms. Lively's Need For The Subpoenaed Evidence Overcomes The Federal Common Law Qualified Reporter Privilege. ..........................................8

1. The Subpoena seeks highly material and relevant information ..........8

2. Mr. Hilton's evidence is critical to Ms. Lively's claims ..........9

3. Ms. Lively has a strong need for disclosure. ..........9

## TABLE OF AUTHORITIES

**Cases** **Page(s)**

*Agster v. Maricopa Cnty.*,
422 F.3d 836 (9th Cir. 2005) ....................6

*Arbaugh v. Y & H Corp.*,
546 U.S. 500 (2006)....................5, 7

*Baker v. F&F Inv.*,
470 F.2d 778 (2d Cir. 1972)....................5

*Branzburg v. Hayes*,
408 U.S. 665 (1972)....................3

*Chevron Corp. v. Berlinger*,
629 F.3d 297 (2d Cir. 2011)....................8

*Condit v. Nat'l Enquirer*,
289 F. Supp. 2d 1175 (E.D. Cal. 2003)....................5

*Farr v. Pitchess*,
522 F.2d 464 (9th Cir. 1975), *cert. denied*, 427 U.S. 912 (1976)....................3

*Fort Bend Cnty., Texas v. Davis*,
587 U.S. 541 (2019)....................5

*Henry A. v. Willden*,
271 F.R.D. 184 (D. Nev. 2010)....................4, 6

*Lore v. City of Syracuse*,
670 F.3d 127 (2d Cir. 2012)....................2

*Manley v. Zimmer*,
No. 3:11-CV-00636-RCJ, 2013 WL 5592328 (D. Nev. Oct. 9, 2013)....................4

*McGraw–Hill, Inc., v. Arizona (In re Petroleum Products Antitrust Litig.*,
680 F.2d 5 (2d Cir. 1982)....................5

*In re N. Plaza, LLC*,
395 B.R. 113 (S.D. Cal. 2008)....................5

*Planet Aid, Inc. v. Reveal, Ctr. for Investigative Reporting*,
No. 17-CV-03695-MMC, 2020 WL 1701960 (N.D. Cal. Apr. 8, 2020)....................8

*Playstudios, Inc. v. Centerboard Advisors, Inc.*,
No. 2:18-CV-1423-JCM-NJK, 2019 WL 6493926 (D. Nev. Dec. 3, 2019)....................11

*Religious Tech. Ctr. v. Wollersheim*,
971 F.2d 364 (9th Cir. 1992)....................4

ii

SUPPLEMENTAL BRIEF IN SUPPORT OF OPPOSITION TO THIRD-PARTY PEREZ HILTON'S MOTION TO QUASH AND CROSS MOTION TO COMPEL

*Santos v. Baca*,
No. 2:11-CV-01251-KJD-NJK, 2015 WL 7307054 (D. Nev. Nov. 17, 2015)....4

*Shoen v. Shoen* (“*Shoen II*”),
48 F.3d 412 (9th Cir. 1995)....3, 5

*Shoen v. Shoen*,
5 F.3d 1289 (“*Shoen I*”)....7, 8, 11

*Stegall v. Citadel Broad. Co.*,
350 F.3d 1061 (9th Cir. 2003)....2

*In re Stratosphere Corp. Sec. Litig.*,
183 F.R.D. 684 (D. Nev. 1999)....4, 6, 11

*United States v. Zolin*,
491 U.S. 554 (1989)....4

*von Bulow v. von Bulow*,
811 F.2d 136 (2d Cir. 1987)....4, 5, 7

*In re W. States Wholesale Nat. Gas Antitrust Litig.*,
No. 2:03-CV-01431-PMP-PAL, 2009 WL 10692733 (D. Nev. Aug. 14, 2009)....3, 5, 11

*Williams v. Univ. Med. Ctr. of S. Nevada*,
760 F. Supp. 2d 1026 (D. Nev. 2010)....6

