# EXHIBIT C

**Order on Motion to Quash Subpoena
by Liner Freedman (August 4, 2025)**

***Liner Freedman v. Lively*,
1:25-mc-00289-LJL (S.D.N.Y), ECF No. 35**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------X
                           :

LINER FREEDMAN TAITELMAN COOLEY, LLP    :

                Movant,        :

                           :

       -v-                :

                           :

BLAKE LIVELY,              :

                           :

                Respondent.    :

                           :

------------------------------------------------------------------X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: _08/04/2025__

25-mc-289 (LJL)

OPINION AND ORDER

LEWIS J. LIMAN, United States District Judge:

      Movant Liner Freedman Taitelman & Cooley, LLP ("Movant" or "Liner") moves to quash the subpoena (the "Subpoena") issued upon it by Respondent Blake Lively ("Respondent" or "Lively"). Dkt. No. 1. The motion was filed on June 13, 2025, in the United States District Court for the Central District of California.[1] *Id.* On June 27, 2025, Respondent filed a Supplemental Memorandum of Law in Opposition to the Motion to Quash, and Movant filed a Supplemental Memorandum of Law in Support of the Motion to Quash. Dkt. Nos. 7, 15. On July 7, 2025, the United States District Court for the Central District of California transferred the motion to this Court. Dkt. No. 20.[2] The Court heard oral argument on the motion on July 30, 2025.

      For the following reasons, the motion to quash is granted in part and denied in part.

---

[1] The motion was filed as a joint stipulation in accordance with Local Rules 37 and 45 of the Central District of California. Dkt. No. 1-1.

[2] On July 24, 2025, the Court ordered the parties to show cause why the motion should not be decided based on the joint stipulation submitted in the Central District of California. Dkt. No. 24. The parties agreed that the Court could properly decide the motion based on the joint stipulation and accompanying exhibits and memoranda submitted to the Central District of California. Dkt. Nos. 25, 27. Accordingly, the Court did not order any further briefing.

# BACKGROUND

The Subpoena seeks documents for use in *Lively v. Wayfarer Studios LLC et al.*, 24-cv-10049, a case pending before this Court.  The Subpoena was issued by this Court.

In the pending case, Lively alleges that she was the victim of sexual harassment by Defendants Justin Baldoni and Jamey Heath while filming the motion picture "It Ends With Us" and that her employers Wayfarer Studios LLC ("Wayfarer") and It Ends With Us Movie LLC failed to prevent or remedy this harassment.  Dkt. No. 84 ¶¶ 377–378, 401–407.[3]  She also alleges that she was the victim of retaliation by the Wayfarer Parties[4] as a result of her claims of sexual harassment.  *Id.* ¶¶ 386–400, 408–415.  In particular, she alleges that on July 31, 2024, Wayfarer and Baldoni retained a crisis communications specialist and her company to conduct what the specialist characterized as an "untraceable" social manipulation campaign.  *Id.* ¶¶ 193–197, 214.  The campaign involved the retention of a company that "specializes in executing confidential and 'untraceable' campaigns across various social media platforms," which was engaged to advance the campaign on social media platforms and internet chat forums.  *Id.* ¶¶ 216–223.  Lively alleges that the goal of the campaign was to spread disparaging content about her on social media and in the press.  *Id.* ¶¶ 223–230.  Lively filed her original complaint on December 31, 2024.  Dkt. No. 1.  Liner represents the Wayfarer Parties in this litigation.  *See* Dkt. Nos. 24, 28, 130.

Lively filed an Amended Complaint on February 18, 2025, which alleges that the retaliation campaign against her continued after the filing of her original complaint.  Dkt. No. 84 ¶¶ 294–312.[5]  She alleges that "[m]uch of this phase of the campaign has taken place in the form

---

[3] Citations in the following two paragraphs are to the docket in 24-cv-10049.

[4] The Wayfarer Parties are Wayfarer Studios LLC, Justin Baldoni, Jamey Heath, Steve Sarowitz, It Ends With Us Movie LLC, Melissa Nathan, The Agency Group PR LLC, and Jennifer Abel.

