—2:25-cv-01396-RFB-DJA—

1         UNITED STATES DISTRICT COURT

2              DISTRICT OF NEVADA

3

4                              )
  In Re Subpoena to:           )  Case No. 2:25-cv-01396-RFB-DJA
5                              )
                               )  Las Vegas, Nevada
6  MARIO LAVANDEIRA, JR.       )  Thursday, August 28, 2025
   aka PEREZ HILTON,           )  12:26 p.m.
7                              )
                               )  MOTION HEARING
8  _____)
                               )  *C E R T I F I E D   C O P Y*
9

10

11

12

13        REPORTER'S TRANSCRIPT OF PROCEEDINGS

14       THE HONORABLE RICHARD F. BOULWARE, II,
              UNITED STATES DISTRICT JUDGE

15

16

17

18  APPEARANCES:      See next page

19

20

21
   COURT REPORTER:    Patricia L. Ganci, RMR, CRR
22                    United States District Court
                      333 Las Vegas Boulevard South, Room 1334
23                    Las Vegas, Nevada  89101

24  Proceedings reported by machine shorthand, transcript produced
   by computer-aided transcription.
25

2:25-cv-01396-RFB-DJA

1    APPEARANCES:

2    For the Third Party:

3          **MARIO LAVANDEIRA, JR.**
           PRO SE
4          Ph@perezhilton.com

5    For the Respondents:

6          **RICHARD J. POCKER, ESQ.**
           BOIES SCHILLER & FLEXNER, LLP
7          300 South Fourth Street, Suite 800
           Las Vegas, Nevada 89101
8          (702) 382-7300

9          **MERYL C. GOVERNSKI, ESQ.**
           BOIES SCHILLER & FLEXNER, LLP
10         5301 Wisconsin Avenue NW
           Washington, DC 20015
11         (202) 237-2727

12         **LAUREN MARTIN, ESQ.**
           WILLKIE FARR & GALLAGHER, LLP
13         787 7th Avenue
           New York, New York 10019
14         (212) 728-3998

15

16

17

18

19

20

21

22

23

24

25

2:25-cv-01396-RFB-DJA

1          LAS VEGAS, NEVADA; THURSDAY, AUGUST 28, 2025; 12:26 P.M.

2                              --oOo--

3                      P R O C E E D I N G S

4          THE COURT:  Please be seated.

5          COURTROOM ADMINISTRATOR:  The matter now before the

6  Court is a motion to quash, In Re: Mario Lavandeira, Jr., Case

7  Number 2:25-cv-1396-RFB-DJA.  Counsel and parties, please make

8  your appearances, beginning with the petitioner.  Please state

9  your name for the record.

10          MR. LAVANDEIRA:  My name is -- oh.  My name is Mario

11  Lavandeira, known professionally as Perez Hilton.

12          THE COURT:  Okay.  Good afternoon.

13          MR. LAVANDEIRA:  Good afternoon, Your Honor.

14          MR. POCKER:  Your Honor, on behalf of the respondent,

15  Blake Lively, I am Richard Pocker with Boies Schiller & Flexner.

16  And with me are Meryl Governski of Dunn Isaacson Rhee from

17  Washington, D.C. and also Lauren Martin of Willkie Farr, also in

18  Washington, D.C.

19          THE COURT:  Good afternoon.

20          MS. GOVERNSKI:  Good afternoon, Your Honor.

21          THE COURT:  So let's first deal with the issue of

22  the -- of the transfer, or not, of the motion under Rule 45.

23  Who's going to be arguing this for the defendant -- well, I

24  shouldn't say the defendants.  I mean, they're plaintiffs in the

25  other case.  So respondents, I should say, would be the

─2:25-cv-01396-RFB-DJA─

1    appropriate term.

2           Who's going to be arguing this for the respondents?

3           MS. GOVERNSKI:  Thank you, Your Honor.  Meryl Governski

4    from Dunn Isaacson Rhee.  I'll be arguing every -- every aspect

5    today.

6           THE COURT:  Why don't you come up to the podium --

7           MS. GOVERNSKI:  Sure.

8           THE COURT:  -- counsel.

9           So, as you know, the burden is on the party requesting

10   transfer to establish exceptional circumstances for the

11   transfer.  In this case I have a few questions about that.

12   One -- and I want to make sure that I'm saying this correctly.

13   Is it Lavandeira?

14           MR. LAVANDEIRA:  Yes, Your Honor, but you could say

15   Hilton if that's easier.

16           THE COURT:  Which do you prefer?

17           MR. LAVANDEIRA:  Hilton.

18           THE COURT:  Okay.

19           MR. LAVANDEIRA:  I'm in that capacity here today, Your

20   Honor.

21           THE COURT:  That's fine.  Whatever you prefer --

22           MR. LAVANDEIRA:  Thank you.

23           THE COURT:  -- that's what I'll use.

24           So in this case, Mr. Hilton is a resident of Nevada.

25   If the court were to transfer the case, he essentially might

———2:25-cv-01396-RFB-DJA———

 1  have to travel back and forth whatever hearings there would be

 2  on that -- on this particular motion.  And so, first, I want you

 3  to address that.  Because that's something that in many

 4  instances the courts look at as it relates to burden, right.

 5  When you have a resident who has to travel -- and it's not like

 6  he's traveling to L.A.  He's traveling back and forth to New

 7  York.  As you know -- you traveled here from D.C., right --

 8  that's not an insignificant trip.

 9       So why wouldn't that factor alone weigh in favor of me

10  not transferring this case?

11       MS. GOVERNSKI:  Absolutely, Your Honor.  I understand

12  your question.

13       So, first of all, our position is that Mr. Hilton has

14  availed himself of SDNY.  As you know, when we filed -- he has

15  filed a motion for a protective order in connection to this

16  subpoena in that court.  He also has filed nearly or more than

17  20 letters in that court.  He has publicly stated that he

18  actively follows that docket.

19       THE COURT:  So, Ms. Governski, it's different, though,

20  to follow a docket than to have to appear.