**Statutes**

28 U.S.C. § 1331....5

28 U.S.C. § 1367....5

42 U.S.C. § 2000e-3....2

42 U.S.C. § 2000e-5(f)(3)....5

Civil Rights Act of 1964 Title VII....1, 2, 5

**Other Authorities**

Fed. R. Evid. 401....10

Fed. R. of Evid. 501....1, 4, 5, 6

iii

SUPPLEMENTAL BRIEF IN SUPPORT OF OPPOSITION TO THIRD-PARTY PEREZ HILTON’S MOTION TO QUASH AND CROSS MOTION TO COMPEL

Respondent and Cross-Movant Blake Lively respectfully files this supplemental brief in support of her Opposition to Third-Party Perez Hilton's Motion to Quash and Cross Motion to Compel (Dkt. 12 ("Opposition" or "Opp."))[1] pursuant to the Court's August 29, 2025 order directing the Parties "provide supplemental briefing regarding whether, and how, privileges under the federal common law, including but not limited to the qualified reporter privilege, apply to this information" (Dkt. 30).

## INTRODUCTION

The Wayfarer Defendants boasted in private text messages about launching a scheme to "bury" Ms. Lively's reputation by creating an "untraceable" smear campaign to retaliate against her for having privately asserted claims of sexual harassment on the set of the Film. One of the defendants who helped effectuate that retaliatory campaign has admitted in sworn interrogatories that Mr. Hilton is among the content creators they used to perpetuate the retaliation. Ms. Lively served the Subpoena on Mr. Hilton to obtain information about how they did so in connection with various causes of action relating to the retaliation, including two federal claims pursuant to Title VII of the Civil Rights Act of 1964. Federal Rule of Evidence 501 ("Rule 501") dictates that the Court should apply federal common law to Mr. Hilton's claims of privilege because all of the information Ms. Lively seeks in her Subpoena is directly relevant to her federal civil rights retaliation claim, notwithstanding the presence of additional state claims. The Court in the Underlying Litigation previously has applied Rule 501, and, in turn, federal common law to a question of privilege in connection with that action. *Supra* at Argument § I. Mr. Hilton has failed to meet his heavy burden to demonstrate that he is entitled to avail himself of the federal common law reporter privilege because he did not procure the information while acting in the capacity of an independent, investigative reporter. *Supra* at Argument § II(A). But, even if he could, any such privilege is qualified and should not apply because the information Ms. Lively seeks is relevant, material, and critical to her claims and she has been unable to obtain it despite exhaustive efforts. *Supra* at Argument § II(B).

[1] Ms. Lively incorporates by reference the Opposition in its entirety, adopts its defined terms, and adds herein only supplemental points.

SUPPLEMENTAL BRIEF IN SUPPORT OF OPPOSITION TO THIRD PARTY PEREZ HILTON'S MOTION TO QUASH AND CROSS MOTION TO COMPEL

## SUPPLEMENTAL FACTUAL BACKGROUND

In the Underlying Litigation, Ms. Lively asserts fifteen causes of action, including, as directly relevant to the motions before this Court, claims pursuant to: (1) Title VII retaliation in violation of federal law (42 U.S.C. § 2000e-3)(Underlying Litigation, ECF No. 521 (Second Amended Complaint "SAC") ¶¶ 367–74); (2) retaliation in violation of California employment law (*id.* ¶¶ 386–93); and (3) retaliation in violation of the California Labor Code (*id.* ¶¶ 394–400). Part of the basis for her federal retaliation claim is that Mr. Baldoni, Mr. Heath, Mr. Sarowitz, Wayfarer, and It Ends With Us Movie LLC violated 42 U.S.C. § 2000e-3 by subjecting Ms. Lively "to adverse employment action, including but not limited to by launching a coordinated campaign to cast Ms. Lively in a false light during the publicity and promotion of the Film and thereafter" as a result of Ms. Lively complaining about the sexual harassment she incurred while on the Film's set. SAC ¶ 372 ("Federal Retaliation Claim").[2]