[5] Lively also filed a Second Amended Complaint after the filing of this motion to quash.  Dkt.

of statements by Defendants' lawyer, Mr. Freedman." *Id.* ¶ 298.  Lively identifies eight specific statements made by Freedman outside of court proceedings in the time period from December 2024 onward that she alleges are false and defamatory, and claims, on information and belief, that "Defendants approved and authorized Mr. Freedman to publish the [] statements as their agent." *Id.* ¶¶ 299–300.  She also alleges that Defendants continued to perpetrate the untraceable digital campaign and "have continued to push negative and derogatory content about Ms. Lively and her family to content creators, journalists, and others." *Id.* ¶¶ 303, 311.  She claims that Defendants' counsel has threatened witnesses, journalists, media entities, and others if they publish unfavorable information about Baldoni or other Defendants.  *Id.* ¶ 311.  Although Liner asserts that it was retained as counsel only in December 2024, the Amended Complaint notes that the Wayfarer Parties discussed hiring Freedman as early as August 2024.  *Id.* ¶ 221.

The Subpoena makes eight requests for production directed at counsel's communications with Content Creators and others as part of the alleged campaign of harassment:

REQUEST FOR PRODUCTION NO. 1: Agreements effective at any point from July 1, 2024 through present, whether executed prior, on, or subsequent to either date, including contracts, retainer agreements, and engagement letters, between or involving You (including on behalf of any Wayfarer Defendant) and any Content Creator concerning the Consolidated Action, Ms. Lively, Mr. Reynolds, any Wayfarer Defendant, the Digital Campaign, the Film, or with any Content Creator who has spoken publicly regarding the same.

REQUEST FOR PRODUCTION NO. 2: For the time period July 1, 2024 through present, all Documents concerning or relating to any invoices (including invoice entries) for "services rendered" or "third party services" or similar descriptions, between or involving You (including on behalf of any Wayfarer Defendant) and any Content Creator, where such invoice is concerning or relating to the Consolidated Action, Ms. Lively, Mr. Reynolds, any of the Wayfarer Defendants, the Digital Campaign, or the Film. For the sake of clarity, this Request includes invoices in which You are involved at any point in any Payment chain to any Content Creator, whether directly or indirectly, including but not limited to where another Person or entity is the final payor.

No. 520.  The Second Amended Complaint adds allegations that are not material to this motion.

3

003

REQUEST FOR PRODUCTION NO. 3: For the time period July 1, 2024 through present, all Documents concerning or relating to any Payment between or involving You (including on behalf of any Wayfarer Defendant) and any Content Creator, where such Payment is concerning or relating to the Consolidated Action, Ms. Lively, Mr. Reynolds, any of the Wayfarer Defendants, the Digital Campaign, or the Film. For the sake of clarity, this Request includes Payments in which You are involved at any point in any Payment chain to any Content Creator, whether directly or indirectly, including but not limited to where another Person or entity is the final payor.

REQUEST FOR PRODUCTION NO. 4: For the time period July 1, 2024 through present, Documents sufficient to identify the name(s) of the financial institution(s), the name(s) of the account holder(s), and any account number(s) associated with all bank account(s) You used to make or receive any Payment (including on behalf of any Wayfarer Defendant) concerning the use of digital, online, Content Creator, or influencer services concerning the Consolidated Action, Ms. Lively, Mr. Reynolds, any of the Wayfarer Defendants, the Digital Campaign, or the Film.

REQUEST FOR PRODUCTION NO. 5: For the time period July 1, 2024 through present, all Documents and Communications involving You (including on behalf of any Wayfarer Defendant) concerning digital, online, Content Creator, or influencer services concerning Ms. Lively, Mr. Reynolds, any of the Wayfarer Defendants, the Digital Campaign, or the Film. To the extent responsive Documents and/or Communications are in the possession, custody or control of the Wayfarer Defendants, only Documents and/or Communications uniquely retained by You need be produced in response to this Request.

REQUEST FOR PRODUCTION NO. 6: For the time period July 1, 2024 through present, all Documents and Communications between (i.e., sent to, received from, copying, or blind copying) You and any journalist, reporter, producer, editor, or any other representative of a newspaper, online news source, podcast, television network, radio station, or any other form of media, concerning or relating to the Consolidated Action, Ms. Lively, Mr. Reynolds, any of the Wayfarer Defendants, the Digital Campaign, or the Film.

REQUEST FOR PRODUCTION NO. 7: For the time period August 1, 2024 through present, all Documents and Communications reflecting any communication with any source that provided You information relating to, or that formed the basis for, Mr. Freedman's public statements regarding Ms. Lively.

REQUEST FOR PRODUCTION NO. 8: For the time period August 1, 2024 through present, all Documents, including mobile phone billing records, sufficient to show the calls You or Mr. Freedman made and/or received with any source concerning information relating to, or that formed the basis for, Mr. Freedman's public statements regarding Ms. Lively.