21       MS. GOVERNSKI:  Absolutely.

22       THE COURT:  He's opposing this motion.  And if the

23  Court were to deny his motion, whether I did this or Judge Liman

24  did this, right, there would still be an issue of having to

25  manage the production.  And typically that management, whoever

———2:25-cv-01396-RFB-DJA———

1   does it, requires some type of hearings, you know, and in this

2   case I would anticipate, because the parties don't seem to agree

3   on very much, that there would be a few different hearings that

4   might have to be held.  So at minimum Mr. Hilton would have to

5   travel at least from what I could anticipate two to three times

6   in this case.

7          MS. GOVERNSKI:  I -- I don't -- respectfully, I

8   disagree, Your Honor.  Judge Liman has not been holding hearings

9   generally in this case.  I think we've only had two or three all

10  relating to the parties.  The multiple motions to quash,

11  including from third parties, there have not been in-person

12  hearings.  He also has been amenable to virtual appearances.  I

13  feel pretty confident that Mr. Hilton, if he were to file a

14  motion and explain the burden that would be caused by his

15  inability to travel, that Judge Liman would reasonably consider

16  that.

17         THE COURT:  I will say this just for the record.  I

18  have spoken with Judge Liman about this case because I do think

19  one of the issues that needs to be resolved is the issue of

20  whether or not the jurisdiction of his court applies to

21  Mr. Hilton.  For now, I don't know what the answer to that will

22  be.  I have to assume that he's not going to find jurisdiction

23  so that we can fully flesh out the arguments.  I'm not saying

24  one way or another what would be the finding, but if he does

25  find it, that wouldn't necessarily also not create issues here.

1          Because the other part of this, Ms. Governski, I'm

2    concerned about, which is that even in terms of enforcement of

3    orders the case would have to come back to this court.  And when

4    I look at the rule, it's a relatively new rule, it would seem

5    that some of these same arguments Mr. Hilton could raise even in

6    enforcement.  It's not clear whether or not I would have to

7    consider, for example, privilege, but the rule doesn't

8    explicitly exclude that.

9          And so the other thing I'm concerned about is

10    essentially judicial economy from the standpoint of I transfer

11    the case.  Assuming there's an order potentially, if there is,

12    for some form of production -- I'm not saying that it would be

13    all, but if there is an order for some production, for

14    enforcement, it comes back, right, to this court.  Mr. Hilton

15    could potentially raise the same privilege, First Amendment

16    issues, here again.  And I think that I'd probably have to

17    consider them.

18          So I'm not sure why for that reason also I wouldn't

19    keep the case.  Because then you have Judge Liman and I

20    essentially doing double work, right, in the case.  And, again,

21    it's a relatively new rule so you don't know, but I do think

22    that my view of this rule is that if there was an enforcement

23    order issued by Judge Liman, I would still have to consider

24    substantive arguments when it was sent to me.  I couldn't simply

25    adopt what Judge Liman said.

—2:25-cv-01396-RFB-DJA—

1          So why wouldn't I -- why wouldn't I keep the case for

2   that reason?

3          MS. GOVERNSKI:  Well, Your Honor, there were a lot of

4   ifs in that statement, a lot of hypotheticals and unknowns, and

5   that I think actually warrants and supports transferring it at

6   least in the initial instance.  There is a world where the court

7   in New York, when dealing with this, decides to resolve any --

8   hold it in abeyance while it resolves other discovery issues or

9   makes decisions based on privilege based on federal law.  In

10  fact, Judge Liman recently has decided that because Ms. Lively

11  is asserting both federal and state claims for privilege -- for

12  retaliation, excuse me, that federal common-law privileges apply

13  rather than state.

14         And so those are all issues and these are all

15  hypotheticals that we think judicial economy really warrants one

16  judge having the initial oversight.  And it may be that the case

17  ends up back here, but if you retain jurisdiction, it's a

18  guarantee that there are two courts weighing in on very similar

19  issues as opposed to the hypothetical potential that that may

20  exist.

21         THE COURT:  Yes, but your argument -- in some way

22  you're arguing against yourself.  You think that there's

23  relevant production from Mr. Hilton.  You think that it should

24  be ordered.  If that is true, right, then what will potentially

25  eventually happen is there would be an order from Judge Liman,

———2:25-cv-01396-RFB-DJA———

1  if he agrees with you, for production, which would mean that

2  it's not really an if.  Given your argument, we would be back

3  here, right.  I mean, you're saying that there would be

4  production.  We would be back here.  I at least would have to

5  consider the enforcement.  So that's why I'm not understanding.

6        MS. GOVERNSKI:  Only if he doesn't comply, Your Honor.

7  I mean, if he complies with the enforcement order, if he

8  complies -- well, first of all, it's a motion to quash.  So it

9  would be a denial of the motion to quash.  This is -- granted,

10  we have asserted a cross motion, but this is his motion.  We are

11  here on his motion.  So if the Court denies the motion to quash,

12  then there would be nothing before any court, right.  It would

13  be back in his -- in his jurisdiction to comply and produce

14  materials to the subpoena.

15        There's always a possibility that we may end up back in

16  court, this court or that court.  And so I -- it feels to me

17  like there's no guarantee we would be back here.

18        THE COURT:  Well, the thing is, given the litigious

19  nature of this case, it's hard for me to imagine that the

20  parties would agree as it relates to production.  So I'm trying

21  to anticipate this in terms of the transfer.  And it has to be

22  exceptional circumstances.

23        I do think that the issue of having two judges weigh in

24  on the production of materials supports the transfer, but I'm

25  also not convinced that we wouldn't eventually end up there

2:25-cv-01396-RFB-DJA

1  anyway.  Because of the litigious nature of this case and
2  because of the fact the parties don't agree, any enforcement of
3  an order or discussion about something being compelled --
4  there's already a motion to compel filed there in the other
5  jurisdiction -- would come back to this district.

6      And so I don't know that we can avoid that.  I
7  understand what you're saying, but that hasn't happened yet.
8  But I don't think it's unreasonable to think, given how the
9  parties have litigated the case, that there wouldn't be
10 disagreement and we wouldn't be back here.