The SAC alleges that the Wayfarer Defendants perpetuated the retaliatory scheme in various ways, including by seeding "social media content with content creators" that disparages Ms. Lively, including discrediting her credibility and labeling her a "bully" and liar. SAC ¶¶ 26, 28–31, 33; *see id.* ¶ 330; *see* Underlying Litigation, ECF No. 426 at 7–11 (Judge Liman describing the social-media campaign allegations). The hundreds of videos and headlines that Mr. Hilton has published on his own Platforms about Ms. Lively perpetuate the same narratives, including by calling her a "bully," labeling her "lying Lively," and declaring that her claim about a "non-existent smear campaign" has fallen apart. Opp. at 11–13. Defendant TAG admitted in sworn interrogatory responses that Mr. Hilton is one of the content creators who seeded, generated, created, or influenced social media content or provided "related digital or social media services directly or

[2] In order to prove this federal claim, Ms. Lively must demonstrate that: (1) she engaged in a legally "protected activity" by opposing her employer's action, i.e., complaining about the sexual harassment; (2) she suffered an adverse employment outcome; and (3) there was a causal relationship between the her complaints and the adverse action that was motivated by the protected activity. *Stegall v. Citadel Broad. Co.*, 350 F.3d 1061, 1065–66 (9th Cir. 2003) (elements of claim); *Lore v. City of Syracuse*, 670 F.3d 127, 157 (2d Cir. 2012) (same).

indirectly at the request of, or on behalf of, any Wayfarer Party or their agents or affiliates." *Id*. at 13–14; Underlying Litigation, ECF Nos. 451-1 (Ex. [A]), 355 (Ex. [B]).[3]

**LEGAL STANDARD**

The United States Supreme Court first recognized the existence of, and simultaneously limited, a federal common-law "newsman's privilege" in 1972 in *Branzburg v. Hayes*, in the context of a grand jury subpoena. 408 U.S. 665 (1972). In accordance with the *Branzburg* concurrence, the Ninth Circuit recognized a qualified privilege for newspaper reporters involved in civil litigation, which requires "the claimed First Amendment privilege and the opposing need for disclosure be judicially weighed in light of the surrounding facts and a balance struck to determine where lies the paramount interest." *Farr v. Pitchess*, 522 F.2d 464, 468–69 (9th Cir. 1975), *cert. denied*, 427 U.S. 912 (1976). Given its qualified nature, the federal common law reporter privilege does not apply when the information sought by a civil subpoena is: "(1) highly material and relevant; (2) necessary or critical to the maintenance of the claim; and (3) not obtainable from other sources." *Shoen v. Shoen*, 48 F.3d 412, 416 (9th Cir. 1995) ("*Shoen II*") (quoting *In re Petroleum Products Antitrust Litig.*, 680 F.2d 5, 7 (2d Cir. 1982))) (privilege hereinafter referred to as "Federal Common Law Qualified Reporter Privilege"). Determining whether and how to apply the Federal Common Law Qualified Reporter Privilege requires district courts to evaluate a party seeking disclosure's "showing" under the circumstances. *In re W. States Wholesale Nat. Gas Antitrust Litig.*, No. 2:03-CV-01431-PMP-PAL, 2009 WL 10692733, at *4 (D. Nev. Aug. 14, 2009).

[3] All exhibits are attached to the Declaration of Richard Pocker.

## ARGUMENT

### I. THE FEDERAL COMMON LAW QUALIFIED REPORTER PRIVILEGE, RATHER THAN STATE PRIVILEGE LAW, APPLIES TO THE SUBPOENA BECAUSE IT SEEKS EVIDENCE DIRECTLY RELEVANT TO FEDERAL CLAIM OF RETALIATION.