Dkt. No. 1-3 at 15–17.

**DISCUSSION**

Lively's requests for production fall broadly into three categories.  Requests 1–4 seek information regarding agreements and payments between Liner and Content Creators.  Dkt. No. 1-3 at 15–16.  Because Liner largely withdrew its objections to these requests at oral argument, the Court denies the motion to quash as to these requests, except in one limited respect set forth below.  Requests 5–6 seek documents and communications with and concerning Content Creators and the media more generally.  *Id.* at 16.  The motion to quash is granted without prejudice as to those requests.  Requests 7–8 seek information regarding the basis for public statements by Freedman about Lively.  *Id.* at 16–17.  The motion to quash is granted with prejudice as to those requests.

## I.  Legal Standard

Pursuant to Rule 45, a party may serve a subpoena on a non-party.  *See* Fed. R. Civ. P. 45(d)(2).  Under Rule 45(d)(3), the Court "must quash or modify a subpoena that . . . requires disclosure of privileged or other protected matter, if no exception or waiver applies; or . . . subjects a person to undue burden."  Fed. R. Civ. P. 45(d)(3).  "Motions to compel and motions to quash a subpoena are both 'entrusted to the sound discretion of the district court.'"  *In re Fitch, Inc.*, 330 F.3d 104, 108 (2d Cir. 2003) (quoting *United States v. Sanders*, 211 F.3d 711, 720 (2d Cir. 2000)).

Rule 26(b)(1) of the Federal Rules of Civil Procedure sets forth the standard for discovery in litigation in federal court.  A party may obtain discovery "regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case."  Fed. R. Civ. P. 26(b)(1).  "Information within this scope of discovery need not be admissible in evidence to be discoverable."  *Id.*  "[T]he determination whether . . . information is discoverable because it is relevant to the claims or defenses depends

5

005

on the circumstances of the pending action." *Collens v. City of New York*, 222 F.R.D. 249, 252–53 (S.D.N.Y. 2004) (quoting Fed. R. Civ. P. 26 advisory committee notes to 2000 amendment). Absent a stay of discovery, a party may take discovery relevant to claims and defenses that are subject to a pending motion to dismiss. *See Alapaha View Ltd. v. Prodigy Network, LLC*, 2021 WL 1893316, at *2 (S.D.N.Y. May 10, 2021) (noting that absent a stay of discovery, a party may expend significant resources taking discovery on claims subject to a motion to dismiss); *Riverkeeper, Inc. v. Coeymans Recycling Ctr. LLC*, 2024 WL 1285390, at *10 (N.D.N.Y. Mar. 26, 2024) (rejecting argument that discovery should not be compelled because plaintiff's claims would fail on the merits).[6]

"In general, the relevance standard that applies when seeking discovery from a party also applies to non-parties." *Citizens Union of City of New York v. Att'y Gen. of New York*, 269 F. Supp. 3d 124, 139 (S.D.N.Y. 2017); *see Malibu Media, LLC v. Doe*, 2016 WL 5478433, at *2 (S.D.N.Y. Sept. 29, 2016) ("[S]ubpoenas issued under Rule 45 are subject to the relevance requirement of Rule 26(b)(1)."). "[T]here is no absolute rule that party sources must be exhausted before calling upon third parties." *Jam Indus. USA, LLC v. Gibson Brands, Inc.*, 2020 WL 4003280, at *4 (S.D.N.Y. July 15, 2020). However, in evaluating whether discovery on a nonparty constitutes an undue burden, one relevant factor is "whether the requested information can be obtained from the parties themselves." *Cerco Bridge Loans 6 LLC v. Schenker*, 2024 WL 4165128, at *2 (S.D.N.Y. July 16, 2024) (quoting *Fishon v. Peloton Interactive, Inc.*, 336 F.R.D. 67, 69 (S.D.N.Y. 2020)); *see In re 650 Fifth Ave. & Related Props.*, 2013 WL 12335763, at *3

---

[6] At oral argument, counsel for Liner asserted that the Wayfarer Parties intended to move against the allegations of the Amended Complaint that they retaliated against Lively by their statements to the press and through content creators after the litigation commenced. No such motion has been made. Therefore, the Court considers the Amended Complaint as pleaded.