11     MS. GOVERNSKI:  Well --

12     THE COURT:  And so, to me, that's the strongest
13 argument, honestly, for me to transfer because I don't want to
14 be in a situation where I'm having conflicting orders with Judge
15 Liman.  But, on the other hand, I feel fairly strongly that at
16 some point I will still be involved in this case because
17 Mr. Hilton is a resident here and any order that is resisted
18 would have to be enforced by me.

19     And so that's why I asked you these questions back and
20 forth and playing it out.  We don't know what's going to happen,
21 but you would agree with me that Rule 45 doesn't expressly
22 direct me not to consider legal arguments from the party if
23 there's an order that I have to enforce for compliance.

24     MS. GOVERNSKI:  I -- I don't think that it prohibits
25 Your Honor from doing that, but if -- if I may, Your Honor, I

─2:25-cv-01396-RFB-DJA─

1  would like to talk about the exceptional circumstances because

2  we haven't talked about those much, and I do think they exist

3  here.

4        Mr. Hilton just filed on the docket an emergency motion

5  to supplement the record with the very long, in-depth order that

6  the court entered yesterday compelling the Wayfarer defendants

7  to produce various forms of documents.  You commented on the

8  litigious nature of the parties.  I'll note Mr. Hilton is not a

9  party, and he has repeatedly represented to this court in his

10 filings that he would cooperate with the rules of discovery,

11 including sitting for a deposition.  So we'd have to under- --

12 or hope that if Judge Liman orders him to produce these

13 documents, he would do so and follow his obligations under the

14 civil rules.

15       But, regardless, in that order that Judge Liman entered

16 yesterday, he specifically weighed in on the Wayfarer defendants

17 being obligated to produce materials, communications that they

18 have had with content providers like Mr. Hilton.  He commented

19 specifically on how he has already talked about the relevance of

20 those materials, and he's already held that their communications

21 with content providers like Mr. Hilton are directly relevant to

22 Ms. Lively's claims.

23       So if this Court were to weigh in here, it would be

24 direct- -- for instance on relevance, it would be directly

25 weighing in on an issue that Judge Liman already has done.  And

—2:25-cv-01396-RFB-DJA—

1  while I recognize that convenience to a nonparty like Mr. Hilton

2  is important, case law demonstrates that it is not the sole

3  factor.  It is looking at judicial comity, efficiency, whether

4  this court would be stepping on the toes of Judge Liman.

5       And, in fact, a judge in a Federal Court in California

6  just transferred a subpoena, a motion to quash, also to Judge

7  Liman and specifically stating that, quote, where you have a

8  case that's been so heavily litigated and is so far along in

9  discovery, frankly, if it were me, I would want this transferred

10  to me because I actually would feel like I'm stepping on Judge

11  Liman's toes.  That was Magistrate Judge Richlin in 25-mc-00063.

12       And so we respectfully -- oh.  And in addition, Your

13  Honor, we are under a very tight timeline.  Trial is scheduled

14  for March.  Written discovery has already closed.  Depositions

15  are underway.  Motions to compel are being decided and filed

16  regularly.  It -- it would really take away and deprive Judge

17  Liman of the ability to manage his own docket if another court

18  is going to step in and potentially make contradictory rulings.

19       So while I am empathetic to Mr. Hilton living here and

20  to the court's concerns that this may end up back here, I think

21  that the risk of interfering with Judge Liman's jurisdiction is

22  greater and significantly outweighs that.

23       THE COURT:  Well, he hasn't quite decided his

24  jurisdiction.  That's a separate issue.  Certainly, if he were

25  to decide he had jurisdiction, this could potentially be a moot

—2:25-cv-01396-RFB-DJA—

1  point, but he hasn't decided that.  And so that's why we're

2  having this discussion.

3          I raise another issue with you, which is there are

4  issues related to Nevada law.  Mr. Hilton is a Nevada resident,

5  right.

6          I will tell you, I would typically not transfer a case

7  to another jurisdiction outside of the forum state to decide a

8  new area of law in that state.  Judge Liman would essentially

9  have to issue a decision about Nevada laws, right, in New York.

10  And, to me, that is a factor that weighs heavily against

11  transfer because, as you know, both on the state and federal

12  side there is a strong preference for state law, whether it's by

13  a State Court or Federal Court, to be interpreted and decided by

14  a court in that jurisdiction.  So I want you to address that.

15          Because you're raising and Mr. Hilton's raising

16  actually some fairly novel applications of the shield law, here.

17  And so how should I consider that in the context of transfer?

18          MS. GOVERNSKI:  I anticipated that you might have these

19  concerns as a proud Nevadan and -- Nevadian?  Nevadan?

20          THE COURT:  Nevadan, but that's good.  But, again, it's

21  not so much as a Nevadan, but, as you know, there is -- there is

22  a preference not just in this district --

23          MS. GOVERNSKI:  Absolutely.

24          THE COURT:  -- but in most districts to try to decide

25  state law with a court that sits in that state.

---2:25-cv-01396-RFB-DJA---

 1          MS. GOVERNSKI:  Absolutely.

 2          THE COURT:  So I am a proud Nevadan, but it's not based

 3  upon that.  It is also based upon the general preference as

 4  outlined in the Circuit and in our opinions that speak to that.

 5          MS. GOVERNSKI:  Absolutely.  I did not mean to take

 6  away from that, Your Honor.

 7          So the question of what choice of law applies is

 8  actually a topic that has not been briefed.  We reserved the

 9  right to brief it in New York.  Again, this is another reason

10  that actually favors transfer because it is possible that

11  Nevadan law would not apply while Mr. --

12          THE COURT:  Tell me how it wouldn't apply --

13          MS. GOVERNSKI:  Sure.

14          THE COURT:  -- as it relates to a nonparty who you're

15  ordering to produce materials from who is a resident of Nevada.

16  It's hard for me to see that, in part, because the, sort of,

17  situs of the harm or what's happening versus the digital sphere,

18  right.  So it's not as if, for example, we're dealing with some

19  type of industrial accident that occurred in New York, right.