The Federal Common Law Qualified Reporter Privilege applies to the Subpoena because it seeks information directly relevant to Ms. Lively's federal retaliation claim, specifically that the Wayfarer Defendants (directly or indirectly) relied on content creators, like Mr. Hilton, to carry out their retaliatory scheme. *See* SAC ¶¶ 38, 230, 372. Rule 501 establishes that "***[t]he common law—as interpreted by United States courts in the light of reason and experience—governs a claim of privilege***." Fed. R. Evid. 501 (emphasis added); *United States v. Zolin*, 491 U.S. 554, 562 (1989) ("Questions of privilege that arise in the course of the adjudication of federal rights are 'governed by the principles of the common law as they may be interpreted by the courts of the United States in the light of reason and experience'" (quoting Fed. R. Evid. 501 advisory committee's note)). Where, as in the case here, a complaint asserts claims under both federal and state law, "courts consistently have held that the asserted privileges are governed by the principles of federal law." *von Bulow v. von Bulow*, 811 F.2d 136, 141 (2d Cir. 1987)) (citing cases); *accord Religious Tech. Ctr. v. Wollersheim*, 971 F.2d 364, 367 (9th Cir. 1992) (rejecting application of state law litigation privilege where case involved federal claims under Copyright Act); *Manley v. Zimmer*, No. 3:11-CV-00636-RCJ, 2013 WL 5592328, at *6 (D. Nev. Oct. 9, 2013) ("In a federal question case, such as this one brought pursuant to 42 U.S.C. § 1983, privilege is determined by federal common law."); *Santos v. Baca*, No. 2:11-CV-01251-KJD-NJK, 2015 WL 7307054, at *1 (D. Nev. Nov. 17, 2015) (explaining that "federal law controls questions of privilege in federal question cases" even where most federal privileges "have been developed at common law" unlike their stronger, codified state counterparts) (citing *NLRB v. N. Bay Plumbing, Inc.*, 102 F.3d 1005, 1009 (9th Cir. 1996)); *Henry A. v. Willden*, 271 F.R.D. 184, 187 (D. Nev. 2010) ("In the Ninth Circuit, it is well settled that 'in federal question cases with pendant state law claims, the law of privilege is governed by the principles of the common law as they may be interpreted by the courts of the United States in light of reason and experience.'" (citing cases)); *In re Stratosphere Corp.*

*Sec. Litig.,* 183 F.R.D. 684, 686 (D. Nev. 1999) (explaining that pursuant to 501 "this Court is not bound to follow Nevada law in determining whether a reporter should be compelled to disclose his or her sources" and applying federal privilege law); *In re N. Plaza, LLC*, 395 B.R. 113, 122 (S.D. Cal. 2008).[4] In *von Bulow*, the Second Circuit considered whether to apply federal or state law to the movant's assertion of a journalist privilege by a third-party witness and held that the Federal Common Law Qualified Reporter Privilege applied notwithstanding the presence of pendent state claims because it qualified as "a federal question case by virtue of the RICO claim." *von Bulow*, 811 F.2d at 141.[5]

Judge Liman in the Underlying Litigation already has engaged in a Rule 501 analysis analogous to the one before this Court: whether a third-party California resident (namely the law firm representing the majority of the Wayfarer Defendants) were entitled to rely on California state law versus federal common law. Ex. C. The Court relied on the reasoning of *von Bulow*, explaining:

> Under Federal Rule of Evidence 501, federal common law governs the attorney-client privilege when federal law supplies the rule of decision, and state law governs the attorney-client privilege when state law supplies the rule of decision. *See* Fed. R. Evid. 501. When evidence is relevant to both federal and state claims 'courts consistently have held that the asserted privileges are governed by the principles of federal law.' *von Bulow v. von Bulow*, 811 F.2d 136, 141 (2d Cir. 1987). Because evidence regarding Freedman's statements is relevant to Lively's retaliation claims under federal and state law as well as her defamation claim under state law, the federal law of privilege applies. *See Lively*, Dkt. No. 84 ¶¶ 295–312 (describing Freedman's statements as both defamatory and a continuation of the retaliation campaign).