(S.D.N.Y. Aug. 29, 2013). "[I]f documents are available from a party, it has been thought preferable to have them obtained pursuant to Rule 34 rather than subpoenaing them from a non-party witness [pursuant to Rule 45]." *Burns v. Bank of Am.*, 2007 WL 1589437, at *14 (S.D.N.Y. June 4, 2007) (quoting Wright & Miller's Federal Practice & Procedure § 2204); *see Cerco Bridge Loans*, 2024 WL 4165128, at *2.

Moreover, a court must take special care in evaluating subpoenas directed to opposing counsel. "Courts have been particularly concerned about the burdens imposed on the adversary process when lawyers themselves have been the subject of discovery requests." *In re Subpoena Issued to Dennis Friedman*, 350 F.3d 65, 70 (2d Cir. 2003); *see also Patsy's Italian Rest., Inc. v. Banas*, 2007 WL 174131, at *2 (E.D.N.Y. Jan. 19, 2007). A deposition or document request directed to counsel may encroach on the attorney-client privilege or attorney work product doctrine. Beyond that, a discovery request to counsel can threaten to turn the lawyer into a witness against the client and thereby may burden a party's choice of counsel. *See Varbero v. Belesis*, 2020 WL 7043503, at *2 (S.D.N.Y. Dec. 1, 2020); *In re Chevron Corp.*, 749 F. Supp. 2d 141, 163 (S.D.N.Y.) (considering "the extent to which the discovery would disrupt the litigation by injecting one of the lawyers charged with its conduct into the case as a witness"), *aff'd sub nom. Lago Agrio Plaintiffs v. Chevron Corp.*, 409 F. App'x 393 (2d Cir. 2010); *Bey v. City of New York*, 2007 WL 1893723, at *5 (S.D.N.Y. June 28, 2007) ("[D]epositions of counsel, even if limited to relevant and non-privileged information, are likely to have a disruptive effect on the attorney-client relationship." (citation omitted)); *cf. Pamida, Inc. v. E.S. Originals, Inc.*, 281 F.3d 726, 729–30 (8th Cir. 2002) (noting that courts must "guard against the harassing practice of deposing opposing counsel . . . that does nothing for the administration of justice but rather

007

prolongs and increases the costs of litigation, demeans the profession, and constitutes an abuse of the discovery process" (internal quotation omitted)).

The Second Circuit has instructed that courts must follow a flexible approach to lawyer depositions, whereby the Court "takes into consideration all of the relevant facts and circumstances to determine whether the proposed deposition would entail an inappropriate burden or hardship." *Friedman*, 350 F.3d at 72.[7] Such considerations may include "the need to depose the lawyer, the lawyer's role in connection with the matter on which discovery is sought and in relation to the pending litigation, the risk of encountering privilege and work-product issues, and the extent of discovery already conducted." *Id.* at 72. "Under this approach, the fact that the proposed deponent is a lawyer does not automatically insulate him or her from a deposition nor automatically require prior resort to alternative discovery devices, but it is a circumstance to be considered." *Id.*

---

[7] Because the proper interpretation of the Federal Rules of Civil Procedure is a matter of federal law, the Court applies Second Circuit precedent despite the fact that this case was transferred from the Central District of California. *See Menowitz v. Brown*, 991 F.2d 36, 40 (2d Cir. 1993) ("[A] transferee federal court should apply its interpretations of federal law, not the constructions of federal law of the transferor circuit."); *AER Advisors, Inc. v. Fid. Brokerage Servs., LLC*, 921 F.3d 282, 288 (1st Cir. 2019) ("While we have yet to consider the subject, every Circuit to do so has concluded that when one district court transfers a case to another, the norm is that the transferee court applies its own Circuit's cases on the meaning of federal law."); *In re Korean Air Lines Disaster of Sept. 1, 1983*, 829 F.2d 1171, 1174–75 (D.C. Cir. 1987), *aff'd sub nom. Chan v. Korean Air Lines, Ltd.*, 490 U.S. 122 (1989). Some cases in the Central District of California have adopted a test originally promulgated by the Eighth Circuit stating that discovery may be obtained from an attorney only if "(1) no other means exist to obtain the information than to depose opposing counsel, (2) the information sought is relevant and nonprivileged, and (3) the information is crucial to the preparation of the case." *Shelton v. American Motors Corp.*, 805 F.2d 1323, 1327 (8th Cir. 1986). However, the Second Circuit implied in *Friedman* that the use of the *Shelton* test would constitute reversible error. *Friedman*, 350 F.3d at 72. Accordingly, the Court will follow the Second Circuit's *Friedman* standard. The result would be the same if the Court followed the *Shelton* test, as the differences between the tests are not material here.