20  You're talking about an alleged harm that occurs, sort of, on

21  the internet.  And other than the fact that the case is filed in

22  New York, right, I'm not sure why New York is the particular

23  site for the case either given the fact that the harm is alleged

24  to have occurred nationally in the digital sphere.

25          So why wouldn't there be a strong preference for a

────2:25-cv-01396-RFB-DJA────

1   Nevada resident to be able to assert Nevada law to protect

2   Nevada privileges?

3           MS. GOVERNSKI:  Your Honor, your -- your question

4   presupposes that a state's rules would apply.  As I referenced

5   earlier, that is an open question as well.  We -- Ms. Lively is

6   asserting federal claims of retaliation, and Judge Liman has

7   already held in this case --

8           THE COURT:  But not just federal claims, though.  There

9   are other -- there are state claims.

10          MS. GOVERNSKI:  Correct.

11          THE COURT:  There's a California claim.  There's a New

12   York law claim.

13          MS. GOVERNSKI:  Right.

14          THE COURT:  So it's a little bit -- it's actually

15   bicoastal, right, because literally on either end of the country

16   you have claims arising out of those two states.

17          MS. GOVERNSKI:  I agree, and that is the situation that

18   Judge Liman already has dealt with.  And he held that because

19   evidence regarding Freedman's statement is relevant to Lively's

20   retaliation claims under federal and state law as well as her

21   defamation claim under state law, the federal law of privilege

22   governs.  That is available at Westlaw at 2025 WL 2205973 at

23   Page 7.  And his --

24          THE COURT:  Ms. Governski, you understand that even

25   under federal law, federal common law, and even under the, sort

—2:25-cv-01396-RFB-DJA—

1  of, federal decisions, federal law when it comes to privilege

2  also explicitly will defer to forum law depending upon the

3  circumstances.  And so that doesn't change necessarily the

4  analysis.  And, in fact, they can both apply to give a nonparty

5  like Mr. Hilton maximum protection.  It wouldn't mean that I

6  wouldn't still have to decide the Nevada Shield Law application

7  here.

8        MS. GOVERNSKI:  Right.  So if we get to state law, it's

9  not certain Nevada law would even apply.  Mr. Hilton filed a

10  document -- I believe it's a Docket 5.  My colleague, Lauren,

11  can confirm -- where he listed a Los Angeles address as his

12  place of -- as his -- as his place to receive electronic

13  filings.  So there's also the California address.  So it's not

14  clear to us, again, because we haven't briefed it whether the

15  most significant relationship would be Nevada for the reasons

16  you suggest.  Perhaps, California or, perhaps, New York where

17  there -- I mean, certainly with respect to the litigation and

18  Mr. Hilton's repeated regular statements about the litigation

19  and communications we believe that exist with the Wayfarer

20  parties about the litigation, there can be no question that the

21  significant relationship with those communications is not in

22  Nevada.  The significant relationship with the conversations

23  about the litigation is targeted to litigation.  His statements

24  about Judge Liman, his statements about Ms. Lively's claims, all

25  of those are targeted in New York.

—2:25-cv-01396-RFB-DJA—

1          So I agree with you this is a sticky wicket of an
2    issue, but it's one that, respectfully, the New York court
3    should deal with because it's already dealing with it and
4    sorting it out.  And that Court has a significant interest in
5    streamlining these process -- these very complicated legal
6    issues to come up with rulings quickly given just the, you know,
7    roller-coaster path that we're on.
8          THE COURT:  All right.  Thank you, Ms. Governski.  I'm
9    going to give Mr. Hilton an opportunity to be able to respond.
10          MS. GOVERNSKI:  Thank you for your thought --
11    thoughtful questions, Your Honor.
12          THE COURT:  Mr. Hilton, would you come up to the
13    podium, please.
14          So, Mr. Hilton, I want you to explain a little bit to
15    me the issue of the burden you think that you might have.
16    Whether the case is here or whether the case is elsewhere,
17    right, there's the strong possibility that you would have to
18    produce something.  And you'd still have to go through that
19    process, whether that's producing documents to the court there
20    or producing documents to me here, and that production typically
21    would happen electronically.  So you wouldn't have to go to New
22    York, except in the instance if there were hearings, like the
23    one today, in which you'd have to travel.  So talk to me a
24    little bit about what burden you think would exist on you if the
25    case were transferred.

```
─────────────2:25-cv-01396-RFB-DJA─────────────
```

1    MR. LAVANDEIRA:  First of all, Your Honor, I want to

2  thank you for scheduling this hearing and recognizing what is at

3  stake here.  The importance -- what Ms. Lively is asking of me

4  in her subpoena and how this court rules could potentially

5  impact not just me, but journalists all over the State of Nevada

6  and the entire country as well.  And I respectfully would argue

7  that there is not a strong possibility that production --

8    THE COURT:  I want you to -- okay.  I want you to,

9  first of all, deal with the issue of the burden, though.  So --

10   MR. LAVANDEIRA:  Sure.  With the issue of burden, Your

11 Honor, the subpoena in and of itself is overly broad and

12 burdensome because --

13   THE COURT:  Okay.  I'm sorry, Mr. Lavandeira.  Maybe I

14 wasn't clear.  Not with the subpoena.  We haven't gotten there

15 yet.

16   MR. LAVANDEIRA:  Sure.

17   THE COURT:  I first have to decide whether or not I'm

18 going to transfer it.

19   MR. LAVANDEIRA:  Okay.

20   THE COURT:  If I'm not transferring it --

21   MR. LAVANDEIRA:  Sure.

22   THE COURT:  -- then we get to the subpoena.

23   MR. LAVANDEIRA:  Okay.  Understood, Your Honor.  Yes.

24   THE COURT:  If I am transferring --

25   MR. LAVANDEIRA:  Yes.

2:25-cv-01396-RFB-DJA

1          THE COURT:  -- then we don't get to that.

2          MR. LAVANDEIRA:  Okay.

3          THE COURT:  So the question right now -- the threshold

4    question for me right now is whether or not to transfer the

5    case.