[4] Courts in the Ninth Circuit have consistently relied upon the test articulated by the Second Circuit in determining whether a party seeking disclosure may overcome the Federal Common Law Qualified Reporter Privilege. *In re W. States Wholesale Nat. Gas Antitrust Litig.*, No. 2:03-CV-01431-PMP-PAL, 2009 WL 10692733, at *14 (D. Nev. Aug. 14, 2009) (adopting the privilege first acknowledged in *Baker v. F&F Inv.*, 470 F.2d 778, 783–85 (2d Cir. 1972), and applying the test as articulated in *McGraw–Hill, Inc., v. Arizona (In re: Petroleum Prods. Antitrust Litig.*, 680 F.2d 5, 7 (2d Cir. 1982)); *see also, e.g.*, *Condit v. Nat'l Enquirer*, 289 F. Supp. 2d 1175, 1177 (E.D. Cal. 2003) (looking to the Second Circuit factors as relied upon in *Shoen II*).

[5] Ms. Lively's assertion of Title VII claims confers federal-question jurisdiction under both the jurisdiction provision in 42 U.S.C. § 2000e-5(f)(3) and 28 U.S.C. § 1331, *see Fort Bend Cnty., Texas v. Davis*, 587 U.S. 541, 551 (2019), as well as supplemental jurisdiction over all state-law claims related to the federal claims under, 28 U.S.C. § 1367, *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 506 (2006); *see* SAC ¶¶ 67–69 (jurisdictional allegations).

Ex. [C] at 15 n.11 (emphasis added). This Court should apply the same reasoning to hold that Rule 501 establishes that the Federal Common Law Qualified Reporter Privilege applies because the evidence that the Subpoena seeks is relevant to both her federal and state retaliation claims.

While Rule 501 contemplates the application of federal common law, a "number of federal courts have recognized that Rule 501 allows recognition and respect for state evidentiary codes and privileges which express important state interests and policies" and that courts "should attempt to determine the state interests involved and the importance of those interests in making privilege determinations in federal cases." *See Willden*, 271 F.R.D. at 189; *accord In re Stratosphere Corp. Sec. Litig.,* 183 F.R.D. at 686 (federal court "should not ignore Nevada's public policy"). "However, federal courts should recognize state privileges only 'where this can be accomplished at no substantial cost to federal substantive and procedural policy.'" *Willden*, 271 F.R.D. at 189 (citation omitted). In *Willden*, the plaintiffs asserted a federal constitutional claim under Section 1983, as well as a state constitutional claim under Nevada's substantive due process provision. *Id.* at 187. In that case, the federal district court had to decide between Nevada state law, which afforded an absolute state privilege the production of private information relating to the foster care system, or the federal common law, which did not offer absolute protection. *See id.* The Court complied with Rule 501 and applied federal common law. *Id.* at 190. In doing so, it relied in part on guidance from the United States Supreme Court disfavoring testimony privileges "because they deprive litigants and the public of 'everyman's evidence'" and being "'especially reluctant to recognize a privilege in an area where it appears that Congress has considered the relevant competing concerns but has not provided the privilege itself.'" *Id*. (citation omitted) (analogizing that "the Supreme Court considered and flatly rejected the creation of a reporter's privilege to refuse to disclose the identity of sources in testimony before a grand jury); *see also Williams v. Univ. Med. Ctr. of S. Nevada*, 760 F. Supp. 2d 1026, 1032 (D. Nev. 2010) (same); *accord Agster v. Maricopa Cnty.*, 422 F.3d 836, 839 (9th Cir. 2005) (declining to create a federal common law privilege based on state law where Congress did not codify such a privilege and finding that where "there are federal question claims and pendent state law claims present, the federal law of privilege

applies”). The *Willden* court’s reasoning is persuasive here and supports limiting any application of the Nevada Journalist Privilege because Congress has declined to codify any federal reporter’s privilege.