"Courts have also applied the *Friedman* factors in non-deposition contexts, including in decisions resolving motions to compel lawyers to comply with document subpoenas." *Cerco Bridge Loans 6 LLC v. Schenker*, 2024 WL 4754022, at *2 (S.D.N.Y. July 9, 2024) (citing *Chevron Corp. v. Donziger*, 2013 WL 1087236, at *23 (S.D.N.Y. Mar. 15, 2013); *Varbero*, 2020 WL 7043503, at *2). The application of *Friedman* to document subpoenas necessarily follows from the principle that *Friedman* is simply an application of "the standards set forth in Rule 26" that the Court must "take[] into consideration all relevant circumstances" in considering whether the requested discovery constitutes an "inappropriate burden." *Friedman*, 350 F.3d at 72. The Rule 26 standards also apply to document discovery. *See, e.g.*, *Sahu v. Union Carbide Corp.*, 262 F.R.D. 308, 317–318 (S.D.N.Y. 2009) (applying undue burden standard to both deposition and document subpoenas). Accordingly, document discovery must also be evaluated to determine whether it unduly burdens "the adversary process," and the *Friedman* factors aid a court in making that determination. *Friedman*, 350 F.3d at 70. It is true that the production of documents is a more controlled form of discovery than a deposition, is less susceptible to harassment, and may have a lower risk of revealing privileged materials or an attorney's mental impressions. *See Sahu*, 262 F.R.D. at 317 ("[D]ocument discovery . . . is a more convenient, less costly, and less burdensome alternative to the depositions."); *see also Friedman*, 350 F.3d at 72 (suggesting that interrogatories to counsel would be less burdensome than a deposition); *cf. Lederman v. New York City Dep't of Parks & Recreation*, 731 F.3d 199, 203 (2d Cir. 2013) (noting that high-ranking officials may be deposed only on a showing that "the official has unique first-hand knowledge related to the litigated claims or that the necessary information cannot be obtained through other, less burdensome or intrusive means"). But this simply means that document subpoenas may be more likely to pass muster under *Friedman* than deposition

9

subpoenas, not that *Friedman* is inapplicable.  Document subpoenas to counsel may still implicate privilege and work-product issues, run the risk of harassment, and interfere with the attorney-client relationship.  *Friedman* simply requires that a court account for these issues in determining whether a discovery request to counsel constitutes an undue burden under Rule 26.

## II.     Requests 1–4

Requests 1–4 seek information regarding agreements and payments between Liner and Content Creators.  Dkt. No. 1-3 at 15–16.  At oral argument, Liner withdrew its objection to Requests 1–4 with the exception of the unrelated engagement letters, claiming that it had no documents responsive to those requests.  *See* Oral Argument Transcript ("Tr.") at 50:24–51:11, 53:23.  The Court therefore denies the motion to quash with respect to Requests 1–4, except with respect to engagement letters that Liner has to represent Content Creators as clients in legal matters other than this case.

The Court grants the motion to quash to the extent that Lively seeks agreements into which Liner has entered for the purposes of representing Content Creators in unrelated matters.  At oral argument, Lively suggested the possibility that Liner generally and Mr. Freedman specifically could have funneled money to Content Creators who were clients of the Liner firm in the form of discounts on legal fees in exchange for the publication of negative material about Ms. Lively.  *See* Tr. at 45:5–46–15.  But at this stage, that assertion is speculative, of tangential relevance, and may be tested by discovery from other sources.  Lively's claim is that the Wayfarer Parties authorized and/or directed Freedman and others to covertly disseminate negative stories about Lively in retaliation for her complaints.  Dkt. No. 84 ¶¶ 223–230, 386–415, 460–478.  It may thus be relevant whether the negative comments made about Lively can be traced back to the Wayfarer Parties and their agents.  It may be relevant whether the Content Creators have a relationship with Liner and Freedman and whether they acted at the direction

and encouragement of Liner and Freedman.  But Lively does not need discovery of the

engagement letters of clients of the Liner firm to show whether this was the case.  The precise

terms of their engagement with Liner and the subject matter of the representations is not

particularly relevant, and information about the relationship between Liner and the Content

Creators can be obtained in other ways.