6          MR. LAVANDEIRA:  Okay.

7          THE COURT:  So I'm asking you about what would be the

8    burden on you to have to, sort of, litigate this --

9          MR. LAVANDEIRA:  Sure --

10          THE COURT:  -- issue in New York rather than here.

11          MR. LAVANDEIRA:  Yes.  Understood.

12          Well, first of all, Your Honor, Rule 45 states that the

13    place of compliance listed in Ms. Lively's subpoena is where

14    issues regarding that subpoena should be litigated.  That's why

15    we're here for my motion to quash.

16          I argue forcing me to do anything else would add even

17    more undue burden, even more than the dozens of hours I have

18    spent responding to this, preparing for today so that I am as

19    familiar with not just my filings, but the law in the State of

20    Nevada and federal law as well, Your Honor.  It has taken me

21    away from my job and my children.

22          And Rule 45 -- and this Court has an obligation, Your

23    Honor, to protect a nonparty like myself.  I believe that the

24    correct and only venue to litigate this subpoena is here.  And

25    Your Honor is very, very smart and could predict what would

1  happen.  I will respectfully show my hands.  Yes, if for

2  whatever reason in New York, despite the law being on my side

3  with both New York shield law and Federal reporters privilege,

4  even if Judge Liman says he has jurisdiction, I believe the law

5  is on my side and my motion to quash there would be granted in

6  full.

7          If I am ordered to produce, I will -- my understanding

8  is I must be first held in contempt.  I will be held in contempt

9  so that I can then appeal that ruling, Your Honor.

10         THE COURT:  Well, we're, perhaps, getting a little bit

11 ahead of ourselves because, Mr. Hilton, it sounds to me like

12 some of the burden you're describing really relates to

13 production.

14         MR. LAVANDEIRA:  Well, and also being --

15         THE COURT:  So I want to be clear, Mr. Hilton.  I'm not

16 saying that I would not order you to produce materials.  I'm not

17 ruling on the --

18         MR. LAVANDEIRA:  Correct.

19         THE COURT:  -- motion to quash yet.  But it does appear

20 to me that there might be a burden with you traveling, but you

21 preparing for the motion to quash would be a burden that you

22 would have whether the case was heard by me or the case was

23 heard by Judge Liman in New York, right.

24         Is there any other burden that you would have beyond

25 having to travel there for litigation that would be different

─────2:25-cv-01396-RFB-DJA─────

1   simply because it's there?  Your preparation, you would be

2   required to do even if the case stayed here.  So that is not a

3   burden that I would consider as it relates to transfer, but

4   your --

5           MR. LAVANDEIRA:  Sure.

6           THE COURT:  -- your potential travel between here and

7   there for hearings would be something that I would potentially

8   consider.

9           So other than traveling, right, and other than the

10  arguments that you've raised and the ones that I have raised

11  with Ms. Governski regarding you being a Nevada resident, is

12  there any other burden or other factor you would want me to

13  consider?

14          MR. LAVANDEIRA:  Absolutely, Your Honor.  Thank you for

15  asking.

16          The standard, as I understand, is not merely relevancy,

17  as Ms. Lively's counsel argued here today.  The standard is it's

18  exceptional relevance.  It is critical.  What I have, Your

19  Honor, is not critical to Ms. Lively's case and her defense.  I

20  am just one of over 107 creator/journalists that Ms. Lively

21  subpoenaed.  My materials, my protected sources that Ms. Lively

22  wants me to unmask, are privileged.

23          Rule 45 also explicitly states that if the information

24  sought is privileged, it must be quashed in full.  Ms. Lively's

25  lawyers have not argued exceptional circumstances for a

———2:25-cv-01396-RFB-DJA———

1   transfer.  What is happening today to me and I would think to an

2   average observer seems very run-of-the-mill dispute over a

3   subpoena.

4        THE COURT:  Okay.  Thank you, Mr. Hilton.

5        (Court conferring with law clerk.)

6        THE COURT:  So, Ms. Governski, if you could come back

7   up to the podium, please.

8        As I understand it, Judge Liman has not issued a ruling

9   as relates to jurisdiction over Mr. Hilton.  I know he issued

10  this ruling I think this morning regarding privilege and how

11  that may apply.

12       As I understand it, that's the state of the docket now,

13  at least last we checked.  Would you agree with that?

14       MS. GOVERNSKI:  Well, the state of the docket with

15  respect to Mr. Hilton?

16       THE COURT:  Yes.

17       MS. GOVERNSKI:  They have -- he has not ruled on -- on

18  the motion for a protective order that he filed.  He has -- the

19  judge has entered various orders relating to Mr. Hilton, but has

20  not issued an order relating to his jurisdiction.  That is

21  correct.

22       THE COURT:  Okay.

23       MS. GOVERNSKI:  Your Honor, if I might just -- can I

24  address a couple of points that Mr. Hilton made?

25       THE COURT:  You can, but the issue for me is, and when

—2:25-cv-01396-RFB-DJA—

1    I spoke with Judge Liman, indicated it truly doesn't make sense,

2    I think, considering the factors for me to hear the case and not

3    transfer it if he's going to indicate that he has jurisdiction

4    over Mr. Hilton.  Then you have two courts operating directly in

5    conflict with one another.

6          And so I do think that I have to wait for that ruling

7    before I would make a final ruling.  Now, the reason why I say

8    that to you, Ms. Governski, because if he decides to have

9    jurisdiction or that he has jurisdiction, then Mr. Hilton would

10   have to -- if he thought there was jurisdiction, would have to

11   appeal that in New York and then New York -- the Second Circuit

12   would have to decide that.

13         If he decides he doesn't have jurisdiction, then I have

14   to make a decision about transfer.  And I haven't had a chance

15   to read through his, I think, fairly lengthy order this morning

16   that might impact that.  So what I intend to do -- to do is to

17   wait because I can't -- I don't think it's appropriate, and

18   Judge Liman and I talked about that, for me to rule on the

19   motion to quash and consider transfer until Judge Liman has

20   issued his ruling about whether or not he believes that that

21   court has jurisdiction over Mr. Hilton.