## II. THE FEDERAL COMMON LAW QUALIFIED REPORTER PRIVILEGE DOES NOT PROTECT THE INFORMATION IN MR. HILTON’S POSSESSION.

### A. The Federal Common Law Qualified Reporter Privilege Does Not Attach To The Information Sought From Mr. Hilton.

Mr. Hilton cannot make a threshold showing that he is entitled to avail himself of the Federal Common Law Qualified Reporter Privilege because he did not procure the information that the Subpoena seeks while performing the functions of a “conventional” and “independent” “investigative” reporter. *See Shoen v. Shoen*, 5 F.3d 1289, 1293 (9th Cir.1993) (“*Shoen I*”) (holding that the Federal Common Law Qualified Reporter Privilege is “***designed to protect investigative reporting***” and finding “the Second Circuit’s reasoning in von Bulow persuasive”);[6] *von Bulow*, 811 F.2d at 144 (“***[P]aramount public interest in the maintenance of a vigorous, aggressive and independent press***.” (emphasis added)). As Ms. Lively explained in her Opposition brief, Mr. Hilton did not gather any of the information she seeks in the capacity of an independent, conventional, or investigative journalist. Opp. at 11–13, 22–25. The Wayfarer Defendants in the Underlying Litigation have admitted in sworn interrogatories that Mr. Hilton seeded, generated, created or influenced social media or provided related digital or social media services ***directly or indirectly at the request of, or on behalf of, any wayfarer party or their agents or affiliates***.” Ex. [A] at 11–12 (emphasis added). “An undertaking to publish matter in order to promote the interests of another, regardless of justification, does not serve the same public interest” and individuals “who do not retain independence as to what they will publish but are ***subservient to the objectives***

[6] In *Shoen I*, the Ninth Circuit extended the Federal Common Law Qualified Reporter Privilege to apply to investigative book authors, remarking that they, “like more conventional reporters, have historically played a vital role in bringing to light ‘newsworthy” facts on topical and controversial matters of great public importance” such as Upton Sinclair and Bob Woodward. *Id.* Mr. Hilton repeatedly cites *Shoen I* but fails to explain why its reasoning applies to him or his type of content creation.

***of others who have a stake in what will be published have either a weaker privilege or none at all***." *Chevron Corp. v. Berlinger*, 629 F.3d 297, 307–08 (2d Cir. 2011) (emphasis added); *see* Opp. at 24.

It would defy the animating principle behind the Federal Common Law Qualified Reporter Privilege to bar Ms. Lively from inquiring into content that Mr. Hilton generated based not on newsworthiness or the standards of professional independent journalism, but instead at the behest of private individuals who Ms. Lively has alleged were perpetuating a retaliatory campaign against her. It is not enough to assert that one is a "journalist" in court filings when one does not engage in the vital activities that the law deems essential to being eligible for the application of the shield.[7] Here, the information Ms. Lively seeks from Mr. Hilton is entirely aimed at his provision of services to and on behalf of the Wayfarer Defendants, ***which they disclosed in discovery***, not about serving the "vital role" of informing the public about "matters of great public importance." *Shoen I*, 5 F.3d at 1293; *see Planet Aid, Inc. v. Reveal, Ctr. for Investigative Reporting*, No. 17-CV-03695-MMC, 2020 WL 1701960, at *3 (N.D. Cal. Apr. 8, 2020) (rejecting a journalist's assertion of the privilege where the journalist encouraged "the public to stop supporting a subject of [the journalist's] investigation" because such behavior "goes beyond reporting").

**B. Ms. Lively's Need For The Subpoenaed Evidence Overcomes The Federal Common Law Qualified Reporter Privilege.**

If Mr. Hilton is entitled to assert the Federal Common Law Qualified Reporter Privilege, it must yield because Ms. Lively's need for the information outweighs Mr. Hilton's First Amendment interest under the specific facts in this case based on the three-prong test.

1. The Subpoena seeks highly material and relevant information.

As Ms. Lively previously explained to the Court, the Subpoena seeks information directly relevant to her retaliation and defamation claims, including by discovering how the Wayfarer Defendants, or individuals acting on their behalf, perpetrated the smear campaign against Ms.

[7] Mr. Hilton's claims that he adheres "to journalist standards," Mot. at 2, is belied by the content of his own Platforms, which reflect that he does not view himself as a journalist nor subscribe to any of the basic tenants of journalism. *See* Opp. at 23-24.