## III.    Requests 5 and 6

The motion to quash is granted with respect to Requests 5 and 6, without prejudice to

reconsideration at a later date.  Request 5 calls for "all Documents and Communications

involving [Liner] (including on behalf of any Wayfarer Defendant) concerning digital, online,

Content Creator, or influencer services concerning Ms. Lively, Mr. Reynolds, any of the

Wayfarer Defendants, the Digital Campaign, or the Film."  Dkt. No. 1-3 at 16.  Request 6 calls

for "all Documents and Communications between . . . You and any journalist, reporter . . . or any

other representative of . . . any other form of media," concerning the same topics or this

litigation.  *Id.*

Lively has not demonstrated a need at this point to obtain those documents from Liner,

and there is a potential risk that the requests would encroach on the attorney-client privilege,

attorney work product doctrine, or attorney-client relationship more generally.  "Documents in

the possession of a party's attorney may be considered to be within the control of the party."

*Markus v. Rozhkov*, 615 B.R. 679, 705–06 (S.D.N.Y. 2020) (quoting *Donziger*, 296 F.R.D. at

190); *see* 7 Moore's Federal Practice § 34.14[2][c] (3d ed. 2025).  "'Control' does not require

'actual physical possession of the documents at issue; rather, documents are considered to be

under a party's control when that party has the right, authority, or practical ability to obtain the

documents.'"  *Mirlis v. Greer*, 80 F.4th 377, 382 (2d Cir. 2023) (quoting *Coventry Cap. US LLC

v. EEA Life Settlements Inc.*, 333 F.R.D. 60, 64 (S.D.N.Y. 2019)).  At oral argument, Liner

confirmed that if the Wayfarer Parties asked Liner for the client file, it would provide the file.
*See* Tr. at 52:12.  Liner also confirmed that if Freedman made a written communication to a
Content Creator or to a journalist to shape communications on behalf of the Wayfarer Parties or
within the scope of the representation, and if the Wayfarer Parties asked for a copy of that
communication, Liner would provide it to the Wayfarer Parties.  *Id.* at 52:22–53:3.

Thus many, if not all, of the documents called for by Requests 5 and 6 should be
obtainable through a request to the Wayfarer Parties.  If Liner had communications with Content
Creators or the press about the subject matter of this case, these communications would
presumably have been made in the course of representing the Wayfarer Parties and therefore
would be available to the Wayfarer Parties.  If for whatever reason Liner communicated with the
press and Content Creators about this case outside of its representation of the Wayfarer Parties,
such communications would at this stage seem minimally relevant to Lively's claims.[8]  One of
the *Friedman* factors is "the need to [seek documents from] the lawyer."  *Friedman*, 350 F.3d at
72.  When the documents sought are within the possession, custody, or control of the client
because they were generated on behalf of the client, there is no need to make the lawyer into a
witness against his client.  The client himself can produce the documents.  *See Gropper v. David
Ellis Real Est., L.P.*, 2014 WL 904483, at *3–4 (S.D.N.Y. Mar. 4, 2014) (rejecting attorney
deposition and document request that would have duplicated information available from other
sources); *cf. Kiobel by Samkalden v. Cravath, Swaine & Moore LLP*, 895 F.3d 238, 245 (2d Cir.

---

[8] Request 5 states that Liner does not need to produce documents "in the possession, custody, or
control of the Wayfarer Defendants," only documents "uniquely retained by" Liner.  Dkt. No. 1-
3.  This is somewhat contradictory, as documents uniquely "retained" by Liner, meaning that the
Wayfarer Parties do not have a copy, would still be in the custody or control of the Wayfarer
Parties if they are part of the client file.  The Court does not read the Request to solely seek
Liner's communications with Content Creators independent of its representation of the Wayfarer
Parties.

2018) (holding under 28 U.S.C. § 1782 that a discovery request to a United States law firm should not be used to acquire the documents of a client engaged in foreign litigation).[9] Privilege concerns further weigh against forcing counsel to disclose documents in the control of the Wayfarer Parties. To the extent that a privilege is implicated, it would be the Wayfarer Parties' privilege to assert and thus it should be asserted by the Wayfarer Parties in response to a request to them. *See In re von Bulow*, 828 F.2d 94, 100 (2d Cir. 1987) ("Of course, the privilege belongs solely to the client and may only be waived by him.").

As to "the lawyer's role in connection with the matter on which discovery is sought and in relation to the pending litigation," it is significant that Liner is trial counsel for the Wayfarer Parties in this case and the discovery sought concerns press efforts related to this case. *Friedman*, 350 F.3d at 71. Attempts to "subpoena a lawyer who either was actively litigating the case on the other party's behalf or who was associated with trial counsel" run a much greater risk of intrusion on the attorney-client relationship than subpoenas to former lawyers or corporate counsel. *Rekor Sys., Inc. v. Loughlin*, 2022 WL 671908, at *2 (S.D.N.Y. Mar. 7, 2022) (collecting cases).