22         Now, what I will say, and I'll ask you and Mr. Hilton

23   the same question, if he indicates that he does not have

24   jurisdiction, I won't necessarily call you all back, but if I

25   find that I'm not going to transfer it, then you all could be

—2:25-cv-01396-RFB-DJA—

1  here literally next week on the motion to argue the merits of

2  it.  Now, we could argue the merits today.  My concern is that

3  this case is moving so quickly that I wouldn't want to argue the

4  merits today and then have to wait and then have something else

5  that's come up in the intervening period that you all would not

6  have an opportunity to be able to litigate, and because I have

7  not had a chance to review Judge Liman's order which was just

8  issued this morning.

9       So at this point what I intend to do would be to defer

10  ruling on the motion to quash, and particularly the issue of

11  transfer, until Judge Liman issues his decision on jurisdiction.

12       If he takes the position that there is no jurisdiction,

13  then I will simply issue a written ruling or minute order

14  related to whether or not I'm going to transfer the case.  If I

15  am not going to transfer, then of course I'll set a hearing

16  here.  If I am going to transfer it, then of course Judge Liman

17  will set the hearing.

18       Is there any reason why we cannot proceed in that

19  fashion, Ms. Governski?

20       MS. GOVERNSKI:  No, that sounds perfectly reasonable to

21  me, Your Honor.  I would say we feel quite confident that the

22  law supports asserting jurisdiction over Mr. Hilton in New York

23  given that he has availed himself, including by seeking relief

24  in connection with this specific subpoena there.  So I would say

25  I am amenable to whatever Your Honor would prefer.  I'm prepared

—2:25-cv-01396-RFB-DJA—

1    to argue the merits today if you think it would be beneficial to

2    you for us to argue the merits.

3             THE COURT:  I don't know that it would be --

4             MS. GOVERNSKI:  Okay.

5             THE COURT:  -- because of the fast pace of this

6    litigation.

7             MS. GOVERNSKI:  Yep.

8             THE COURT:  I think we could end up with a situation

9    where you'd both be moving to supplement the record because

10   something else was filed subsequently.  I'm just letting you

11   know because in this instance you'd actually be the one who has

12   to travel back.

13            MS. GOVERNSKI:  I'd be happy to come back to Vegas.

14            THE COURT:  Okay.

15            MS. GOVERNSKI:  No problem.

16            THE COURT:  I know you started out here -- your first

17   trial here.  I just want to let you know that what could happen

18   is, on a fairly quick timeframe, Judge Liman makes a ruling or

19   issues a ruling regarding jurisdiction.  Depending upon that

20   ruling, whether it gets appealed or not, and what happens,

21   right, we could be back here fairly quickly next week.  Given

22   the schedule, it would certainly be my intention to move the

23   case along if I were to keep it myself.  I haven't made a

24   decision about that yet.  I'm going to consider the arguments.

25   I also want to review what was filed by Judge Liman this

2:25-cv-01396-RFB-DJA

 1  morning.

 2          But I wanted to alert you to that so you understood

 3  that you may be back here.  And I may ask you about a particular

 4  date to come back just as a placeholder --

 5          MS. GOVERNSKI:  Sure.

 6          THE COURT:  -- given your schedule.

 7          MS. GOVERNSKI:  Can I grab my computer for that, Your

 8  Honor?

 9          THE COURT:  Sure, but let me hear from Mr. Hilton and

10  then we would potentially pick a possible day.

11          MS. GOVERNSKI:  One point I just want to raise, Your

12  Honor, is it may be beneficial to have a date before that

13  hearing to just file any supplemental briefing that may be

14  helpful to update the court on what's happened in New York.

15  Also, since we filed our briefs, we've uncovered some of the --

16  some of the legislative history relating to the Nevada

17  privilege, specifically a 2014 decision by a committee of the --

18  a subcommittee of the Nevada legislature to consider removing

19  the affiliation requirement, and it didn't even make it out of

20  committee.  And so it might be helpful for us to supplement the

21  record with that as well if it would be helpful to Your Honor.

22          THE COURT:  Okay.  Thank you.

23          So, Mr. Hilton, if you want to come back up, please.

24          MR. LAVANDEIRA:  Yes.

25          THE COURT:  So I wanted to give you an opportunity to

2:25-cv-01396-RFB-DJA

1  comment on what I intend to do.  Do you have any comment as

2  relates to that?

3          MR. LAVANDEIRA:  Your Honor, I will defer to your

4  judgment, and I assert that the law is clear that the only place

5  to litigate the issues regarding this subpoena is this court and

6  this district.

7          THE COURT:  I appreciate your argument in that respect.

8          Now, one of the things I do want to ask you,

9  Mr. Hilton, because I think it's relevant if I were to keep this

10 case, which is your ability to produce the material if it's

11 ordered in a timely manner, right.  You should at least be

12 prepared for the possibility -- and, again, I haven't ruled.  I

13 don't know one way or the other -- that you may have to produce

14 some material.  And I'm saying that so you're aware of the fact

15 if I were to keep the case, I would try to keep the schedule

16 that Judge Liman has, which means if I were to order material,

17 it would have to be produced on a fairly quick and short

18 timeframe.  And so if we come back because I've kept the case,

19 I'm going to ask you questions about your ability to produce

20 these things and how quickly you can do them.

21         Now, I also think there's going to be a separate issue

22 if I were to keep the case that would relate to expenses and

23 costs, but in this case the material that's being requested

24 covers several different types of forms.  You have e-mails.  You

25 may have actual written physical correspondence.  You may have

 1  text messages or other, sort of, communications through other

 2  social media means.

 3       I'm saying this to you so you understand that you

 4  should be prepared, whether it's me or Judge Liman, to discuss

 5  how much material there actually is, how long it would take you

 6  to produce it if it was ordered, if there are costs associated

 7  with that, such as for example extracting text messages, you

 8  should be prepared to answer those questions.  I would suspect

 9  if the case is transferred Judge Liman would have the same

10  questions.