Lively, such as by entering into agreements with, paying, or otherwise enlisting the assistance of content creators like Mr. Hilton. Opp. at 20 (citing cases about "liberal" relevance standard). Mr. Hilton does not claim otherwise. *See, generally,* Dkt. 31. It is undisputed that Mr. Hilton was among the content providers who seeded, generated, created, or influence social media content or provided "related digital or social media services directly or indirectly at the request of, or on behalf of, any Wayfarer Party or their agents or affiliates.'" Ex. [A] at 11–12; *see* Ex.[B] at 4. Judge Liman in the Underlying Litigation already has determined and reiterated that the Wayfarer Defendants' communications with content providers is relevant, explaining that: "many of the [Requests for Production] concern communications with media outlets, social-media accounts, and the 'Digital Campaign' more broadly, and the Court has already held that the "Wayfarer Parties' engagement with media outlets after the release of the CRD complaint is relevant to the truth or falsity of [the smear-campaign] allegations." Dkt. 21-1 at 2 (citing Ex. [B] at 3).

2. <u>Mr. Hilton's evidence is critical to Ms. Lively's claims.</u>

The second prong of the test also favors disclosure because Ms. Lively is entitled to redress injuries caused by the retaliatory conduct of the Wayfarer Defendants. The information in Mr. Hilton's possession is critical to Ms. Lively's due and proper preparation for trial, and the exclusion of such evidence would deprive Ms. Lively of necessary information to establish the "untraceable" and unlawful campaign of retaliation the Wayfarer Defendants have waged against Ms. Lively through their host of (even unwitting) content creators.

3. <u>Ms. Lively has a strong need for disclosure</u>.

As a threshold point, not all of the materials in Mr. Hilton possession necessarily also are in the possession, custody, or control of anyone else. For example, Mr. Hilton may possess notes or transcriptions of oral communications or agreements with the Wayfarer Parties or their agents, or evidence of payments, gifts, or favors, all of which would be uniquely in his control. *See, generally*, Subpoena (filed at Dkt. 12-3). Additionally, Mr. Hilton may have in his possession materials like talking points and narratives that he did not receive via a direct communication—as discovery has unfolded, it has become clear that the Wayfarer Defendants or their counsel may

have collaborated with content creators via shareable files. And, even if there may be such materials in another individuals' possession, the very fact that Mr. Hilton has such materials in his possession too is independently probative of Ms. Lively's claim that the materials were disseminated to content creators like Mr. Hilton. *See* Underlying Litigation, ECF No. 711 (Judge Liman explaining that "Lively is not limited to seeking only those documents and communications that provide direct evidence of attempts to paint her in a negative light. She is entitled to all materials relevant to her claims" including information that "bears on or might reasonably lead to information that bears on any material fact or issue in the action" (citations omitted)); *see also* Fed. R. Evid. 401 (defining probative evidence as that which "has any tendency to make a fact more or less probable than it would be without the evidence").

But even as to Mr. Hilton's communications directly or indirectly with the Wayfarer Defendants, Ms. Lively has satisfied the third prong. For months, Ms. Lively has been pursuing communications with content providers like Mr. Hilton—that neither Mr. Hilton nor the Wayfarer Parties deny exist. Opp. at 8; Dkt. 31 at 7 (Mr. Hilton referencing "actual underlying materials"). After the Wayfarer Defendants refused to produce such materials, Ms. Lively filed an omnibus motion to compel in the Underling Litigation seeking *inter alia* all of their communications with content providers whether sent by the parties themselves or their agents. Judge Liman in granted Ms. Lively's motion to compel in virtually every respect, including by ordering the Wayfarer Defendants to produce their attorneys' and agents' communications with content creators. *See* Dkt. 25-1 at 14–15. But to date—***with document discovery already closed***—Ms. Lively still has not received any of the responsive communications. Opp. at 8.[8] Ms. Lively has met the third prong because she has demonstrated that she has "sought other means to obtain the materials and that