---

[9] In cases where lawyers have been compelled to be witnesses, they have generally had percipient knowledge not in the possession, custody, or control of the client. *See Chevron Corp.*, 749 F. Supp. 2d at 163 ("[T]he proposed discovery focuses on matters concerning which Donziger is a percipient witness and a principal actor."); *Rekor Sys*, 2022 WL 671908, at *2 ("With respect to at least one potentially relevant event post-acquisition, [counsel] was only one of two percipient witnesses and questions have been raised about the competence of the other percipient witness."); *U.S. Fid. & Guar. Co. v. Braspetro Oil Servs. Co.*, 2000 WL 1253262, at *3 (S.D.N.Y. Sept. 1, 2000) ("[T]he information sought through the attorney depositions at issue cannot, as a practical matter, be obtained through other sources."); *Johnston Dev. Grp., Inc. v. Carpenters Loc. Union No. 1578*, 130 F.R.D. 348, 354 (D.N.J. 1990) ("The importance and degree of uniqueness of [counsel's] information outweighs the potential negative impact upon the attorney-client relationship and the adversary process.").

The Court grants Lively leave to propound renewed interrogatories or document requests to the Wayfarer Parties for the documents or communications sought by Requests 5 and 6 here.[10] If there is dispute over the Wayfarer Parties' responses to these interrogatories or related document requests, the issue may be raised with the Court and the parties themselves may raise objections.  Absent some showing that Liner has relevant information or documents that cannot be as obtained through a request to the Wayfarer Parties themselves, there is no reason to resort to a subpoena to trial counsel, given the attendant risks to the adversarial process.  Lively has leave to move for reconsideration of this ruling at a later date if necessary, including after the time period set out in Local Civil Rule 6.3.

## IV.     Requests 7 and 8

Requests 7 and 8 seek communications forming the basis for Freedman's allegedly defamatory public statements about Lively.  Dkt. No. 1-3 at 16–17.  The motion to quash is granted with prejudice as to these Requests.  The requests seek privileged and work product-protected information that has little relevance to Lively's claims.

"The attorney-client privilege protects confidential communications between client and counsel made for the purpose of obtaining or providing legal assistance."  *In re Cnty. of Erie*, 473 F.3d 413, 418 (2d Cir. 2007).  The purpose of the attorney-client privilege "is to encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice."  *Upjohn Co. v. United*

---

[10] Lively represents that she has already propounded an interrogatory to the Wayfarer Parties requiring that they identify any Content Creator with whom they spoke.  *See* Tr. at 53:25–54:19; *Lively*, Dkt. No. 533.  The Court has granted a motion to compel responses to a similar interrogatory regarding communications with the press.  *See Lively*, Dkt. No. 355.  However, the Wayfarer Parties' responses may not have included communications made by attorneys on the Wayfarer Parties' behalf.  *Lively*, Dkt. No. 533.

014

*States*, 449 U.S. 383, 389 (1981).  Under federal common law,[11] the attorney-client privilege

protects communications "(1) between a client and his or her attorney (2) that are intended to be,

and in fact were, kept confidential (3) for the purpose of obtaining or providing legal advice."

*United States v. Mejia*, 655 F.3d 126, 132 (2d Cir. 2011).  Unless the communications are no

longer kept confidential, the advice of counsel has been put at issue, *see von Bulow*, 828 F.2d at

102, or the privilege has been otherwise waived, the communications are absolutely protected.

The attorney work product doctrine provides a more qualified protection against

disclosure.  "The work product doctrine, codified for the federal courts in Federal Rule of Civil

Procedure 26(b)(3), is intended to preserve a zone of privacy in which a lawyer can prepare and

develop legal theories and strategy 'with an eye toward litigation,' free from unnecessary

intrusion by his adversaries."  *United States v. Adlman*, 134 F.3d 1194, 1196 (2d Cir. 1998)

(quoting *Hickman*, 329 U.S. at 510–11).  Work product protection applies to "documents and

tangible things that are prepared in anticipation of litigation or for trial by or for another party or

its representative."  Fed. R. Civ. P. 26(b)(3).  This definition does not apply only to counsel, and