11       So I'm just telling you that now as someone who's not a

12  lawyer that whether I hear the case or Judge Liman hears it,

13  those will be questions that will be asked, in part, because of

14  the arguments you've raised about burden on you and other

15  details.

16       MR. LAVANDEIRA:  Yes, Your Honor.  I'm prepared to

17  answer those questions next week or today, whenever it is asked

18  of me.

19       THE COURT:  Okay.  I'm not going to ask it now because

20  I want to wait for Judge Liman's ruling on the jurisdictional

21  issue, but I wanted you to be prepared for that because --

22       MR. LAVANDEIRA:  Yes.

23       THE COURT:  -- again, you're not an attorney and I

24  wanted you to understand what could happen.

25       MR. LAVANDEIRA:  Appreciate that.

———2:25-cv-01396-RFB-DJA———

1          THE COURT:  If you were ordered to produce this

2    material, whether by myself or Judge Liman, how long would you

3    anticipate it would take to produce it?

4          Now, again, I'm not ruling on that, but I'm trying to

5    get a sense of the timing so we know how to set things.  Do you

6    know?

7          MR. LAVANDEIRA:  I don't -- I don't think I can answer

8    that accurately or even an appropriate guesstimation, Your

9    Honor.

10          THE COURT:  Well, if the case comes back here, I

11    certainly would ask the question.  I'm sure Judge Liman will

12    also ask you the same question.

13          MR. LAVANDEIRA:  Absolutely.

14          THE COURT:  So you should be prepared for giving an

15    answer to one of us --

16          MR. LAVANDEIRA:  Yes.

17          THE COURT:  -- about that particular question because

18    that would be the next step in evaluating this.  I mean, there

19    are legal arguments you raise and I appreciate that, but given

20    the pace that has been set in this case or I should say the

21    schedule that's been set in this case, you should be prepared to

22    answer that question at whatever hearing is next, whether it's

23    in front of me or in front of Judge Liman.  Okay?

24          MR. LAVANDEIRA:  Noted.

25          THE COURT:  So I'm going to take a look at a date

———2:25-cv-01396-RFB-DJA———

 1  potentially for next week that I would ask you all to hold

 2  depending upon what happens because, again, I want to be

 3  prepared and not have to set it and go back and forth about the

 4  date later if we have the hearing here.  So just give us a

 5  moment, please.  Thank you, Mr. Hilton.

 6          MR. LAVANDEIRA:  Thank you.

 7          (Court conferring with court staff.)

 8          THE COURT:  So, Ms. Governski, what about Tuesday or

 9  Wednesday of next week?

10          MS. GOVERNSKI:  Either is fine.  If -- I have a slight

11  preference for Wednesday given that Monday's a holiday and for

12  travel.

13          THE COURT:  Right.

14          MS. GOVERNSKI:  But if Tuesday is better for Your

15  Honor, I'll make it work.

16          THE COURT:  Mr. Hilton?

17          MR. LAVANDEIRA:  What -- whatever works best for Your

18  Honor.  I do have a clarification, if I may?

19          THE COURT:  Sure.

20          MR. LAVANDEIRA:  Your Honor, just so that I understand,

21  if Judge Liman rules he does have jurisdiction, how would that

22  impact what happens in this court or how could that impact what

23  happens in this court?  Is it possible that you rule that you

24  all -- you do also -- can you just explain that to me if you --

25  if you could.

—2:25-cv-01396-RFB-DJA—

1          THE COURT:  Sure.  I certainly have jurisdiction over

2   you, Mr. Hilton, because you are a resident here.  And in order

3   for Judge Liman to have jurisdiction over you, there's certain

4   factors that would have to be met and he would have to find that

5   they were met before he could rule that he had jurisdiction over

6   you.

7          In a situation where you have production materials

8   being central, right, Rule 45 is particularly fashioned to

9   protect nonparties who are not within the court's jurisdiction.

10  It's a very different consideration for me if you are actually

11  within the jurisdiction of Judge Liman.  That would weigh much

12  more heavily in me transferring the case so that we don't get

13  into a situation in which we are conflicting with each other

14  over an individual over whom we both have jurisdiction.

15         So in that situation he technically could order you to

16  do things that I didn't order you to do because he also has

17  jurisdiction over you.  So when a party has -- two courts have

18  jurisdiction over it, it has to abide by the orders of both

19  courts, potentially.

20         MR. LAVANDEIRA:  And they could be conflicting orders?

21         THE COURT:  And they would have to be resolved by the

22  Circuit, but until that time you could be in a situation in

23  which Judge Liman and I issued conflicting orders.

24         And you would be under an obligation to abide by both

25  of them, and that would strongly support me transferring the

—2:25-cv-01396-RFB-DJA—

1  case because courts avoid that, right.  It would create a truly

2  difficult situation if that were to happen.

3          So it is highly unlikely that if he were to find he had

4  jurisdiction that I would keep this case simply to avoid that.

5  That would actually put you in a much more difficult situation

6  of having to track the orders of two judges over potentially the

7  same issue, right.  That, I think, is untenable --

8          MR. LAVANDEIRA:  Sure.

9          THE COURT:  -- practically speaking.

10         MR. LAVANDEIRA:  One follow-up question, Your Honor,

11  though.  If this court were to say only this court has

12  jurisdiction over Mr. Hilton with regards to the subpoena, then

13  wouldn't --

14         THE COURT:  I couldn't do that.

15         MR. LAVANDEIRA:  What?

16         THE COURT:  I cannot do that.

17         MR. LAVANDEIRA:  Okay.

18         THE COURT:  Each court has to determine its own

19  jurisdiction.  I could not tell him he didn't have jurisdiction.

20  The only court that could tell him that would be the Second

21  Circuit or the Supreme Court.  So I, as another District Court,

22  couldn't tell a separate District Court, "You don't have

23  jurisdiction."  I could only assert whether or not I have

24  jurisdiction over you or another entity, and Judge Liman would

25  have to decide himself whether or not he had jurisdiction.  And

—2:25-cv-01396-RFB-DJA—

1   there are situations, Mr. Hilton, where in fact courts do have

2   overlapping jurisdiction with an individual for a variety of

3   reasons.