[8] Many of the Wayfarer Defendants have admitted to communicating about topics relevant to the Underlying Litigation using the ephemeral messaging platform Signal. Underlying Litigation, ECF No. 555 at 10–11. But they have not produced any such communications, and Judge Liman has ordered them to do so. One of the Wayfarer Defendants, Defendant Wallace, has stated that he no longer possesses responsive Signal communications because he enabled the application's auto-deletion feature. *Id.*, ECF No. 727 at 5–6. It currently is unknown whether the Wayfarer Defendants likewise have not produced their Signal communications because they have relied on the auto-deletion features, in which case any such communications with Mr. Hilton would not be available from them.

[she does] not already possess the information." *Playstudios, Inc. v. Centerboard Advisors, Inc.*, No. 2:18-CV-1423-JCM-NJK, 2019 WL 6493926 (D. Nev. Dec. 3, 2019); *Shoen I*, 5 F.3d at 1297 (finding "requested material is practically unavailable"); *In re W. States Wholesale Nat. Gas Antitrust Litig.*, No. 2:03-cv-01431-PMP-PAL, 2009 WL 10692733, at *4 (D. Nev. Aug. 14, 2009) (explaining this factor refers to "available" sources and "does not require a litigant to engage in onerous, wide-ranging discovery, or discovery from every conceivable source; *contra In re Stratosphere Corp. Sec. Litig.*, 183 F.R.D. at 686 (no showing of attempting to procure information elsewhere).

Practically speaking, because document discovery is closed, Ms. Lively will be without recourse if the Court permits Mr. Hilton to shield which pieces among the avalanche of derogatory content he has posted to his Platforms were created "at the request of, or on behalf of" the Wayfarer Defendants. Such a finding will reward the Wayfarer Parties for withholding evidence in their possession until the close of document discovery and creating a circular shell game designed to keep their retaliation scheme, in their words, "untraceable."

Dated: September 2, 2025

Respectfully submitted,

/s/ *Richard J. Pocker*____

WILLKIE FARR & GALLAGHER LLP
Michael J. Gottlieb
Kristin E. Bender
1875 K Street NW
Washington, DC 20006
(202) 303-1000
mgottlieb@willkie.com
kbender@willkie.com

Aaron E. Nathan
Lauren K. Martin
787 Seventh Avenue
New York, NY 10019
(212) 728-8904
anathan@willkie.com
lkmartin@willkie.com

DUNN ISAACSON RHEE LLP
Meryl C. Governski
401 Ninth Street, NW
Washington, DC 20004
(202) 240-2900
mgovernski@dirllp.com

BOIES SCHILLER FLEXNER LLP
Richard J. Pocker (NV Bar No. 3568)
300 South Fourth Street, Suite 800
Las Vegas, NV 89101
(702) 382-7300
rpocker@bsfllp.com

BOIES SCHILLER FLEXNER LLP
Sigrid S. McCawley
401 E. Las Olas Blvd., Suite 1200
Ft. Lauderdale, FL 33301
(954) 356- 0011
smccawley@bsfllp.com

MANATT, PHELPS & PHILLIPS LLP
Esra A. Hudson
Stephanie A. Roeser
Sarah Moses
2049 Century Park East, Suite 1700
Los Angeles, California 90067
(310) 312-4000
ehudson@manatt.com
sroeser@manatt.com
smoses@manatt.com

Matthew F. Bruno
7 Times Square
New York, NY 10036
(212) 790-4525
mbruno@manatt.com

12

SUPPLEMENTAL BRIEF IN SUPPORT OF OPPOSITION TO THIRD-PARTY PEREZ HILTON'S MOTION TO QUASH AND CROSS MOTION TO COMPEL

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that the foregoing Opposition to Third-Party Perez Hilton's Motion to Quash and Cross Motion to Compel was served on September 2, 2025 via the Court's CM/ECF electronic filing system addressed to all parties on the e-service list and mailed to Mr. Hilton's mailing address of record.

/s/ *Richard J. Pocker*
Richard J. Pocker