"[d]ocuments prepared by agents enlisted by legal counsel to perform investigative or analytical

tasks to assist in preparing for litigation can be work product."  *Spencer-Smith v. Ehrlich*, 2024

WL 4416581, at *4 (S.D.N.Y. Oct. 4, 2024).  "The work product doctrine extends to the mental

impressions and strategies of counsel, as well as to factual material including the result of a

---

[11] Under Federal Rule of Evidence 501, federal common law governs the attorney-client privilege when federal law supplies the rule of decision, and state law governs the attorney-client privilege when state law supplies the rule of decision.  *See* Fed. R. Evid. 501.  When evidence is relevant to both federal and state claims "courts consistently have held that the asserted privileges are governed by the principles of federal law."  *von Bulow v. von Bulow*, 811 F.2d 136, 141 (2d Cir. 1987).  Because evidence regarding Freedman's statements is relevant to Lively's retaliation claims under federal and state law as well as her defamation claim under state law, the federal law of privilege applies.  *See Lively*, Dkt. No. 84 ¶¶ 295–312 (describing Freedman's statements as both defamatory and a continuation of the retaliation campaign).

factual investigation." *Id.* "That which reflects the mental processes of an attorney—opinion work product—is entitled to virtually absolute protection. Fact or 'ordinary' work product, by contrast, may be ordered disclosed upon a showing of substantial need." *United States v. Ghavami*, 882 F. Supp.2d 532, 540 (S.D.N.Y. June 5, 2012).

Lively's request for "Documents and Communications reflecting any communication with any source that provided You information relating to, or that formed the basis for, Mr. Freedman's public statements regarding Ms. Lively" targets information squarely within the attorney-client privilege and work product protection. Dkt. No. 1-3 at 17. Freedman's allegedly defamatory statements are to the effect that Lively is a liar and the allegations in her complaint are not true. *Lively*, Dkt. No. 84 ¶ 299. One obvious source of information forming the basis for Freedman's statements would be communications made to Freedman by his clients in the course of seeking legal advice. Such communications would be privileged. A second source would be discussions with potential witnesses contacted in the course of investigating the allegations in Lively's complaint. Documents reflecting such discussions would generally be attorney work product. *See Hickman*, 329 U.S. at 509–512.[12]

Moreover, the relevance of such documents and communications to Lively's claims is uncertain. Lively does not assert defamation claims against Freedman personally, but against the Wayfarer Parties. The knowledge of the Wayfarer Parties is thus of central importance. If the Wayfarer Parties believed the statements were false and authorized or approved their making,

---

[12] Lively suggests that the requests may also uncover communications made to "inform public statements," rather than legal strategies. Tr. at 28:20–25; *see Lively*, Dkt. No. 533. But the line Lively attempts to draw is vanishingly thin. Any interview by Liner aimed at determining the truth or falsity of Lively's allegations would presumably yield material that could be used both in defense of the Wayfarer Parties' position in this Court and in defense of their position in the press.

they could be held liable regardless whether Freedman himself had a basis for believing the statements were false. *See Lively v. Wayfarer Studios LLC*, 2025 WL 1637019, at \*45 (S.D.N.Y. June 9, 2025). The statements alleged to be defamatory relate to events as to which the Wayfarer Parties, primarily Baldoni and Heath, were percipient witnesses. They would not have needed the witness interviews of Liner to determine whether the statements made by Freedman were true or false. They had direct knowledge of the events of which he spoke. And even assuming that another witness told Liner that Lively was telling the truth, and Liner relayed this to the Wayfarer Parties, it would seem minimally probative of the issue whether the Wayfarer Parties believed Lively was telling the truth.[13] Given the low relevance of the information to Lively's claims and the clear "risk of encountering privilege and work-product issues," Requests 7 and 8 constitute an undue burden and must be quashed. *Friedman*, 350 F.3d at 72.

## CONCLUSION

The motion to quash is GRANTED IN PART and DENIED IN PART.

The Clerk of Court is respectfully directed to close this case.

SO ORDERED.

Dated: August 4, 2025
New York, New York

_____
LEWIS J. LIMAN
United States District Judge

---

[13] Even as to Freedman's own mental state, his client's beliefs based on firsthand knowledge would logically have greater weight than denials from other sources. *See Lively*, 2025 WL 1637019, at \*41; *Hughes v. Twenty-First Century Fox, Inc.*, 304 F. Supp. 3d 429, 453 (S.D.N.Y. 2018) (holding actual malice was insufficiently alleged when general counsel simply repeated the client's version of events).