4          MR. LAVANDEIRA:  Okay.  Thank you, Your Honor.

5          THE COURT:  So that's why the issue of jurisdiction is

6   important.  Because if he were to find he had jurisdiction, I

7   will just tell you now I would most likely transfer the case to

8   him to avoid exactly that conflict.

9          Now, you could obviously appeal that if you wanted to,

10  and then depending upon what happened, you know, we might be

11  back here.  But --

12         MR. LAVANDEIRA:  I would appeal it, Your Honor.

13         THE COURT:  But, for now, it doesn't make any sense to

14  me to resolve the motion to quash or to decide whether or not to

15  transfer the case without first waiting for Judge Liman's

16  decision on jurisdiction.  But I wanted to hear you all about

17  the transfer arguments to save time, and so I'm not going to

18  call you back for that.

19         Now, depending upon his ruling, I will then issue my

20  ruling very quickly after that as it relates to transfer.

21         MR. LAVANDEIRA:  And what if the judge -- Judge Liman

22  does not issue a ruling with regards to jurisdiction before

23  Tuesday or Wednesday of next week?

24         THE COURT:  I anticipate, given the pace at which he

25  has been issuing rulings and his understanding from our

—2:25-cv-01396-RFB-DJA—

1   conversation the significance of this, I would be very surprised

2   if the ruling didn't come out by that timeframe.

3          MR. LAVANDEIRA:  Okay.

4          THE COURT:  Again, I don't know for sure because I

5   don't know -- again, I don't know what the final ruling will be,

6   but I want to also be respectful of his schedule and set

7   something up now so that if I eventually have to resolve matters

8   here, we are already set with a date and on track to resolve it.

9   Okay?

10         MS. GOVERNSKI:  Your Honor, if I could.

11         THE COURT:  Yes.

12         MS. GOVERNSKI:  That conversation just triggered

13  something in my mind.  Of course, Mr. Hilton has already filed a

14  motion for protective order.  So I am not entirely clear if he

15  doesn't find -- if Judge Liman doesn't find jurisdiction over a

16  motion to compel, he ostensibly still would have to issue a

17  ruling on -- on Mr. Hilton's motion for a protective order with

18  respect to the subpoena.

19         So I only say that because it could even get more

20  complicated even if he doesn't find jurisdiction.  There still

21  would be a motion pending filed by Mr. Hilton on the SDNY docket

22  relating to the subpoena that also could implicate inconsistent

23  rulings.

24         THE COURT:  Look, I don't know that there's a way to

25  avoid some of the, sort of, thornier issues in this particular

 1  case, Ms. Governski.  I agree with you.  I'm not sure what Judge

 2  Liman will do in that instance because even if this case -- even

 3  if this issue were not in front of me, he'd still have to

 4  resolve that either way anyway.  That would still be an

 5  interesting legal issue for him to resolve even if we didn't

 6  have this separate motion that was proceeding right now today in

 7  this district.  So that's another reason why I wanted just to

 8  wait.

 9          MS. GOVERNSKI:  Yeah.

10          THE COURT:  I don't know how he's going to rule on

11  jurisdiction.  I don't know how he's going to rule on these

12  other motions, and I want to see how he's going to do that

13  before I issue my final ruling as relates to transfer.  But we

14  will tentatively set this case for Wednesday.

15          COURTROOM ADMINISTRATOR:  Wednesday or Tuesday?

16          (Court conferring with courtroom administrator.)

17          THE COURT:  So we will hold the date of September 2nd,

18  Tuesday, at 1:30.  Unfortunately, Ms. Governski, that's the only

19  time --

20          MS. GOVERNSKI:  That's fine.

21          THE COURT:  -- that we have.

22          MS. GOVERNSKI:  No problem.

23          THE COURT:  And I want to allow for sometime if we have

24  to resolve substantive issues.

25          Now, what I will tell you is I will obviously issue a

—2:25-cv-01396-RFB-DJA—

1    ruling as quickly as Judge Liman issues his ruling.  So if he is

2    going to find jurisdiction, most likely this will be vacated.

3    That's why I want to just tell you that now, Ms. Governski and

4    Mr. Hilton.  If Judge Liman finds that he has jurisdiction, it

5    would be my intention to transfer the case on that basis.

6              And then you could take whatever steps you thought were

7    appropriate, Mr. Hilton, obviously, but I would want that issue

8    to be resolved then with that court and not have both courts

9    have jurisdiction.

10             All right.  Any questions about that, Mr. Hilton?

11             MR. LAVANDEIRA:  No, Your Honor.

12             THE COURT:  Ms. Governski, any questions?

13             MS. GOVERNSKI:  No.  Thank you for your time, Your

14   Honor.

15             THE COURT:  So for now we're tentatively set for a

16   hearing on September 2nd at 1:30.  Okay?

17             All right.  Is there anything else we need to address

18   today?  Mr. Hilton?

19             MR. LAVANDEIRA:  I thank you, Your Honor.

20             THE COURT:  All right.  Ms. Governski?

21             MS. GOVERNSKI:  Nothing from us.

22             THE COURT:  All right.  Thank you all.  We'll be

23   adjourned.  I'm going to stay on the bench for a few minutes

24   here just to finish some things up.  Thank you.

25             (Whereupon the proceedings concluded at 1:19 p.m.)

2:25-cv-01396-RFB-DJA

1                               --oOo--

2                    COURT REPORTER'S CERTIFICATE

3

4         I, PATRICIA L. GANCI, Official Court Reporter, United

5    States District Court, District of Nevada, Las Vegas, Nevada,

6    certify that the foregoing is a correct transcript from the

7    record of proceedings in the above-entitled matter.

8

9    Date:  September 10, 2025.

10                                    /s/ **Patricia L. Ganci**

11                                    Patricia L. Ganci, RMR, CRR

12

13

14

15

16

17

18

19

20

21

22

23

24

25